# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

TIMOTHY RAVE,

            Plaintiffs,

    v.

CIOX HEALTH, LLC and COLUMBIA ST
MARY'S HOSPITAL MILWAUKEE, INC.,

            Defendants.

Case No.: 18-CV-305

# NOTICE OF REMOVAL

To:    Timothy Rave                      Columbia St. Mary's Hospital Milwaukee
       c/o Robert Welcenbach             c/o Corporation Service Company
       Welcenbach Law Offices, S.C.      8040 Excelsior Dr., Suite 400
       933 N. Mayfair Rd., Suite 311     Madison, WI 53717
       Milwaukee, WI 53226

**PLEASE TAKE NOTICE** that Ciox Health, LLC ("Ciox"), by its attorneys, Gass Weber

Mullins LLC, pursuant to 28 U.S.C. §§ 1332, 1441(b) and 1446, files this Notice of Removal with the

Court to remove this action from the Circuit Court for Milwaukee County, Wisconsin to the United

States District Court for the Eastern District of Wisconsin. This putative class action is removable

because the Court has jurisdiction based upon diversity of citizenship. The grounds for removal of

this action are as follows:

1.      On January 22, 2018, Timothy Rave ("Plaintiff"), through his attorney Robert J.

Welcenbach, filed a Summons and Complaint designated as Case No. 18-CV-607 in the Circuit

Court for Milwaukee County, Wisconsin (the "Complaint").

2.      On January 31, 2018, Plaintiff served the Complaint on Ciox. A true and correct

copy of the Summons and Complaint is attached as **Exhibit 1**.

3.      Plaintiff alleges that he brings this action on his own behalf and on behalf of the members of a proposed class of individuals and entities that are similarly situated. (Compl. p.1.)

4.      Plaintiff alleges that Ciox may be liable for actual damages and exemplary damages of up to $25,000 per violation of Wis. Stat. § 146.83. (*See* Compl. ¶¶ 56-58.)

5.      Ciox served its Answer and Affirmative Defenses to the Complaint on February 20, 2018.

6.      Removal of this action to the United States District Court is proper under 28 U.S.C. § 1441(a) and (b) because there is diversity of citizenship between Plaintiff and Ciox and the amount in controversy exceeds $5,000,000. The United States District Court would, therefore, have had original jurisdiction of this matter under 28 U.S.C. § 1332 had the action been brought in federal court originally.

7.      For the purposes of diversity, a limited liability company is considered a citizen of the states of which its members are citizens. There is diversity between Plaintiff and Ciox because:

        a.      Plaintiff is a citizen of the State of Wisconsin. (*See* Compl. ¶ 1.)

        b.      Ciox is a single-member limited liability company owned by Smart Holding Corp., a corporation organized under the laws of the State of Delaware. Smart Holding Corp. has its principal place of business in Alpharetta, Georgia.

        c.      A corporation is a citizen of both the state in which it is incorporated and the state in which it keeps its principal place of business. 28 U.S.C. § 1332(c)(1). Smart Holding Corp. is therefore a citizen of Delaware and Georgia, as is Ciox.

8.      The amount in controversy in this case exceeds $5,000,000, exclusive of interest and costs. Although the Complaint does not specify a particular dollar amount sought by Plaintiff, Plaintiff has alleged that each class member may be entitled to up to $25,000 in exemplary damages per violation.

2

9.      It would only take 200 violations resulting in exemplary damages of $25,000 per violation to reach $5,000,000. Ciox's predecessor-in-interest, IOD Incorporated, issued over 5,000 invoices to attorneys who requested patient health care records from Wisconsin health care providers using HIPAA authorizations between July 1, 2011 and December 31, 2015, and in which charges for either certification or retrieval fees appeared. Plaintiff alleges that each such invoice constitutes a violation subject to exemplary damages. The alleged violations thus far exceed 200, so the amount in controversy easily exceeds the $5,000,000 threshold.

10.     This Notice of Removal is timely under Section 1446(b)(3) of Title 28 of the United States Code because 30 days have not elapsed since Ciox received the Complaint.

11.     The exception to diversity jurisdiction enumerated in Section 1332(d)(4)(A) of Title 28 of the United States Code does not apply because two class actions have been filed during the three-year period preceding the filing of this class action in which the plaintiffs have asserted the same or similar factual allegations against Ciox on behalf of the same and other persons.

  a.  On May 5, 2017, a group of plaintiffs filed *Dilger, et al. v. IOD Incorporated, et al.*, Waukesha County, Wisconsin Case No. 17-CV-768. The plaintiffs in that case alleged that Ciox improperly charged a class of individuals certification and retrieval fees under Wis. Stat. § 146.83, just as Plaintiff alleges here. (*Compare* **Exhibit 2**: *Dilger* Compl. to **Exhibit 1**.) Further, the putative *Dilger* class completely encompasses the putative "IOD Class" in this case and mostly encompasses the putative "Columbia St. Mary's Class" in this case.

  b.  On July 24, 2017, Donia Meyer filed *Meyer v. Ciox Health, et al.*, Dane County, Wisconsin Case No. 17-CV-1788. The plaintiff in that case alleged that Ciox improperly charged a class of individuals certification and retrieval fees under Wis. Stat. § 146.83, just as Plaintiff alleges here. (*Compare* **Exhibit 3**: *Meyer*

3

Compl. to **Exhibit 1**.) The putative *Meyer* class also overlapped almost entirely with the putative classes in this case.

12.      As required by 28 U.S.C. § 1446(a), all process, pleadings, and orders served upon Ciox are attached as **Exhibit 4**.

13.      Concurrent with the filing of this Notice of Removal, Ciox will notify Plaintiffs and the Clerk of the Circuit Court for Milwaukee County that this case is the subject of a petition for removal in the United States District Court for the Eastern District of Wisconsin, as required by 28 U.S.C. § 1446(d).

Dated: February 28, 2018.

> GASS WEBER MULLINS LLC
> Attorneys for Defendant Ciox Health, LLC
>
> s/Daniel A. Manna
> John Franke, SBN 1017283
> Daniel A. Manna, SBN 1071827
> 241 N. Broadway, Suite 300
> Milwaukee, Wisconsin 53202
> (414) 223-3300 – phone
> (414) 224-6116 – fax
> franke@gwmlaw.com
> manna@gwmlaw.com

4

# Exhibit 1

FILED
01-22-2018
John Barrett
Clerk of Circuit Court
2018CV000607
Honorable Ellen R
Brostrom-06
Branch 06

**STATE OF WISCONSIN**          **CIRCUIT COURT**          **MILWAUKEE COUNTY**

**TIMOTHY RAVE**
1546 N. 122nd Street
Wauwatosa, WI 53226

Individually and on behalf of a class of others similarly
situated,

      Plaintiff

      v.

**CIOX HEALTH, LLC**
c/o Corporation Service Company
8040 Excelsior Drive, Suite 400
Madison , WI 53717

and

**COLUMBIA ST. MARY'S HOSPITAL MILWAUKEE, INC.**
c/o Corporation Service Company
8040 Excelsior Drive, Suite 400
Madison , WI 53717

      Defendants.

Case No.:
Case Code:  30301

---

## SUMMONS

---

THE STATE OF WISCONSIN

To each person named above as a Defendant:

      You are hereby notified that the Plaintiff named above has filed a lawsuit or other legal

action against you. The Complaint, which is attached, states the nature and basis of the legal action.

      Within 45 days of receiving this Summons you must respond with a written answer, as that

term is used in Chapter 802 of the Wisconsin Statutes, to the Complaint. The court may reject or

disregard an answer that does not follow the requirements of the statutes. The answer must be sent

or delivered to the court, whose address is Milwaukee County Courthouse, 901 North Ninth Street, Milwaukee, Wisconsin 53233 and to Welcenbach Law Offices, S.C., Plaintiff's attorney, whose address is 933 N. Mayfair Rd., Suite 311, Milwaukee, Wisconsin 53226. You may have an attorney help or represent you.

   If you do not provide a proper answer within 45 days, the court may grant judgment against you for the award of money or other legal action requested in the Complaint and you may lose your right to object to anything that is or may be incorrect in the Complaint. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure or property.

   Dated at Milwaukee, Wisconsin this 22nd day of January, 2018.

       WELCENBACH LAW OFFICES, S.C.
       Attorneys for Plaintiff

       By: /s/Electronically signed by Robert J. Welcenbach
         Robert J. Welcenbach – SBN: 1033091

P.O. Address
933 N. Mayfair Rd., Ste. 311
Milwaukee, WI 53226
(414)774-7330
Facsimile: (414) 774-7670

**FILED**
**01-22-2018**
**John Barrett**
**Clerk of Circuit Court**
**2018CV000607**
**Honorable Ellen R**
**Brostrom-06**
**Branch 06**

**STATE OF WISCONSIN**     **CIRCUIT COURT**     **MILWAUKEE COUNTY**

---

**TIMOTHY RAVE**
1546 N. 122nd Street
Wauwatosa, WI 53226

Individually and on behalf of a class of others similarly
situated,

       Plaintiff

    v.

**CIOX HEALTH, LLC**
c/o Corporation Service Company
8040 Excelsior Drive, Suite 400
Madison , WI 53717

and

**COLUMBIA ST. MARY'S HOSPITAL MILWAUKEE, INC.**
c/o Corporation Service Company
8040 Excelsior Drive, Suite 400
Madison , WI 53717

       Defendants.

Case No.:
Case Code:   30301

---

## CLASS ACTION COMPLAINT
## &
## REQUEST FOR JURY TRIAL

---

    Plaintiff Timothy Rave ("Rave" or "Plaintiff"), through his undersigned counsel files this

Class Action Complaint and Request for Jury Demand on his individual behalf and on behalf a

class of all similarly situated persons against Defendants and says in support:

## I.   PARTIES

1.  Plaintiff is an adult resident of the State of Wisconsin who resides at the address captioned above.

2.  That IOD Incorporated was a Wisconsin corporation that acted as the agent for and/or business associate for COLUMBIA ST. MARY'S HOSPITAL MILWAUKEE, INC ("CSM") and determined the amounts to charge and assessed charges for the requests for certified medical records for CSM with the consent and approval of CSM.

3.  That IOD Incorporated ceased to exist on December 31, 2015 when it merged with Healthport Technologies, LLC.  That Healthport Technologies, LLC was designated as the surviving company.

4.  As the surviving company, Healthport Technologies, LLC took ownership of all of the assets of IOD Incorporated and assumed all of the liabilities of IOD, Incorporated when IOD Incorporated was dissolved and merged into Healthport Technologies, LLC on December 31, 2015.

5.  Healthport Technologies, LLC changed its name to CIOX Health, LLC on or about March 2, 2016.

6.  The Defendant, CIOX HEALTH, LLC, ("CIOX") is a corporation duly licensed to conduct business in the State of Wisconsin doing business as "Ciox" has assumed all of the liabilities of IOD, Incorporated and is thus liable to Plaintiffs and the putative class members for all of the damages claimed herein.

7.  That CIOX as the surviving company to the aforesaid merger is responsible and liable for the actions and obligations of IOD as alleged herein.

8.  The Defendant, COLUMBIA ST. MARY'S HOSPITAL MILWAUKEE, INC. ("CSM")

is a Wisconsin corporation headquartered at 2323 N. Lake Drive, WI 53211 and is duly licensed to conduct business in the State of Wisconsin and whose registered agent for service of process is captioned above. That, upon information and belief, CSM is a "health care provider" pursuant to Wis. Stat. §146.81.

## II. BACKGROUND

9. The Citizens of Wisconsin have valid interests in obtaining copies of their medical records. They may want them to provide to their healthcare providers, for further evaluation, to pursue legal claims for injuries or simply to maintain the records out of personal concerns. Whatever the reason, the records must be made available for them to obtain.

10. While the citizens may want to obtain copies of their health records, the medical providers do not want to bear the expense of providing copies of the records to their patients.

11. The Wisconsin Legislature has addressed the respective wants and needs of both patients and the health care providers by enacting a statute, Wis. Stat. §146.83, that establishes the patient's rights to copies and sets the maximum compensation that the health care providers who provide the records may charge.

12. At this time, the production of copies of electronically stored information can be accomplished at minimal cost. The copy cost by a third party, such as Staples, starts at $.03 per page for black and white and up to $.12 per page for color copies.

13. The rates allowed by the Wisconsin law are substantially more than the costs of obtaining copies form third parties. Under Wis. Stat. §146.83, the charges may be as follows:

3

(b) Except as provided in sub. (1f), a health care provider may charge no more than the total of all of the following that apply for providing the copies requested under par. (a):

1. For paper copies: $1 per page for the first 25 pages; 75 cents per page for pages 26 to 50; 50 cents per page for pages 51 to 100; and 30 cents per page for pages 101 and above.

2. For microfiche or microfilm copies, $1.50 per page.

3. For a print of an X-ray, $10 per image.

4. If the requester is not the patient or a person authorized by the patient, for certification of copies, a single $8 charge.

5. If the requester is not the patient or a person authorized by the patient, a single retrieval fee of $20 for all copies requested.

6. Actual shipping costs and any applicable taxes.

14. A patient or a "person authorized in writing by the patient" who pays the fee is entitled to copies at the statutory rate and the "health care provider" must provide them pursuant to that rate under Wis. Stat. §146.83(3f).

15. Medical records may be released without the patient's authorization under Wis. Stat. 146.82(2), and, in that event, the provider may charge the $8.00 certification fee and a $20.00 retrieval fee.

16. This action arises because the Defendants, have attempted to enhance their profits that they can make off the already generous allowable legislative per copy charge by also routinely charging patients or persons authorized by the patient, an $8.00 certification fee, a $20.00 retrieval fee, processing, basic or other fees not authorized by the statute.

4

17. That on May 4, 2017, the Wisconsin Supreme Court issued a decision in <u>Moya v. Healthport Technologies</u>, et. al, 2017WI 45 (2017) olding that a health care provider and their medical records provider may not charge certification, basic, processing or retrieval fees for producing a patient's records if the records are requested by either the patient or any person authorized in writing by the patient. The person authorized in writing acts the agent for a known principal.

18. That a copy of the decision is attached hereto as ***Exhibit A***.

19. The Plaintiff, Timothy Rave, is one of many persons who the Defendants charged illegal fees contrary to Wis. Stat. §146.83.

20. The Plaintiff also seeks to represent himself and the other persons who are similarly situated to him because the relatively low dollar amount of the illegal charges by the Defendants make it an appropriate situation for a case under Wis. Stat. Sec. §803.08 which provides:

> When the question before the court is one of a common or general interest of many persons or when the parties are very numerous and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole.

21. Whether or not the Defendants charged in excess of the generous amounts allowed by Wisconsin law is a common or general interest to any person who has been charged by the Defendants or who may deal with the Defendants in the future.

22. Upon information and belief, the common or general interest question raised and causes of actions presented are of a common and general interest of many persons and those persons are very numerous and it would be impracticable to bring all such persons before the court.

23. Plaintiff should be permitted to proceed to sue for the benefit of the following classes:

**Columbia St. Mary's Class**:

All persons in Wisconsin:

(i) who were patients at Columbia St. Mary's who authorized another person in writing to obtain the patient's medical records from Columbia St. Mary's; and

(ii) were charged a basic, retrieval and/or a certification fee by Defendant Columbia St. Mary through its agent IOD, in violation of Wis. Stat. §146.83(3f)(b)(4) - (5) from July 1, 2011 through December 31, 2015; or

(iii) were charged a basic, retrieval and/or a certification fee by Defendant Columbia St. Mary directly or indirectly through its agent *other than* IOD in violation of Wis. Stat. §146.83(3f)(b)(4) - (5) since July 1, 2011 through the date of trial; or

**IOD Class:**

All persons in Wisconsin who:

(i) were patients at a medical provider other than Columbia St. Mary's who authorized another person in writing to obtain the patient's medical records; and

(iii) were charged a basic, retrieval and/or a certification fee by IOD in violation of Wis. Stat. §146.83(3f)(b)(4) - (5); and

(iv) since July 1, 2011 through December 31, 2015.

The Classes specifically excludes the following persons or entities: (i) Defendants, any predecessor, subsidiary, sister and/or merged companies, and all of the present or past directors, officers, employees, principals, shareholders and/or agents of the Defendants; (ii) any and all Federal, State, County and/or Local

6

Governments, including, but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, councils and/or any other subdivision, and any claim that such governmental entities may have, directly or indirectly; (iii) any currently-sitting Wisconsin state court Judge or Justice, or any federal court Judge currently or previously sitting in Wisconsin, and the current spouse and all other persons within the third degree of consanguinity to such judge/justice or (iv) any law firm of record in these proceedings, including any attorney of record in these proceedings; and (v) anyone person who would otherwise belong to the class but who Defendants can identify as being charged a fee, either directly or indirectly through a person authorized in writing, but said fee was not collected or paid to Defendants by anyone.

### III. JURISDICTION & VENUE

24. This Court has jurisdiction over Defendants in that Defendants are physically located in Milwaukee County and conduct substantial business in Milwaukee County and are registered in this State to conduct business. This transaction further arose in Milwaukee County.

25. Venue is also appropriate in this County because Defendants are based in Milwaukee County and conduct substantial business in Milwaukee County and has, upon information and belief, employees based in Milwaukee County.

### IV. FACTS

26. Timothy Rave was injured on July 23, 2013 when he was involved in a car crash.

27. Mr. Rave retained Welcenbach Law Offices as his attorneys who processed his personal injury claim.

7

28. Mr. Rave signed HIPAA releases authorizing the release of medical information to his attorneys.

29. Mr. Rave's attorneys sought certified medical records and billings from Defendant, CSM.

### A. Certified Medical Bill Request - CSM

30. That on or about December 11, 2013, Mr. Rave's attorneys wrote and requested certified medical bills from CSM and provided a written consent in the form of a HIPAA release signed by Mr. Rave.

31. That IOD responded to the medical bill request on behalf of CSM and provided a four (4) page certified bill for Mr. Rave and charged on invoice number 26252002 the sum of $35.84.

32. That Welcenbach Law Offices paid the $35.84 charge to IOD on behalf of Mr. Rave to obtain his certified medical bills.

33. That CSM and IOD charged certification, retrieval, processing and/or basic fees to Mr. Rave contrary to Wis. Stat. §146.83 to obtain his certified medical bills.

34. That Defendants have negligently or knowingly and willfully charged these fees contrary to statute.

### B. Certified Medical Records Request - CSM

35. That on or about December 11, 2013, Mr. Rave's attorneys wrote and requested certified medical records from CSM and provided a written consent in the form of a HIPAA release signed by Mr. Rave.

36. That IOD responded to the medical records request on behalf of CSM and provided forty three (43) pages of certified medical records for Mr. Rave and charged on invoice number 26247649 the sum of $75.28 for the certified medical records of Mr. Rave.

8

37. That Welcenbach Law Offices paid the $75.28 charge to IOD to obtain the certified medical records for Mr. Rave.

38. That IOD and CSM charged certification, processing, retrieval and/or basic fees to Mr. Rave contrary to Wis. Stat. §146.83 to obtain his certified medical records.

39. That IOD and CSM have negligently or knowingly and willfully charged these fees contrary to statute.

## VIOLATION OF WIS. STAT. §146.83
## ON BEHALF OF PLAINTIFF AND CLASS MEMBERS

40. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

41. That Rave ultimately settled his personal injury case and reimbursed Welcenbach Law Offices for all charges incurred from Defendants.

42. That Ciox, having assumed all of the liabilities of IOD, and CSM are jointly and severally liable for the damages to Plaintiff and the Class Members.

43. In Wisconsin, access to patient health care records is governed by Wis. Stat. § 146.83. Wis. Stat. §146.83(3f)(a) provides in pertinent part:

> Except as provided in sub. (1f) or s. 51.30 or 146.82 (2), if a person requests copies of a patient's health care records, provides informed consent, and pays the applicable fees under par. (b), the health care provider ***shall*** provide the person making the request copies of the requested records.

Wis. Stat. §146.83(3f)(a) (Emphasis added.)

44. Wis. Stat. §§146.83(3f)(b)(1) - (6) set out the maximum charges that may be charged and collected for medical records and provides:

> Except as provided in sub. (1f), a health care provider may charge no more than the total of all of the following that apply for providing the copies requested under par. (a):

9

1.    For paper copies: $1 per page for the first 25 pages; 75 cents per page for pages 26 to 50; 50 cents per page for pages 51 to 100; and 30 cents per page for pages 101 and above.

2.    For microfiche or microfilm copies, $1.50 per page.

3.    For a print of an X−ray, $10 per image.

4.    ***If the requester is not the patient or a person authorized by the patient***, for certification of copies, a single $8 charge.

5.    ***If the requester is not the patient or a person authorized by the patient***, a single retrieval fee of $20 for all copies requested.

6.    Actual shipping costs and any applicable taxes.

Wis. Stat. §146.83(3f)(b)(1) - (6) (emphasis added.)

45. The phrase "person authorized by the patient" is defined in Wis. Stat. § 146.81(5) to mean "any person authorized in writing by the patient." This language is unambiguous and clear and would obviously exempt anyone with a HIPAA compliant medical records release.

46. Mr. Rave filed this suit because he was wrongfully charged a basic, certification, processing or retrieval fee by the Defendants in violation of Wis. Stat. §146.83(3f)(b)(4) - (5).

47. For medical records production related to IOD invoice number 26247649, the IOD and CSM charged the Plaintiff a certification fee, processing fee, basic or retrieval fees although the request was made by the plaintiff or a person authorized in writing by the Plaintiff, namely, his attorneys.

48. For medical records production related to IOD invoice number 26252002, the IOD and CSM charged the Plaintiff a certification fee, processing fee, basic or retrieval fees although the request was made by the plaintiff or a person authorized in writing by the Plaintiff, namely, his attorneys.

49. That all invoices issued from IOD and/or CSM to Plaintiff or his counsel were paid.

50. That IOD and/or CSM have charged other Wisconsin residents a retrieval fee, basic, processing and/or a certification fee or other inappropriate fees although the request for

the records or bills was made by the patients themselves or persons authorized in writing by them.

51. That IOD and/or CSM were not entitled to charge the Plaintiff or the Class Members a basic fee, processing fee, certification fee or retrieval fees when they request their own records or someone authorized by them in writing has requested their records.

52. That IOD and/or CSM have charged non-allowed fees and fees in excess of the amounts allowed by Wisconsin law.

53. That IOD and CSM have violated the provisions of Wis. Stat. §146.83.

54. The Plaintiff and the Class Members who have been charged a basic fee, processing fee, retrieval fee or certification fee when that person or a person authorized by them in writing has requested their own records, is entitled to recover the fees charged by the Defendants.

55. That IOD and/or CSM knowingly and willfully violated Wis. Stat. §146.83 by charging retrieval fees, certification fee or other inappropriate fees.

56. That the violation of Wis. Stat. §146.83, subjects Ciox, due to its having assumed all liability of IOD, and CSM to exemplary damages of between $1.00 and $25,000.00 per violation, plus costs and reasonable actual attorney fees pursuant to Wis. Stat. §146.84(1)(a).

57. That Plaintiff and the Class Members have incurred actual damages due to the knowing and willful violation of Wis. Stat. §146.83 by IOD and/or CSM.

58. That Plaintiff and the Class Members are entitled to recover their damages, plus exemplary damages of between $1.00 and $25,000.00 per violation, plus costs and reasonable actual attorney fees from Defendants for the knowing and willful violation of Wis. Stat. §146.83 by IOD and/or CSM.

59. That, alternatively, IOD and/or CSM negligently violated Wis. Stat. §146.83 by charging retrieval fees, certification fee or other inappropriate fees.

60. A negligent violation of Wis. Stat. §146.83, subjects Defendants to exemplary damages of between $1.00 and $1,000.00 per violation, plus costs and reasonable actual attorney fees pursuant to Wis. Stat. §146.84(1)(b).

61. That Plaintiff and the Class Members have incurred actual damages due to the negligent violation of Wis. Stat. §146.83 by IOD and/or CSM.

62. That Plaintiff and the Class Members are entitled to recover their damages, plus exemplary damages of between $1.00 and $1,000.00 per violation, plus costs and reasonable actual attorney fees from Defendants for the negligent violation of Wis. Stat. §146.83.

## UNJUST ENRICHMENT - DISGORGEMENT

63. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

64. IOD and CSM knew the monies charged were unlawful.

65. IOD and/or CSM appreciated and received the benefit of the monies they charged illegally.

66. IOD and/or CSM's retention of said benefit is inequitable and unjust and Defendants should be required to return said monies and disgorge all illegal charges, profits and interest earned on same.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in favor of Plaintiff and the Class Members and against the Defendants as follows|:

1) Certify the Proposed Classes, appoint the Plaintiff as Class Representative and appoint his counsel as Class Counsel;

12

2) For compensatory damages in an amount to be determined at trial by a jury;

3) For exemplary damages up to $25,000.00 per violation, plus costs and reasonable actual attorney's fees incurred by Plaintiff(s);

4) For the return of all monies, profit, interest and pre-judgment interest on all sums illegally collected;

5) For such other and further relief as this court finds necessary and proper.

---

## PLAINTIFF REQUESTS A TRIAL BY JURY

---

Dated this 22nd day of January, 2018.

WELCENBACH LAW OFFICES, S.C.
Attorney for Plaintiff

Electronically submitted by Robert J. Welcenbach
Robert J. Welcenbach
State Bar No. 1033091

13

**2017 WI 45**

# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2014AP2236 |
| COMPLETE TITLE: | Carolyn Moya,<br>       Plaintiff-Respondent-Petitioner,<br>    v.<br>Aurora Healthcare, Inc. and Healthport<br>Technologies, LLC,<br>       Defendants-Appellants. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
366 Wis. 2d 541, 874 N.W. 2d 336
(2016 WI App 5 - Published)

| | |
|---|---|
| OPINION FILED: | May 4, 2017 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 20, 2016 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Karen E. Christenson |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | ZIEGLER, J. dissents (opinion filed). |
| NOT PARTICIPATING: | BRADLEY, R. G., J. and KELLY, J. did not<br>participate. |

ATTORNEYS:

    For the plaintiff-respondent-petitioners, there was a brief by *Robert J. Welcenbach* and *Welcenbach Law Offices, S.C.*, Milwaukee, and oral argument by *Robert J. Welcenbach.*

    For the defendants-appellants, there was a brief by *John Franke*, *Daniel A. Manna* and *Gass, Weber and Mullins, LLC*, Milwaukee, and oral argument by *John Franke.*

2017 WI 45

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2014AP2236
(L.C. No.   13-CV-2642)

STATE OF WISCONSIN                    :        IN SUPREME COURT

**Carolyn Moya,**

　　　　**Plaintiff-Respondent-Petitioner,**

**v.**

**Aurora Healthcare, Inc. and Healthport Technologies, LLC,**

　　　　**Defendants-Appellants.**

**FILED**

**MAY 4, 2017**

Diane M. Fremgen
Clerk of Supreme Court

---

REVIEW of a decision of the Court of Appeals.   *Reversed and remanded for further proceedings.*

¶1   MICHAEL   J.   GABLEMAN,   J.   This   is   a   review   of   a published   decision   of   the   court   of   appeals   that   reversed   the Milwaukee   County   circuit   court's[1]   denial   of   Aurora   Healthcare, Inc.   and   Healthport   Technologies,   LLC's   (collectively   referred to   as   "Healthport")   motion   for   summary   judgment   and   remanded   the case   with   directions   to   grant   Healthport's   motion   for   summary

---

[1] The Honorable Karen E. Christenson presiding.

judgment.  <u>Moya v. Aurora Healthcare, Inc.</u>, 2016 WI App 5, 366 Wis. 2d 541, 874 N.W.2d 336.

¶2    Today, we are asked to interpret the meaning of the phrase "person authorized by the patient" in Wis. Stat. § 146.83(3f)(b)4.-5. (2013-14),[2] which exempts a "patient or a person authorized by the patient" from paying certification charges and retrieval fees for obtaining copies of the patient's health care records.  More particularly, we are asked to determine whether an attorney whose client authorized him via a HIPAA[3] release form to obtain her health care records may benefit from this fee exemption.  Because the phrase "person authorized by the patient" is defined in Wis. Stat. § 146.81(5) to include "any person authorized in writing by the patient," we hold that an attorney authorized by his or her client in writing via a HIPAA release form to obtain the client's health care records is a "person authorized by the patient" under Wis. Stat. § 146.83(3f)(b)4.-5. and is therefore exempt from certification charges and retrieval fees under these subdivisions. Consequently, the decision of the court of appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

---

[2] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

[3] HIPAA stands for Health Insurance Portability and Accountability Act.  A HIPAA release form is a type of form wherein a patient consents to the release of his or her health care information to a third party.

2

No. 2014AP2236

¶3    We begin with a brief factual background and description of the procedural history. We then set forth the standard of review and the relevant rules for statutory interpretation. We then conclude that Carolyn Moya's ("Moya") attorney is a "person authorized by the patient" under Wis. Stat. § 146.83(3f)(b)4.-5. and is therefore exempt from the certification charge and retrieval fee authorized by that statute. Next, we address Healthport's arguments that the doctrines of voluntary payment and waiver bar Moya's claim.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.   The Statutes Governing Access to Health Care Records

¶4    Access to patient health care records is governed by Wis. Stat. § 146.83. Under subsec. (3f), a health care provider shall, subject to exceptions that are inapplicable here, provide copies of a patient's health care records "if a person requests copies of a patient's health care records, provides informed consent, and pays the applicable fees under par. (b)." § 146.83(3f)(a).

¶5    Pursuant to para. (b), health care providers may impose certain costs on the person requesting health care records under para. (a):

> (b) Except as provided in sub. (1f), a health care provider may charge no more than the total of all of the following that apply for providing the copies requested under par. (a):
>
> 1. For paper copies:  $1 per page for the first 25 pages; 75 cents per page for pages 26 to 50; 50 cents per page for pages 51 to 100; and 30 cents per page for pages 101 and above.

3

2. For microfiche or microfilm copies, $1.50 per page.

3. For a print of an X-ray, $10 per image.

4. If the requester is not the patient or a person authorized by the patient, for certification of copies, a single $8 charge.

5. If the requester is not the patient or a person authorized by the patient, a single retrieval fee of $20 for all copies requested.

6. Actual shipping costs and any applicable taxes.

Wis. Stat. § 146.83(3f)(b) (emphasis added).  According to subd. 4. and subd. 5., the patient and a person authorized by the patient are exempt from the certification charge and retrieval fee.  This statute, though, does not provide a definition for a "person authorized by the patient."

¶6    Instead, a "person authorized by the patient" is defined in Wis. Stat. § 146.81(5) as

the parent, guardian, or legal custodian of a minor patient, as defined in s. 48.02 (8) and (11), the person vested with supervision of the child under s. 938.183 or 938.34 (4d), (4h), (4m), or (4n), the guardian of a patient adjudicated incompetent in this state, the person representative, spouse, or domestic partner under ch. 770 of a deceased patient, any person authorized in writing by the patient or a health care agent designated by the patient as a principal under ch. 155 if the patient has been found to be incapacitated under s. 155.05 (2), except as limited by the power of attorney for health care instrument. If no spouse or domestic partner survives a deceased patient, "person authorized by the patient" also means an adult member of the deceased patient's immediate family, as defined in s. 632.895 (1) (d).  A court may appoint a temporary guardian for a patient believed incompetent to consent to the release of records under this section as the person authorized by

4

> the patient to decide upon the release of records, if
> no guardian has been appointed for the patient.

(Emphasis added).  Because this definition uses the disjunctive "or," see Hull v. State Farm Mut. Auto. Ins., 222 Wis. 2d 627, 638, 586 N.W.2d 863 (1998) ("'[O]r' should be interpreted disjunctively."), in order to be a person authorized by the patient under Wis. Stat. § 146.83(3f)(b)4.-5., and therefore enjoy exemption from the certification charge and retrieval fee, a person must fall into only one of the above categories of persons.  One of the categories in the above definition is "any person authorized in writing by the patient," and it is this category on which Moya relies in arguing that her attorney is a "person authorized by the patient" under § 146.83(3f)(b)4.-5.

### B.   Moya's Class Action Lawsuit

¶7    This case comes to us by way of a class action lawsuit filed by Moya on behalf of not only herself but all other similarly situated persons who have been billed the certification charge and retrieval fee by Healthport for obtaining their own healthcare records.  The class action arose from Moya's personal injury claim[4] in which Moya hired Welcenbach Law Offices, S.C. to represent her and the law firm had to pay the certification charge and retrieval fee, despite the fact that Moya had authorized the law firm in writing to obtain those records.

---

[4] Moya's personal injury claim arose from a car accident in 2011 from which she sustained injuries.  This claim has since been settled.

5

¶8    Moya authorized her attorney, Robert Welcenbach, to obtain her health care records by signing HIPAA release forms giving to Welcenbach Law Offices, S.C. "authoriz[ation] to receive [her] health information."

¶9    Atty. Welcenbach subsequently submitted requests for Moya's health care records,[5] and Healthport, when fulfilling the requests, imposed certification charges and retrieval fees pursuant to Wis. Stat. § 146.83(3f)(b)4.-5. Atty. Welcenbach paid the certification charges and retrieval fees and passed the associated costs to Moya by deducting the costs from the settlement proceeds resulting from her personal injury claim.[6]

¶10    At the time Healthport invoiced Atty. Welcenbach, he paid the costs, and he did not specifically dispute them. However, he had on multiple previous occasions disputed the imposition of such costs in other cases.

---

[5] Atty. Welcenbach submitted his request to Moya's health care provider, Aurora Healthcare, Inc. ("Aurora"), but Aurora and Healthport have an agreement whereby Healthport handles Aurora's health care records requests.

[6] The total deducted from Moya's settlement proceeds for these costs was $294.70.

Contrary to the assertion made by the dissent, the fact that Atty. Welcenbach passed these costs along to Moya was not a factor in arriving at our conclusion that Atty. Welcenbach is a person authorized by the patient for purposes of Wis. Stat. § 146.83(3f)(b)4.-5. See dissent, ¶62 n.3. Our determination that Atty. Welcenbach is a person so authorized is derived from our application of the plain language of the statute and nothing more.

6

¶11   In   response   to   Healthport's   imposition   of   the certification charges and retrieval fees, Moya filed this class action lawsuit.   She argues that Healthport violated Wis. Stat. § 146.83(3f)(b)4.-5. when it imposed the certification charges and retrieval fees because her attorney is a "person authorized by the patient," thereby exempting her attorney from paying the certification charges and retrieval fees.

¶12  Healthport  moved  to  dismiss  Moya's  complaint  for failure  to  state  a  claim,  and  the  circuit  court[7]  denied Healthport's  motion.    Healthport  filed  an  answer,  and  the parties   underwent   limited   discovery.    After   the   limited discovery, Healthport filed a motion for summary judgment asking the circuit court to dismiss Moya's claim with prejudice.   The circuit court[8] denied Healthport's motion.   Healthport filed a motion for reconsideration, and the circuit court[9] again denied Healthport's motion.

¶13  Healthport  filed  an  interlocutory  appeal,  and  the court  of  appeals  reversed  the  circuit  court's  denial  of Healthport's motion for summary judgment and remanded the case with  instructions  to  grant  Healthport's  motion.    Moya,  366 Wis. 2d 541, ¶1.   The court of appeals determined that Moya's attorney  was  not  a  "person  authorized  by  the  patient"  and

---

[7] The Honorable William W. Brash III presiding.

[8] The Honorable Karen E. Christenson presiding.

[9] The Honorable Pedro A. Colon presiding.

7

therefore Healthport could impose the certification charges and retrieval fees on Moya's attorney.  Id., ¶16.  Judge Kessler dissented stating that she would uphold the circuit court's denial of Healthport's motion for summary judgment and would conclude that Healthport could not impose the certification charge and retrieval fee.  Id., ¶¶28-29 (Kessler, J., dissenting).

¶14  Moya petitioned this court for review, which we granted in order to determine whether her attorney is a "person authorized by the patient" and thus exempt from paying the certification charge and the retrieval fee found in Wis. Stat. § 146.83(3f)(b)4.-5.

## II.  STANDARD OF REVIEW

¶15  "Whether the circuit court properly granted summary judgment is a question of law that this court reviews de novo." Racine County v. Oracular Milwaukee, Inc., 2010 WI 25, ¶24, 323 Wis. 2d 682, 781 N.W.2d 88 (quoting Hocking v. City of Dodgeville, 2009 WI 70, ¶7, 318 Wis. 2d 681, 768 N.W.2d 552). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2).  In making this determination, this court applies a two-step test. Green Spring Farms v. Kersten, 136 Wis. 2d 304, 314-15, 401 N.W.2d 816 (1987).  Under the first step, this court asks if the plaintiff stated a claim for relief.  Id. at 315.  Under the

8

second step, this court applies the summary judgment statute and asks if any factual issues exist that preclude summary judgment. Id.

¶16 "We review questions of statutory interpretation and application independently, but benefiting from the discussions of the circuit court and the court of appeals." State v. Grunke, 2008 WI 82, ¶10, 311 Wis. 2d 439, 752 N.W.2d 769.

### III.  DISCUSSION

#### A.  The Rules of Statutory Interpretation

¶17 "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110.  Statutory interpretation begins with the text of the statute.  Id., ¶45 (quoting Seider v. O'Connell, 2000 WI 76, ¶43, 236 Wis. 2d 211, 612 N.W.2d 659).  If the text of the statute is plain and unambiguous, our inquiry stops there.  Id. (quoting Seider, 236 Wis. 2d 211, ¶43).

¶18 If the text is ambiguous, we must look beyond the text to other, extrinsic sources of information, such as legislative history, to interpret the statute.  Id., ¶46.  "[A] statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses."  Id., ¶47.  Even without ambiguity, though, we may consult extrinsic sources to confirm our understanding of the plain language of a statute. Id., ¶51.

9

¶19   "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning."  Id., ¶45.  We also look to the context: "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results."  Id., ¶46.

B.   Interpretation of "Any Person Authorized in Writing by the Patient"

¶20   Moya argues that "any person authorized in writing by the patient" in Wis. Stat. § 146.81(5) is "defined broadly by the legislature" and that the plain meaning of the statutory language requires nothing more than a person and a written authorization from the patient.  Thus, Moya's attorney qualifies as a "person authorized in writing by the patient" simply because he is a person and has a written authorization from Moya in the nature of the HIPAA release form.  Healthport, on the other hand, argues that the context of § 146.81(5) indicates that the person authorized in writing by the patient must (in addition to having authorization to obtain health care records) also be authorized to make health care decisions on behalf of the patient.  In response to this argument, Moya says Healthport can achieve this definition only by adding its own language to the statute.

¶21   After examining the language of the statute and applying the well-established rules of statutory interpretation,

10

we agree with Moya.   The context of the statutory definition of "person authorized by the patient" provided in § 146.81(5) indicates that "any person authorized in writing by the patient" is a stand-alone category, separate and apart from the remaining categories, containing no limitations beyond those expressly written.   We base our determination in this regard on the punctuation and conjunctions given in the statute and see these categories as follows:

- (1) "[T]he parent, guardian, or legal custodian of a minor patient, as defined in s. 48.02 (8) and (11)";

- (2) "the person vested with supervision of the child under s. 938.138 or 938.34 (4d), (4h), (4m), or (4n)";

- (3) "the guardian of a patient adjudicated incompetent in this state";

- (4) "the personal representative, spouse, or domestic partner under ch. 770 of a deceased patient";

- (5) "any person authorized in writing by the patient or";

- (6) "a health care agent designated by the patient as a principal under ch. 155 if the patient has been found to be incapacitated under s. 155.05(2), except as limited by the power of attorney for health care instrument."

- (7) "If no spouse or domestic partner survives a deceased patient, 'person authorized by the patient' also means an adult member of the deceased patient's immediate family, as defined in s. 632.895(1)(d)."

- (8) "A court may appoint a temporary guardian for a patient believed incompetent to consent to the release of records under this section as the person authorized by the patient to decide upon the release of the records, if no guardian has been appointed for the patient."

Wis. Stat. § 146.81(5) (emphasis added).

11

¶22   Thus, the phrase "any person authorized in writing by the patient" must be interpreted as its own category of persons authorized by the patient.   The statutory language is unambiguous in that it requires only a person with a written authorization from the patient.   The plain meaning of the statute does not require that the authorization be an authorization to make health care decisions on behalf of the patient.   Thus, when the phrase "person authorized by the patient" is used in Wis. Stat. § 146.83(3f)(b)4.-5. in the context of obtaining copies of health care records, it includes "any person authorized in writing by the patient" to obtain such records.   The definition requires no additional authorization for such person to qualify for the exemption from the certification charge and retrieval fee.

¶23   Healthport argues that this conclusion is inconsistent with the general principle that we interpret an item in a list consistently with the remaining items in the list.   See State v. Popenhagen, 2008 WI 55, ¶46, 309 Wis. 2d 601, 749 N.W.2d 611. From this general principle, Healthport urges us to conclude that "any person authorized in writing by the patient" must have the ability to make health care decisions on the patient's behalf.   Healthport's argument runs as follows:   Because each of the other categories of persons in the definition of "person authorized by the patient" in Wis. Stat. § 146.81(5) has the authority to make health care decisions on behalf of the patient, the fifth category listed above must have that

12

authority as well in order to qualify as a "person authorized by the patient."

¶24  This argument is unpersuasive in light of the relevant statutory context.  Examining the various categories in the definition of "person authorized by the patient" in Wis. Stat. § 146.81(5) demonstrates that the legislature did not specify that each must have the authority to make health care decisions for the patient.  Instead, the legislature placed varying parameters on each distinct category.  For example, in the first category, the legislature chose to limit it to the parent, guardian, or legal custodian of a minor patient.  Therefore, a parent, guardian, or legal custodian of a minor is automatically a "person authorized by the patient" wherever that phrase appears in Wis. Stat. §§ 146.81-.84; nothing else is necessary to qualify and no other limitation is imposed.  Other categories, however, are narrower.  For example, the eighth category is specifically limited to a temporary guardian appointed by a court to "decide upon the release of records" for an incompetent patient.  At least for this category, having specific authorization to make health care decisions for the incompetent patient is a requirement.

¶25  We cite these instances of circumscription within the statute not as demonstrations of the legislature's collective facility with language but, rather, to bolster our understanding that, when the legislature chooses to say "any person authorized in writing by the patient," we must interpret these words without the kind of limitation proposed by Healthport.  Cf.

13

Indus. to Indus., Inc. v. Hillsman Modular Molding, Inc., 2002
WI 51, ¶19, 252 Wis. 2d 544, 644 N.W.2d 236.  Put simply, had
the  legislature  intended  to  place  parameters  of  the  kind
Healthport  suggests  on  a  person  authorized  in  writing  by  the
patient, "it would have done so."  Id.  It did not, and so we do
not.[10]

¶26  Healthport  argues  that  interpreting  the  category  "any
person  authorized  in  writing  by  the  patient"  without  the
additional  requirement  that  the  authorization  be  for  making
health care decisions creates chaos and inconsistency throughout
the  statutory  scheme.   Without  constancy  as  to  what  the
authorization must be for, Healthport argues that the definition
of a "person authorized by the patient" would change each time
it is used throughout the statute.  However, it is enough to
refute this argument to note that, contrary to what Healthport
argues, the definition of a "person authorized by the patient"
remains  constant  throughout  the  statutes  governing  access  to
health care records.  Instead of creating chaos, permitting the
specific nature of the authorization allows for flexibility.  In

_____

[10] According  to  the  dissent,  such  an  interpretation  is  one
done in a vacuum, not taking into account the context in which
the  words  are  written.   E.g., dissent, ¶41.   However,
interpreting the text to also contain the words "to consent to
the release of the patient's health care records" ignores the
immediate context of the text we are asked to interpret here
because it does not take into account the distinction between
"any person authorized in writing by the patient" and the other
categories of persons used in the statute.

14

all cases, we simply look to the written authorization to determine what the patient has authorized the person to do.

¶27 Because the definition of "any person authorized in writing by the patient" does not specify what the person must be authorized to do, the written authorization necessary for an attorney to qualify will depend on the function the attorney seeks to perform. In other words, why an attorney might need written authorization may be different in different contexts. For example, to perform the function of a "person authorized by the patient" in some contexts, the attorney might need authorization to make certain decisions on behalf of the patient. See, e.g., Wis. Stat. § 146.82(1) (informed consent to release records may be given by a "person authorized by the patient"). But in other contexts, the attorney would only need authorization to receive copies of health care records. That is the case in Wis. Stat. § 146.83(3f), the statute governing requests for copies of such records. Regardless of the context, what mattered to the legislature in defining "person authorized by the patient" to include "any person authorized in writing by the patient" is that the person does have written authorization from the patient to perform the relevant function.

¶28 Past iterations of the statute support our conclusion that the plain meaning of "any person authorized in writing by the patient" is exactly what it says. See County of Dane v. LIRC, 2009 WI 9, ¶27, 315 Wis. 2d 293, 759 N.W.2d 571 (quoting Richards v. Badger Mut. Ins., 2008 WI 52, ¶22, 309 Wis. 2d 541, 749 N.W.2d 581) (statutory context includes past iterations of

15

the statute).   When the legislature first enacted the statute in 1979, Wis. Stat. § 146.81(5) defined "person authorized by the patient" as

> the parent, guardian or legal custodian of a minor patient, as defined in s. 48.02 (9) and (11), the guardian of a patient adjudged incompetent, as defined in s. 880.01 (3) and (4), the personal representative or spouse of a deceased patient or any person authorized in writing by the patient.

In this version of the statute, "any person authorized in writing by the patient," as evidenced by the use of "or," is the last category of persons considered a "person authorized by the patient."   We see from our reading of the 1979 statute that "any person authorized in writing by the patient" has always been a distinct category of persons—one without limitation other than a requirement of authorization in writing from the patient.

¶29   Nevertheless, Healthport argues that a 2014 amendment to the statutes governing health care records, Wis. Stat. § 146.83(1b), provides context that shows that the legislature intended to exclude attorneys from the definition of a "person authorized by the patient."   The 2014 addition of § 146.83(1b) states, "Notwithstanding s. 146.81(5), in this section a 'person authorized by the patient' includes an attorney appointed to represent the patient under s. 977.08[11] if that attorney has written informed consent from the patient to view and obtain copies of the records."   According to Healthport, the

---

[11] Wisconsin Stat. § 977.08 relates to the appointment of a state public defender.

16

legislature's use of "[n]otwithstanding" shows that the legislature, in § 146.83(1b), included a certain type of attorney—public defenders—as a person authorized by the patient to receive health care records in spite of a general exclusion of attorneys from Wis. Stat. § 146.81(5).

¶30 While the legislature may have intended to expressly include public defenders, we decline Healthport's implicit invitation to add limiting language to Wis. Stat. § 146.81(5). The legislature, with its use of "any person," chose not to place a limit on who could be authorized in writing by the patient under § 146.81(5), and we give effect to the enacted text. See Bruno v. Milwaukee County, 2003 WI 28, ¶14, 260 Wis. 2d 633, 660 N.W.2d 656 (refusing to add additional requirements to the definition of "retirement" because those additional requirements were not mentioned in the text). And more to the point, nothing about the express inclusion of public defenders leads us to conclude the legislature intended to exclude other attorneys.[12]

---

[12] Healthport has failed to establish that the doctrine of expressio unius est exclusio alterius (the expression of one thing is the exclusion another) applies here because nothing indicates that the legislature considered attorneys other than public defenders when enacting the language of Wis. Stat. § 146.83(1b). See Wis. Citizens Concerned for Cranes & Doves v. DNR, 2004 WI 40, ¶17 n.11, 270 Wis. 2d 318, 677 N.W.2d 612 ("This rule may be applied only where there is some evidence that the legislature intended it to apply.").

(continued)

17

¶31   In   sum,   Moya's   attorney   qualifies   as   a   "person authorized  by  the  patient"  because  he  is  a  person,  he  has  a written  authorization  from  Moya  via  the  HIPAA  release  form,  and Moya,  the  patient,  signed  the  HIPAA  release  form  to  provide  her attorney  the  authorization  to  receive  her  health  care  records. Therefore,   as   a   person   authorized   by   the   patient,   Moya's attorney  is  exempt  from  the  certification  charges  and  retrieval fees  Healthport  imposed  under  Wis.  Stat.  § 146.83(3f)(b)4.-5.

C.   The Doctrine of Voluntary Payment Does Not Apply

¶32   Healthport   argues   that   the   doctrine   of   voluntary payment  bars  Moya's  class  action  lawsuit  and  thereby  entitles Healthport  to  summary  judgment;  however,  we  conclude  that  the doctrine  of  voluntary  payment  does  not  apply.

¶33   "The  voluntary  payment  doctrine  places  upon  a  party who  wishes  to  challenge  the  validity  or  legality  of  a  bill  for payment   the   obligation   to   make   the   challenge   either   before voluntarily  making  payment,  or  at  the  time  of  voluntarily  making payment."   Putnam v. Time Warner Cable of Se. Wis., Ltd. P'ship, 2002  WI  108,  ¶13,  255  Wis. 2d 447,  649  N.W.2d 626.   "[T]he voluntariness   in   the   doctrine   goes   to   the   willingness   of   a

───────────────────────────

The  dissent  also  seems  to  be  looking  for  "attorneys"  to  be expressly  and  specifically  listed  persons  authorized  by  the patient.   See, e.g.,  dissent,  ¶42.   However,  if  we  are  to  look for  such  narrow  categories,  who  then  would  qualify?   The  answer is  no  one  because  no  category  of  persons  is  so  specifically listed  in  the  statute.

18

person to pay a bill <u>without protest as to its correctness or legality</u>." <u>Id.</u>, ¶15.

¶34  It is axiomatic that we give effect to the legislature's expressed intent when we interpret statutes. <u>Kalal</u>, 271 Wis. 2d 633, ¶44.  Here, we determined that the legislature's expressed intent that a person with a written authorization from a patient does not have to pay the certification charge or retrieval fee for obtaining health care records.  Thus, "[a]pplication of the common law voluntary payment doctrine would undermine the manifest purposes of [Wis. Stat. § 146.83(3f)]."  <u>MBS-Certified Pub. Accountants, LLC v. Wis. Bell, Inc.</u>, 2012 WI 15, ¶4, 338 Wis. 2d 647, 809 N.W.2d 857.  Consequently, we cannot apply it in this case to bar Moya's claim.

### D.  The Doctrine of Waiver Does Not Apply

¶35  Healthport also argues that Moya's class action lawsuit is barred by the doctrine of waiver.  We disagree.

¶36  "Waiver has been defined as a voluntary and intentional relinquishment of a known right." <u>Attoe v. State Farm Mut. Auto. Ins.</u>, 36 Wis. 2d 539, 545, 153 N.W.2d 575 (1967).  Waiver can be done through conduct.  <u>Id.</u>

¶37  Healthport argues that Moya waived her ability to obtain her health care records at a lower cost because she chose to authorize her attorney to obtain her health care records instead of requesting them herself, thereby voluntarily and intentionally relinquishing her right not to be charged the certification charge and retrieval fee.  As with the application

19

of the doctrine of voluntary payment, we decline to apply the doctrine of waiver to subvert the legislature's intent.  To conclude that the doctrine of waiver applies would require us to conclude that Moya's attorney has to pay the certification charge and retrieval fee.  However, we conclude that Moya's attorney does not have to pay the certification charge or retrieval fee because he is a "person authorized by the patient."  Thus, the doctrine of waiver does not apply to bar Moya's class action lawsuit.

### IV.  CONCLUSION

¶38  Because the phrase "person authorized by the patient" is defined in Wis. Stat. § 146.81(5) to include "any person authorized in writing by the patient," we hold that an attorney authorized by his or her client in writing via a HIPAA release form to obtain the client's health care records is a "person authorized by the patient" under Wis. Stat. § 146.83(3f)(b)4.-5. and is therefore exempt from certification charges and retrieval fees under those subdivisions.

*By the Court.*—The decision of the court of appeals is reversed and the case is remanded for proceedings consistent with this opinion.

¶39  REBECCA GRASSL BRADLEY and DANIEL KELLY, JJ., did not participate.

20

¶40 ANNETTE KINGSLAND ZIEGLER, J. *(dissenting)*. The question before this court is whether a personal injury attorney who obtains his or her client's written consent to receive copies of the client's health care records is a "person authorized by the patient" under Wis. Stat. § 146.83(3f)(b), such that the attorney need not pay certification and retrieval fees when requesting copies of the records from a health care provider. The circuit court concluded that such an attorney is exempt from the fees as a "person authorized by the patient." The court of appeals in examining the same statutory language answered this question in the negative, concluding that a "person authorized by the patient" within the meaning of Wis. Stat. §§ 146.81(5) and 146.83(3f)(b) is a person who has "the power to consent to the release of the patient's records," not a person who merely has the power to receive those records. Moya v. Aurora Healthcare, Inc., 2016 WI App 5, ¶16, 366 Wis. 2d 541, 874 N.W.2d 336 (emphasis added). This court reverses that court of appeals' determination today purportedly because the language is clear. I write because when utilizing traditional methods of statutory interpretation, examining the text, its context and construction, the plain meaning demonstrates that "person authorized by the patient" has a less expansive meaning than my colleagues have adopted.

¶41 The court concludes that an attorney authorized by his or her client in writing to obtain the client's health care records is a "person authorized by the patient" under Wis. Stat. §§ 146.81(5) and 146.83(3f)(b). In so doing it explains that it

1

is relying on the "plain meaning" of the statute.  I acknowledge that the interpretation of the statutes adopted by this court is defensible if one only looks at those words in a vacuum.  The conclusion of the court of appeals, however, is also supported by the text.  How do we know which interpretation is correct? Each interpretation relies on the language of the statute, yet the court of appeals and this court reach opposite conclusions. I endeavor to wade through a more thorough statutory analysis in order to reach a conclusion.

¶42  As a practical matter, it certainly makes sense that the legislature might choose to exempt personal injury attorneys from the challenged fees.  These attorneys act as advocates for their clients and perhaps should be able to obtain the records without the fee.  However, these lawyers are not listed in Wis. Stat. § 146.81(5), the statute that defines "person authorized by the patient," nor are they exempt under Wis. Stat. § 146.83(1b), whereby the legislature determined that public defenders need not pay the fee.  These lawyers do not fall into the class of persons listed in § 146.81(5) as they are not otherwise legally poised to essentially become the decision-maker for the patient when the patient cannot legally act on his or her behalf.  Section 146.81(5) defines "person authorized by the patient" in part to be:

> [T]he parent, guardian, or legal custodian of a minor patient, as defined in s. 48.02(8) and (11), the person vested with supervision of the child under s. 938.183 or 938.34(4d), (4h), (4m), or (4n), the guardian of a patient adjudicated incompetent in this state, the personal representative, spouse, or domestic partner under ch. 770 of a deceased patient,

2

> any person authorized in writing by the patient or a
> health care agent designated by the patient as a
> principal under ch. 155 if the patient has been found
> to be incapacitated under s. 155.05(2), except as
> limited by the power of attorney for health care
> instrument.

§ 146.81(5).   Notably absent in this provision are lawyers who advocate on a patient's behalf in a lawsuit.[1]   While it may make sense to exempt these lawyers from paying fees, the choice is not the court's to make; it is within the province of the legislature.   I must examine the text of the statute at issue using fundamental tools of statutory construction to determine which of two interpretations of the phrase "person authorized by the patient" was intended by the legislature; as put by Aurora Healthcare, Inc., and Healthport Technologies, LLC ("Healthport"), these two interpretative options are: (1) "any person authorized in writing by the patient to obtain the patient's health care records"; or (2) "any person authorized in writing by the patient to consent to the release of the patient's health care records."   In so doing I look to the surrounding text and examine that text in light of the canons of construction, not just part of the statutory text, in a vacuum.

> It is . . . a solemn obligation of the judiciary to
> faithfully give effect to the laws enacted by the
> legislature, and to do so requires a determination of
> statutory meaning.   Judicial deference to the policy
> choices enacted into law by the legislature requires
> that statutory interpretation focus primarily on the

---

[1] Those attorneys advocate on behalf of the client/patient and may receive authority from a client to, for example, settle a case; importantly, however, such attorneys, unlike those persons in Wis. Stat. § 146.81(5), are not standalone decision-makers who act with or without the patient's consent.

3

language of the statute.  We assume that the
legislature's intent is expressed in the statutory
language. . . . It is the enacted law, not the
unenacted intent, that is binding on the public.
Therefore, the purpose of statutory interpretation is
to determine what the statute means so that it may be
given its full, proper, and intended effect.

State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58,
¶44, 271 Wis. 2d 633, 681 N.W.2d 110.

¶43  Given the above charge, I write to examine the
statutes at issue and the court's reasoning, considering the
disputed statutory text in context and in light of fundamental
canons of construction.  For reasons I will explain, the
interpretation adopted by the court today fails to adhere to
fundamental principles of statutory construction and in fact
renders the overall statutory scheme virtually meaningless.
Ultimately, I would conclude, like the court of appeals, that
the text of the statutes requires a conclusion that Moya's
personal injury attorney is not a "person authorized by the
patient" under Wis. Stat. § 146.83(3f)(b).  The lawyer at issue
is not within the definition of "person authorized by the
patient" in Wis. Stat. § 146.81(5) nor is he or she exempt from
payment of fees under § 146.83(1b) as are other lawyers.  Thus,
I must respectfully dissent.

I

¶44  I begin by setting forth established principles of
statutory interpretation.  Statutory interpretation is governed
first and foremost by the principle that "[t]he words of a
governing text are of paramount concern, and what they convey,
in their context, is what the text means."  Antonin Scalia &

4

Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 56 (2012) (denominating this rule the "Supremacy-of-Text Principle"). Judges should "determin[e] the application of a governing text to given facts on the basis of how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued." Id. at 33. This approach recognizes that "[t]he law is what the law says," Bank One Chicago, N.A. v. Midwest Bank & Trust Co., 516 U.S. 264, 279 (1996) (Scalia, J., concurring in part and concurring in the judgment), and that "[a]n interpreter who bypasses or downplays the text becomes a lawmaker without obeying the constitutional rules for making law." Frank H. Easterbrook, Textualism and the Dead Hand, 66 Geo. Wash. L. Rev. 1119, 1120 (1998).

¶45 Proper statutory interpretation rests on the fundamental premise that "[n]othing but conventions and contexts cause a symbol or sound to convey a particular idea." Scalia & Garner, supra, at xxvii (emphases added).

> The enactment of a law is a form of communication through language——from the law-giver to those affected by the law, as well as to those who must enforce, apply, or interpret the law. This sort of communication is only possible if the participants have a set of shared practices and conventions that permit them to convey meaning to each other. At the most basic level, intelligible communication requires that both parties attach the same meaning to the same sounds or signs. Furthermore, we often need to be able to tell which of several possible meanings is intended by considering the context in which a word is used. Our shared practices and conventions also go beyond word meanings. The rules of grammar and syntax, for example, represent shared conventions that assist us in decoding the communications of others.

John F. Manning & Matthew C. Stephenson, Legislation and Regulation 222 (2010).

¶46 These twin pillars of interpretation, context and convention, are indispensable to the functioning of the judiciary.  Convention is sometimes realized in part through the implementation of certain "canons of construction," which are "rules of thumb that that help courts determine the meaning of legislation." Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253 (1992).  A number of these canons will be discussed in more detail below.

¶47 Context, on the other hand, includes (1) "the purpose of the text," which must be "gathered only from the text itself, consistently with the other aspects of its context"; (2) "a word's historical associations acquired from recurrent patterns of past usage"; and (3) "a word's immediate syntactic setting—that is, the words that surround it in a specific utterance." Scalia & Garner, supra, at 33 (emphasis omitted) (citing I.A. Richards, Interpretation in Teaching viii (1938)).

¶48 Application of these principles—an unrelenting focus on the meaning of the text, discovered through a careful examination of context and the application, where necessary, of canons of construction—promotes "certainty, predictability, objectivity, reasonableness, rationality, and regularity, which are the objects of the skilled interpreter's quest." Id. at 34 (citing Frederick J. de Sloovère, Textual Interpretation of Statutes, 11 N.Y.U. L.Q. Rev. 538, 541 (1934)).  I now turn to

6

the issue of statutory interpretation at the heart of this appeal and, in analyzing it, employ this methodology.

II

¶49 Wisconsin Stat. § 146.83(3f)(a) explains that, with certain exceptions, "if a person requests copies of a patient's health care records, provides informed consent, and pays the applicable fees under par. (b), the health care provider shall provide the person making the request copies of the requested records." Wis. Stat. § 146.83(3f)(a). Wisconsin Stat. § 146.83(3f)(b), in turn, establishes the "applicable fees," including, as relevant here, the following two fees: (1) "If the requester is not the patient or a person authorized by the patient, for certification of copies, a single $8 charge"; and (2) "If the requester is not the patient or a person authorized by the patient, a single retrieval fee of $20 for all copies requested." Wis. Stat. § 146.83(3f)(b)4.-5. (emphases added). In this case, Carolyn Moya's ("Moya") personal injury attorney obtained written consent from Moya to receive copies of her health care records. Moya claims her attorney is therefore a "person authorized by the patient" and thus exempt from these fees.

¶50 "Person authorized by the patient" is defined in Wis. Stat. § 146.81(5) as follows:

> [T]he parent, guardian, or legal custodian of a minor patient, as defined in s. 48.02(8) and (11), the person vested with supervision of the child under s. 938.183 or 938.34(4d), (4h), (4m), or (4n), the guardian of a patient adjudicated incompetent in this state, the personal representative, spouse, or domestic partner under ch. 770 of a deceased patient,

7

> any person authorized in writing by the patient or a
> health care agent designated by the patient as a
> principal under ch. 155 if the patient has been found
> to be incapacitated under s. 155.05(2), except as
> limited by the power of attorney for health care
> instrument.  If no spouse or domestic partner survives
> a deceased patient, "person authorized by the patient"
> also means an adult member of the deceased patient's
> immediate family, as defined in s. 632.895(1)(d).  A
> court may appoint a temporary guardian for a patient
> believed incompetent to consent to the release of
> records under this section as the person authorized by
> the patient to decide upon the release of records, if
> no guardian has been appointed for the patient.

§ 146.81(5) (emphasis added).

¶51 Moya and the court rely on the emphasized text for their conclusion that Moya's attorney fits the definition of "person authorized by the patient."  At the outset, it should be noted that it is not clear whether the phrase "any person authorized in writing by the patient" in Wis. Stat. § 146.81(5) is a standalone category or whether it is connected to the following phrase, namely "or a health care agent designated by the patient as a principal under ch. 155 if the patient has been found to be incapacitated under s. 155.05(2)."  § 146.81(5). Healthport contends that this court need not resolve this issue, and I agree.  As I will demonstrate, whether read as constituting its own category or read in conjunction with the phrase that follows it, the phrase "any person authorized in writing by the patient" does not include Moya's attorney.

¶52 More generally, it is apparent that the mention of lawyers is completely absent from this statutory definition and, instead, the categories of individuals in the statute have the commonality of those people who can legally act and make

8

decisions when the patient cannot; that is not what a personal injury lawyer does.  Lawyers are not like the other categories of individuals listed.  While lawyers may advocate on behalf of their clients, they are ultimately subject to their clients' direction.   The categories of individuals in Wis. Stat. § 146.81(5), on the other hand, are composed of individuals who stand in the shoes of a patient and make decisions for the patient, but are not those who simply advocate for a client at the client's direction.

### III

¶53  Also important is a recognition that, as noted by Healthport, the definition of "person authorized by the patient" provided in Wis. Stat. § 146.81(5) does not clearly define the nature of the "authori[ty]" provided by the patient to the person authorized by the patient.  The circuit court determined that, for purposes of Wis. Stat. § 146.83(3f)(b), the authority was the authority to inspect a patient's health care records. Moya, 366 Wis. 2d 541, ¶4.  The court of appeals concluded that the authority was the authority to consent to the release of a patient's health care records.  Id., ¶16.

¶54  Review of Wis. Stat. § 146.81(5) makes apparent that the definition of "person authorized by the patient" provided therein has a common focus on categories of people who are authorized by law to act as the patient, not just act because the patient vested them with limited authority to obtain records.   Those included in the statutory definition include those such as "the parent . . . of a minor patient," for

9

instance, or "the guardian of a patient adjudicated incompetent in this state," but the statute does not explicitly describe what type of authority these people possess. § 146.81(5).  The kind of authority vested by law in these people is far different than the kind of obligations a lawyer takes on in representing a person in a lawsuit.  These people listed are those who could sign a release that would authorize the lawyer to get the records.  The lawyer, unlike those listed in § 146.81(5), could not, for example, sign the form on behalf of the patient as all these individuals could do.

¶55  These observations are relevant to the plain meaning of "any person authorized in writing by the patient" in Wis. Stat. § 146.81(5).  A person who states "I have been authorized in writing" has said nothing about what she has been authorized to do.  For example, a person who has been authorized in writing to speak on a patient's behalf is technically a "person authorized in writing by the patient," see § 146.81(5), but no one would argue that this type of person would fulfill the definition of "person authorized by the patient" in Wis. Stat. § 146.83(3f)(b).  Those listed in the statute, however, have in common, for example, the authority vested in them by law.  In sum, examination of the phrase "any person authorized in writing by the patient" in § 146.81(5) in isolation is not sufficient to decide this case.

¶56  The court defines the nature of the authority in Wis. Stat. § 146.81(5) differently depending on in which portion of

10

chapter 146 that phrase is used.[2]  So because, in the context of Wis. Stat. § 146.83(3f), the "person [potentially] authorized by the patient" is "request[ing] copies of a patient's health care records," § 146.83(3f)(a), the definition of "person authorized by the patient" in that portion of the statutes, in the court's view, is "person authorized by the patient to obtain the patient's healthcare records" (as long as, pursuant to § 146.81(5), that authorization is written authorization).  But any person who obtains records this way would need written authorization.

¶57  In other words, the court simply concludes that because Moya's attorney was "authorized in writing" to receive copies of Moya's health care records, he is a "[p]erson authorized by the patient" as defined in Wis. Stat. § 146.81(5), which definition applies to the fee portion of the statutory scheme, Wis. Stat. § 146.83(3f)(b).  See § 146.81.  That interpretation possesses the benefit of being uncomplicated, but that does not mean it is correct.  The court's reading fails to account for a number of important considerations—namely, significant clues provided by investigation of the statutory

---

[2] Typically, the "[p]resumption of consistent usage" canon would instruct that "[a] word or phrase is presumed to bear the same meaning throughout a text."  Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 170 (2012).  In the court's defense, however, it may not be necessarily in violation of that canon because the nature of the authority, while changing, changes to attend to the purpose of the specific statute.

context and the application of canons of construction—which counsel a different reading of the statute.

¶58  More specifically, the court's conclusion falls prey to a criticism directed at Moya by Healthport:

> Although [Moya] repeatedly urges this Court to follow the "plain language" or "plain meaning" of the statutory words, she fails to provide a reason why her proposed interpretation follows from those words. Instead, [Moya] simply assumes that the legislature meant to say "any person authorized in writing by the patient <u>to obtain that patient's health care records</u>." A plain language argument that simply assumes the addition of a critical clause is not a plain language argument at all.

¶59  The truth of the matter is that the statutory phrase "any person authorized in writing by the patient," <u>viewed alone</u>, simply does not provide enough information for the court to reach a conclusion in this case.  But statutory interpretation requires more than simply looking at a set of words in total isolation.  The court must look to something more—the context of the phrase and applicable canons of constructions—to reach the correct answer.

¶60  Before discussing how these tools help establish the plain meaning of this phrase in this statute, I explain how these tools immediately demonstrate a number of significant deficits in the <u>court's</u> approach.  First, the phrase "person authorized by the patient" must require more in the context of Wis. Stat. § 146.83(3f) than the court says it does because, with a few exceptions, "a person request[ing] copies of a patient's health care records" under that provision must <u>additionally</u> "provide[] informed consent" in order to obtain the

12

records.   § 146.83(3f)(a).   Informed consent under the statute "means written consent to the disclosure of information from patient health care records to an individual, agency, or organization that includes" specified pieces of information such as the patient's name and the signature of the patient or the person authorized by the patient.   Wis. Stat. § 146.81(2). Therefore, under the court's interpretation, nearly <u>every</u> person who obtains health care records under § 146.83(3f) will, by nature of the informed consent they must provide, automatically be a "person authorized by the patient" and thus, virtually no one will ever pay certification or retrieval fees as called for by the statute.

¶61   If the court were correct and all one needed to become a "person authorized by the patient" was informed consent, then there would be no need for a statutory definition of "person authorized by the patient."   A person possessing informed consent and a "person authorized by the patient" must therefore be very different individuals possessing different degrees of authority.   <u>See, e.g.</u>, <u>Pawlowski v. Am. Family Mut. Ins. Co.</u>, 2009 WI 105, ¶22, 322 Wis. 2d 21, 777 N.W.2d 67 ("As a basic rule of statutory construction, we endeavor to give each statutory word independent meaning so that no word is redundant or superfluous.   When the legislature chooses to use two different words, we generally consider each separately and presume that different words have different meanings.").   The reason that both informed consent <u>and separate</u> authorization are required in this statutory scheme is because the individuals

13

exempted from the statutory fees at issue are either patients or those who are essentially the equivalents of patients.  The legislature defined "person authorized by the patient" to mean individuals that could actually step in and make decisions for the patient.  In contrast, lawyers are advocates but they do not step in and become the decision-maker; in fact, it is unethical for them to do so.

¶62  The legislature does not enact a fee statute to collect no fees.  While this seems obvious, I need not look to legislative history or some unknown possible intent; I need only look at the words of the statute.  And this is where context and canons of construction provide guidance.  It is a "well-established canon[] of statutory construction" that "[s]tatutory interpretations that render provisions meaningless should be avoided."  Belding v. Demoulin, 2014 WI 8, ¶17, 352 Wis. 2d 359, 843 N.W.2d 373; see also, e.g., United States v. Tohono O'Odham Nation, 563 U.S. 307, 315 (2011) ("Courts should not render statutes nugatory through construction."); Louisville Water Co. v. Clark, 143 U.S. 1, 12 (1892) ("Any other interpretation of the act . . . would render it inoperative for the purposes for which, manifestly, it was enacted."); Kalal, 271 Wis. 2d 633, ¶46 ("Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage.").  The court's approach virtually guts the

14

possibility of collecting fees and certainly contravenes fairly basic canons of construction.[3]

¶63  Another flaw in the court's reading of the relevant statutes is that the language of Wis. Stat. § 146.81(5) does not mention lawyers at all but lawyers are exempted in other sections.  "Under the doctrine of expressio unius est exclusio alterius, 'the express mention of one matter excludes other similar matters [that are] not mentioned.'"  FAS, LLC v. Town of Bass Lake, 2007 WI 73, ¶27, 301 Wis. 2d 321, 733 N.W.2d 287 (alteration in original) (quoting Perra v. Menomonee Mut. Ins. Co., 2000 WI App 215, ¶12, 239 Wis. 2d 26, 619 N.W.2d 123).  The legislature was fully capable of adding lawyers to the

---

[3] It is true that Wis. Stat. § 146.82(2) contains a list of entities that may obtain health care records without informed consent under certain circumstances, such as (generally speaking) emergency medical services personnel assisting a patient, district attorneys prosecuting alleged child abuse, and courts conducting termination of parental rights proceedings. See § 146.82(2)(a)2., 11.-11m.  I do not find compelling the argument that the certification and retrieval fees in Wis. Stat. § 146.83(3f)(b)4.-5. are reserved for this specialized subset of requesters.  If the legislature had intended such a result, it could have provided for it much more clearly.

Further, it may well be that these entities share common characteristics of which the court is not, at this time, fully aware.  For instance, many of the entities listed in this group seem to possess a public interest component, such that a fee for health care records would ultimately be transferred to the taxpayer.  Other entities in this group would seemingly include health care providers themselves using health care records for internal matters.  See, e.g., Wis. Stat. § 146.82(2)(a)3. (exception provided "[t]o the extent that the records are needed for billing, collection or payment of claims.").

15

definition of "person authorized by the patient," but it did not do so.

¶64  A third problem with the court's interpretation stems from the language of the legislature's 2014 enactment of 2013 Wisconsin Act 342, which in turn created Wis. Stat. § 146.83(1b).  Importantly, this statute further defined those who are exempt from payment.  Section § 146.83(1b) provides:

> Notwithstanding s. 146.81(5), in this section, a "person authorized by the patient" includes an attorney appointed to represent the patient under s. 977.08 [a section in the chapter pertaining to the State Public Defender] if that attorney has written informed consent from the patient to view and obtain copies of the records.

§ 146.83(1b) (emphasis added).  "Notwithstanding" the definition of "person authorized by the patient" means "in spite of" the definition of "person authorized by the patient." Notwithstanding, Black's Law Dictionary 1231 (10th ed. 2014) (emphasis added).  It would be strange indeed for the legislature to have used the word "notwithstanding" if, as is suggested by the court's opinion, these attorneys already met the definition of "person authorized by the patient" in Wis. Stat. § 146.81(5) prior to the enactment of § 146.83(1b).  Put differently, the legislature's recent amendment strongly indicates that individuals like Moya's attorney are not included in the definition of "person authorized by the patient."  If lawyers who received authorization in writing were included in § 146.81(5), § 146.83(1b) would be surplusage and completely unnecessary.

¶65  The amendment in Wis. Stat. § 146.83(1b) provides similar guidance when viewed in light of any of a number of canons of construction.  One such canon has already been referenced: "Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." Kalal, 271 Wis. 2d 633, ¶46.  As Healthport points out, "[i]f the definition of 'person authorized by the patient' already included attorneys with an informed consent, the new section 146.83(1b) would be wholly superfluous."  Indeed it would.

¶66  Again, "[u]nder the doctrine of expressio unius est exclusio alterius, 'the express mention of one matter excludes other similar matters [that are] not mentioned.'"  FAS, LLC, 301 Wis. 2d 321, ¶27 (alteration in original) (quoting Perra, 239 Wis. 2d 26, ¶12).  That is, the legislature obviously could have expanded the reach of Wis. Stat. § 146.83(1b) to include personal injury attorneys, but it did not do so.  Similarly, "[n]othing is to be added to what the text states or reasonably implies (casus omissus pro omisso habendus est).  That is, a matter not covered is to be treated as not covered." Scalia & Garner, supra, at 93 (describing this as the "Omitted-Case Canon").  Under this principle, a judge should not, among other things "elaborate unprovided-for exceptions to a text."  Id.; see also id. ("[I]f the Congress [had] intended to provide additional exceptions, it would have done so in clear language." (alterations in original) (quoting Petteys v. Butler, 367 F.2d 528, 538 (8th Cir. 1966) (Blackmun, J., dissenting))).  This is exactly what the court may be read to do in concluding that

17

Moya's attorney is exempt from the fees at issue.   This court should not be acting where the legislature has declined to do so.

¶67   Accordingly, the court's interpretation of Wis. Stat. § 146.83(3f)(b) possesses substantial flaws, and I cannot agree with it.   Fortunately, it is not the only interpretation presented in this case.   Again, it is important to recognize that Wis. Stat. § 146.81(5) does not clearly define the nature of the "authori[ty]" provided by the patient to the person chosen by the patient; the statute instead lists categories of individuals.   In order to determine the nature of this authority, then, it is again beneficial to look to context and to apply recognized canons of construction.

¶68   Two related canons of construction, noscitur a sociis and ejusdem generis, are particularly helpful here.   Pursuant to the noscitur a sociis canon of construction, "[a]n unclear statutory term should be understood in the same sense as the words immediately surrounding or coupled with it."   State v. Quintana, 2008 WI 33, ¶35, 308 Wis. 2d 615, 748 N.W.2d 447 (quoting Wis. Citizens Concerned for Cranes & Doves v. DNR, 2004 WI 40, ¶40, 270 Wis. 2d 318, 677 N.W.2d 612).   That is, it is reasonable to ascertain the meaning of the phrase "person authorized by the patient" by analyzing the phrase in light of the surrounding categories enumerated in the definition.   See Moya, 366 Wis. 2d 541, ¶12; see also Kalal, 271 Wis. 2d 633, ¶46 ("Context is important to meaning.").

18

¶69 As explained, none of the enumerated categories in Wis. Stat. § 146.81(5) consists of attorneys. Further, the phrase "any person authorized in writing by the patient" is placed in the middle of the list rather than at its end; therefore, it does not seem to be an expansion of the categories previously listed to new categories of people, nor does it seem to be an extension of the previously listed categories to include a host of new categories. See, e.g., State v. Givens, 28 Wis. 2d 109, 115, 135 N.W.2d 780 (1965) ("When the statute, after the specific enumerations, in a 'catchall' clause proscribes 'otherwise disorderly conduct' which tends to 'provoke a disturbance,' this must mean conduct of a type not previously enumerated but similar thereto in having a tendency to disrupt good order and to provoke a disturbance.").

¶70 In fact, if I consult the noscitur a sociis canon of construction, it depends upon whether the enumerated persons in Wis. Stat. § 146.81(5) possess a "similar meaning." Quintana, 308 Wis. 2d 615, ¶35. If the various categories are unrelated, then one would presume that the individual categories should be interpreted broadly. See id. Conversely, if the various categories are related, then the "authori[ty]" provided by the patient to the person chosen by the patient in § 146.81(5) should be understood in light of the characteristics shared by each category. See id. As was previously discussed, the categories of individuals listed have in common the fact that they become decision-makers for the patient. Thus, we further

19

conclude that the phrase "person authorized by the patient" is not to be construed as expansive.

¶71  Additionally, a related canon of construction, ejusdem generis, "instructs that when general words follow specific words in the statutory text, the general words should be construed in light of the specific words listed" such that "the general word or phrase will encompass only things of the same type as those specific words listed." Id., ¶27 (citing Adams Outdoor Advert., Ltd. v. City of Madison, 2006 WI 104, ¶62 n.15, 294 Wis. 2d 441, 717 N.W.2d 803). But if "[t]he specific terms listed in the statute have no common feature or class from which one could ascertain an intention to restrict the meaning of the general term," then "the general terms should be interpreted broadly to give effect to the legislature's intent." Id., ¶¶26, 28, 31-32; see also Scalia & Garner, supra, at 101 (under the "General-Terms Canon," "[g]eneral terms are to be given their general meaning (generalia verba sunt generaliter intelligenda)," so long as there is no "indication to the contrary"). So again, because the categories of individuals have in common the fact that they become decision-makers for the patient, the words are not expansive.

¶72  Consequently, it is important to ascertain whether there are similarities between the categories of individuals listed in Wis. Stat. § 146.81(5). If there are similarities, this would indicate that the "authori[ty]" granted in § 146.81(5) should be interpreted more narrowly and more exclusively; if there are no similarities, then this

20

"authori[ty]" should be interpreted more broadly and less exclusively.

¶73 Wisconsin Stat. § 146.81(5) defines "[p]erson authorized by the patient" to include individuals acting on behalf of: (1) minor patients; (2) patients who have been adjudicated incompetent; (3) deceased patients; and (4) incapacitated patients. § 146.81(5). One might argue that the legislature envisioned a certain commonality among these categories of individuals. And indeed, the court of appeals, comparing Moya and her personal injury attorney to these other pairs of individuals, interpreted "authorized" in the phrase "person authorized by the patient" to mean "having the power <u>to consent to the release</u> of the patient's records," rather than merely the power to receive those records. <u>Moya</u>, 366 Wis. 2d 541, ¶16 (emphasis added); <u>see also</u> § 146.81(5) ("A court may appoint a temporary guardian for a patient believed incompetent to consent to the release of records under this section <u>as the person authorized by the patient to decide upon the release of records</u>, if no guardian has been appointed for the patient." (emphasis added)). The court of appeals concluded that adoption of Moya's argument would violate the manifest purpose of the relevant statutes, expanding the definition of "person authorized by the patient" beyond the "very specific list of individuals" contemplated by the legislature. <u>See</u> <u>Moya</u>, 366 Wis. 2d 541, ¶12.

¶74 The interpretation of the court of appeals is reasonable. It better comports with the other enumerated

21

categories of persons in Wis. Stat. § 146.81(5). It possesses none of the major defects of the court's interpretation which I identified above. And it is supported by the statutory context and by canons of construction. And this holds true whether "any person authorized in writing by the patient" is read as a standalone category or together with the following clause. If read as a standalone category, "any person authorized in writing by the patient" would clearly not be intended as a broad, "catch-all" group, because it would not fall at the end of the list of enumerated categories; and if read together with the following clause ("or a health care agent designated by the patient as a principal under ch. 155 if the patient has been found to be incapacitated under s. 155.05(2)," § 146.81(5)), then "any person authorized in writing by the patient" would share the characteristics of the other enumerated categories and would not be intended to include attorneys. These canons certainly point strongly in one direction: against the reading adopted by the court.

¶75 The court does not adequately address the reading dictated by application of the interpretative methodology discussed above; as a result, its reasoning is unpersuasive. It also does not explain why Wis. Stat. § 146.83(1b) would be necessary to exempt public defenders from the payment of these fees because public defenders, as virtually all others, would need written authorization to obtain the patient's records in the first instance. The court adopts a more expansive interpretation, but seems to base its interpretation on language

22

that does not have support in common tools of construction.  In my view, little or nothing in the statutory text supports the court's expansive view.

¶76  On balance, I must conclude that the interpretation adopted by the court today is unlikely to be the correct answer. If the statute at issue is really as broad as the court says it is, the challenged fee requirements are rendered largely meaningless.  I cannot accept that a plain meaning here was intended to exempt virtually all who obtain records from payment of the fees set forth.

¶77  The clear purpose of the statute, as "gathered . . . from the text itself," is to charge certain individuals fees.  Scalia & Garner, supra, at 33.  Very simply stated, since nearly anyone who wishes to receive a patient's records needs that patient's authorization and no such authorized person would ever need to pay the applicable fee, virtually no fees would be paid under this statute.  It is not as though an attorney, appropriately authorized, could never fit the definition of "person authorized by the patient."  But every attorney does not fit that definition, and an examination of the text reveals that Moya's attorney does not fit that definition.

¶78  Finally, given the competing interpretative possibilities here, a point about judicial restraint is appropriate.  Even if it intuitively makes sense that personal injury lawyers should not have to pay fees to receive their clients' medical records, if I am incorrect, the legislature could easily amend the statute as it did with Wis. Stat.

23

§ 146.83(1b) thereby excluding the public defenders. The legislative "fix," if the court is incorrect, requires a virtual rewrite of these fee statutes.

IV

¶79  Interpretation of the statutory text leads me to conclude, like the court of appeals, that Moya's personal injury attorney is not a "person authorized by the patient" under Wis. Stat. § 146.83(3f)(b).  Regardless, it would be well worth the legislature's time for it to clarify these statutes so as to provide guidance to the public, to lawyers, and to the courts. In the absence of such guidance, however, I must respectfully dissent.

¶80  For the foregoing reasons, I respectfully dissent.

24

No.  2014AP2236.akz

1

# Exhibit 2

**STATE OF WISCONSIN**      :   **CIRCUIT COURT**      :      **WAUKESHA COUNTY**
                               **CIVIL DIVISION**

---

PAUL R. DILGER
928 Praireview Circle
Oconomowoc, WI 53066

DERRICK J. HAMMETTER
4902 Lakefield Road
Cedarburg, WI 53012,

ANTOINETTE M. VINKAVICH                       Case No.
W335 N8383 Stone Bank Road
Oconomowoc, WI 53066                           **COMPLAINT**

PATRICIA A. SKRZYPCHAK                         Intentional Tort: 30106
15601 7TH Street                               Unclassified:  30703
Union Grove, WI 53182

DON TIEGS
5500 Balboa Drive South
New Berlin, WI 53151,

Individually and on behalf of all other
similarly situated persons or entities,

                 Plaintiffs,

        v.

IOD INCORPORATED,
c/o G&K Wisconsin Services, LLC, Registered Agent
200 South Washington Street, Suite 100,
Green Bay, WI 54301,

ABC INSURANCE CO., the fictitious name
for an unknown insurance company,

VERISMA SYSTEMS, INC.
c/o The Corporation Trust Company, Registered Agent
1209 Orange Street
Wilmington, DE 19801,

DEF INSURANCE CO., the fictitious name
for an unknown insurance company,

CIOX HEALTH, LLC,
c/o Corporation Service Company, Registered Agent
8040 Excelsior Drive,  Suite 400
Madison, WI 53717,

GHI INSURANCE CO., the fictitious name
for an unknown insurance company,

Defendants.

NOW COME the above named plaintiffs, by their attorneys, CANNON & DUNPHY,

S.C., and as and for their claims for relief, allege and show to the Court as follows:

<u>**THE PARTIES**</u>

1.      That at the present time, the plaintiff, Paul R. Dilger, is an adult citizen and

resident of the State of Wisconsin, who resides at 928 Prairieview Circle, Oconomowoc, WI

53066.

2.      That at the present time, the plaintiff, Derrick J. Hammetter, is an adult citizen

and resident of the State of Wisconsin, who resides at 4902 Lakefield Road, Cedarburg, WI

53012.

3.      That at the present time, the plaintiff, Antoinette M. Vinkavich, is an adult

citizen and resident of the State of Wisconsin, who resides at W335 N8383 Stone Bank Road,

Oconomowoc WI 53066.

4.      That at the present time, the plaintiff, Patricia A. Skrzypchak, is an adult citizen

and resident of the State of Wisconsin, who resides at 15601 7th Street, Union Grove, WI

53182.

5.      That at the present time, the plaintiff, Don Tiegs, is an adult citizen and resident of the State of Wisconsin, who resides at 5500 Balboa Drive South, New Berlin, WI 53151.

6.      That at all times material hereto, the defendant IOD Incorporated was a Wisconsin corporation with offices of its Registered Agent, G&K Wisconsin Services, LLC, located at 200 South Washington Street, Suite 100, Green Bay, WI 54301.  IOD Incorporated was a for-profit provider of health care provider records that managed and produced medical records for health care providers in Wisconsin.  IOD Incorporated did business within Waukesha County, Wisconsin, and throughout the state.  That on information and belief, IOD Incorporated merged with the defendant CIOX Health LLC.

7.      That at the present time, the defendant, ABC Insurance Co. (hereinafter "ABC"), is the fictitious name for an unknown insurance company, that is engaged in the business of writing and selling liability insurance; that on information and belief, at all times material hereto, ABC had in full force and effect a policy or policies of liability insurance issued to IOD Incorporated insuring said defendant for claims such as those hereafter set forth; that in said contract of insurance, ABC reserved the right to settle or adjust any claims arising thereunder and to defend any lawsuits instituted by virtue of any such claims and has a direct interest in this litigation; that pursuant to Wis. Stat. § 807.12, ABC is being inserted in place of the real and proper insurance company defendant, which as soon as its identity is ascertained will be substituted in place of ABC.

8.      That the defendant Verisma Systems, Inc. is a Delaware corporation with offices of its Registered Agent, The Corporation Trust Company, located at 1209 Orange Street, Wilmington, DE 19801.  Verisma Systems, Inc. is a for-profit provider of health care

provider records that manages and produces medical records for health care providers in Wisconsin. Verisma Systems, Inc. does business within Waukesha County, Wisconsin, and throughout the state.

9.     That at the present time, the defendant, DEF Insurance Co. (hereinafter "DEF"), is the fictitious name for an unknown insurance company, that is engaged in the business of writing and selling liability insurance; that on information and belief, at all times material hereto, DEF had in full force and effect a policy or policies of liability insurance issued to Verisma Systems, Inc. insuring said defendant for claims such as those hereafter set forth; that in said contract of insurance, DEF reserved the right to settle or adjust any claims arising thereunder and to defend any lawsuits instituted by virtue of any such claims and has a direct interest in this litigation; that pursuant to Wis. Stat. § 807.12, DEF is being inserted in place of the real and proper insurance company defendant, which as soon as its identity is ascertained will be substituted in place of DEF.

10.     That the defendant CIOX Health LLC is a foreign limited liability corporation with its principal place of business located at 1030 Ontario Road, Green Bay, WI 54311, and offices of its registered agent, Corporation Service Company, located at 8040 Excelsior Drive, Ste. 400, Madison, WI 53717. That CIOX Health LLC was created by the merger of IOD Incorporated, among others. CIOX Health LLC is a for-profit provider of health care provider records that managed and produced medical records for health care providers in Wisconsin. CIOX Health LLC does business within Waukesha County, Wisconsin, and throughout the state.

11.     That at the present time, the defendant, GHI Insurance Co. (hereinafter "GHI"), is the fictitious name for an unknown insurance company, that is engaged in the business of writing and selling liability insurance; that on information and belief, at all times material hereto, GHI had in full force and effect a policy or policies of liability insurance issued to CIOX Health LLC insuring said defendant for claims such as those hereafter set forth; that in said contract of insurance, GHI reserved the right to settle or adjust any claims arising thereunder and to defend any lawsuits instituted by virtue of any such claims and has a direct interest in this litigation; that pursuant to Wis. Stat. § 807.12, GHI is being inserted in place of the real and proper insurance company defendant, which as soon as its identity is ascertained will be substituted in place of GHI.

## GENERAL ALLEGATIONS

12.     Access to patient health care records is governed by Wis. Stat. § 146.83.  Under subsection 3(f), a health care provider shall, subject to exceptions, provide copies of a patient's health care records "if a person requests copies of a patient's health care records, provides informed consent, and pays the applicable fees under par. (b)." Wis. Stat. § 146.83(3f)(a).

13.     Beginning on July 1, 2011, by operation of 2011 Wisconsin Act 32, the legislature created Wis. Stat. § 146.83(3f)(b)4. and 5., which provides that the defendants *are not* allowed to charge an $8 certification charge for health care provider records or a $20 retrieval fee for said records "if the requestor is [ ] the patient or a person authorized by the patient." According to these subdivisions, the patient and a person authorized by the patient are *exempt* from the certification charge and retrieval fee. A "person authorized by the patient" includes *any* person authorized in writing by the patient, which includes attorneys.

14.     On the 11th day of December, 2009, at approximately 12:11 a.m., on westbound North Avenue, near its intersection with Brookfield Road, in the City of Brookfield, Waukesha County, State of Wisconsin, the plaintiff, Paul R. Dilger, an on-duty police officer with the City of Brookfield, was seriously injured by the negligence of a careless driver.

15.     The plaintiff, Paul R. Dilger, retained the law firm of Cannon & Dunphy, S.C., to seek compensation for his injuries.  The terms of the retention provided for a contingency fee plus reimbursement for costs.  Mr. Dilger authorized Cannon & Dunphy to obtain his health care provider records.  Cannon & Dunphy requested Mr. Dilger's health care provider records using HIPAA compliant medical release forms.

16.     The defendant IOD Incorporated entered into agreements with Mr. Dilger's health care providers—including hospitals, health systems, physician practices and clinics, and other health care providers—to process and fulfill medical record requests like the ones submitted by Cannon & Dunphy.  When fulfilling the requests of Cannon & Dunphy, the defendant IOD Incorporated imposed certification charges and retrieval fees, contrary to Wis. Stat. § 146.83(3f)(b)4.-5.  Cannon & Dunphy paid the certification charges and retrieval fees and passed these costs to Mr. Dilger by deducting the costs from the settlement proceeds resulting from his personal injury claim.

17.     On the 9th day of October, 2011, on County Trunk Highway I, at or near its intersection with Gray Log Court, in the Town of Cedarburg, Ozaukee County, State of Wisconsin, the plaintiff, Derrick J. Hammetter, was seriously injured by the negligence of a careless driver.

18.   The plaintiff, Derrick J. Hammetter, retained the law firm of Cannon & Dunphy, S.C., to seek compensation for his injuries. The terms of the retention provided for a contingency fee plus reimbursement for costs. Mr. Hammetter authorized Cannon & Dunphy to obtain his health care provider records. Cannon & Dunphy requested Mr. Hammetter's health care provider records using HIPAA compliant medical release forms.

19.   The defendants IOD Incorporated and Verisma Systems Inc. entered into agreements with Mr. Hammetter's health care providers—including hospitals, health systems, physician practices and clinics, and other health care providers—to process and fulfill medical record requests like the ones submitted by Cannon & Dunphy. When fulfilling the requests of Cannon & Dunphy, the defendants IOD Incorporated and Verisma Systems, Inc. imposed certification charges and retrieval fees, contrary to Wis. Stat. § 146.83(3f)(b)4.-5. Cannon & Dunphy paid the certification charges and retrieval fees and passed these costs to Mr. Hammetter by deducting the costs from the settlement proceeds resulting from his personal injury claim.

20.   On the 22nd of May 2014, on eastbound Silver Spring Drive in the Town of Merton, Waukesha County, the plaintiff, Antoinette M. Vinkavich, was seriously injured by the negligence of a careless driver.

21.   The plaintiff, Antoinette M. Vinkavich, retained the law firm of Cannon & Dunphy, S.C., to seek compensation for her injuries. The terms of the retention provided for a contingency fee plus reimbursement for costs. Ms. Vinkavich authorized Cannon & Dunphy to obtain her health care provider records. Cannon & Dunphy requested Ms. Vinkavich's health care provider records using HIPAA compliant medical release forms.

22.     The defendants IOD Incorporated and Verisma Systems Inc. entered into agreements with Ms. Vinkavich's health care providers—including hospitals, health systems, physician practices and clinics, and other health care providers—to process and fulfill medical record requests like the ones submitted by Cannon & Dunphy.  When fulfilling the requests of Cannon & Dunphy, the defendants IOD Incorporated and Verisma Systems, Inc. imposed certification charges and retrieval fees contrary to Wis. Stat. § 146.83(3f)(b)4.-5.  Cannon & Dunphy paid the certification charges and retrieval fees and passed these costs to Ms. Vinkavich by deducting the costs from the settlement proceeds resulting from her personal injury claim.

23.     On the 20th day of October, 2014, at approximately 3:47 p.m., near the intersection of Durand Avenue and 87th Street, in the Village of Sturtevant, Racine County, State of Wisconsin, the plaintiff, Patricia A. Skrzypchak, was seriously injured by the negligence of a careless driver.

24.     The plaintiff, Patricia A. Skrzypchak, retained the law firm of Cannon & Dunphy, S.C., to seek compensation for her injuries.  The terms of the retention provided for a contingency fee plus reimbursement for costs.  Ms. Skrzypchak authorized Cannon & Dunphy to obtain her health care provider records.  Cannon & Dunphy requested Ms. Skrzypchak's health care provider records using HIPAA compliant medical release forms.

25.     The defendant CIOX Health LLC entered into agreements with Ms. Skrzypchak's health care providers—including hospitals, health systems, physician practices and clinics, and other health care providers—to process and fulfill medical record requests like the ones submitted by Cannon & Dunphy.  When fulfilling the requests of Cannon & Dunphy,

the defendant CIOX Health LLC imposed certification charges and retrieval/basic fees (which on information and belief are the functional equivalents), contrary to Wis. Stat. § 146.83(3f)(b)4.-5. Cannon & Dunphy paid the certification charges and retrieval/basic fees and passed these costs to Ms. Skrzypchak by deducting the costs from the settlement proceeds resulting from her personal injury claim.

26.     On the 16th day of January, 2016, on West Greenfield Avenue, near its intersection with 68th St., in the City of West Allis, Milwaukee County, State of Wisconsin, the plaintiff, Don Tiegs, was seriously injured by the negligence of a careless driver.

27.     The plaintiff, Don Tiegs, retained the law firm of Cannon & Dunphy, S.C., to seek compensation for his injuries. The terms of the retention provided for a contingency fee plus reimbursement for costs. Mr. Tiegs authorized Cannon & Dunphy to obtain his health care provider records. Cannon & Dunphy requested Mr. Tiegs' health care provider records using HIPAA compliant medical release forms.

28.     The defendant CIOX Health LLC entered into agreements with Mr. Tiegs' health care providers—including hospitals, health systems, physician practices and clinics, and other health care providers—to process and fulfill medical record requests like the ones submitted by Cannon & Dunphy. When fulfilling the requests of Cannon & Dunphy, the defendant CIOX Health LLC imposed certification charges and retrieval/basic fees (which on information and belief are the functional equivalents), contrary to Wis. Stat. § 146.83(3f)(b)4.-5. Cannon & Dunphy paid the certification charges and retrieval/basic fees and passed these costs to Mr. Tiegs by deducting the costs from the settlement proceeds resulting from his personal injury claim.

## CLASS ALLEGATIONS

29.     The plaintiffs, Paul R. Dilger, Derrick J. Hammetter, Antoinette M. Vinkavich, Patricia A. Skrzypchak, and Don Tiegs bring this action on their own behalf and on behalf of the members of a proposed class of individuals and entities that are similarly situated.  The class that the plaintiffs represents is composed of any person who on or after July 1, 2011, gave authorization to another, and all others who received authorization from the person on or after July 1, 2011, via a HIPAA release form to request and obtain the person's health care provider records from a health care provider in the State of Wisconsin and who were illegally charged by the defendants for certification charges and retrieval fees, contrary to Wis. Stat. § 146.83(3f)(b)4.-5.

30.     The proposed class is so numerous that joinder of all members is impracticable, and as importantly the disposition of their claim as a class will benefit the parties and the Court.  While the precise number of such persons and entities is unknown, the defendants are in possession of the information needed to identify these persons and entities.  The plaintiffs are informed and believe, and on that basis allege, that the proposed class numbers is comprised of several thousand persons and entities, who likely possess multiple separate claims.

31.     The claims of the plaintiffs are typical of those claims that could be alleged by any members of the proposed class, and the relief is typical of the relief that would be sought by each member of the class in separate actions.  The alleged claims arise out of the same business practices of the defendants, including receiving, responding to, and charging for requests for health care provider records.  The plaintiffs and other members of the proposed

class sustained similar losses, injuries, and damages arising from the unlawful business practices of the defendant, including the unlawful imposition of certification charges and retrieval fees.

32.     The plaintiffs are able to fairly and adequately protect the interests of the proposed class and have no interests antagonistic to the proposed class.   They have retained counsel that is experienced in class action litigation and litigation in this court.   Neither the plaintiffs nor their counsel have any interests that might impede them from vigorously pursuing this action, or any conflict with the proposed class.

33.     There are questions of fact and law common to the proposed class that predominate over individual questions.  The claims of the plaintiffs arise from the same events and from the same course of conduct by the defendants that gave rise to the claims of the proposed class.

34.     Common questions of fact include whether a requestor of patient health care records was authorized by the class member to obtain the class member's patient health care records and whether the defendants imposed unlawful charges on such requests for certification charges or retrieval fees, contrary to Wis. Stat. § 146.83(3f)(b)4.-5.

35.     Common questions of law, most significantly whether it is lawful to charge certification charges or retrieval fees on requests for health care provider records by one who has authorization from the person via a HIPAA release form, was resolved by the supreme court's decision in <u>Moya v. Aurora Healthcare, Inc.</u>, 2017 WI 45, __ Wis. 2d __, __ N.W.2d __.  There, the Wisconsin Supreme Court "h[e]ld that an attorney authorized by his or her client in writing via a HIPAA release form to obtain the client's health care records is a 'person

authorized by the patient' under Wis. Stat. § 146.83(3f)(b)4.-5. and is therefore exempt from certification charges and retrieval fees under these subdivisions." Id., ¶2. The supreme court also recognized that the phrase "person authorized by the patient" under Wis. Stat. § 146.83(3f)(b)4.-5. includes "*any person* authorized in writing by the patient," meaning that *anyone who receives authorization from the person via a HIPAA release form to obtain the person's health care provider records is similarly exempt from certification charges and retrieval fees under these subsections.* See id., ¶¶20-21 ("Moya argues that 'any person authorized in writing by the patient' in Wis. Stat. § 146.81(5) is 'defined broadly by the legislature' and that the plain meaning of the statutory language requires nothing more than a person and a written authorization from the patient. … After examining the language of the statute and applying the well-established rules of statutory interpretation, we agree with Moya."). Thus, if any requestor of patient health care records is authorized by the patient to obtain the patient's health care provider records, it is unlawful as a matter of law for the defendants to impose a certification charge or retrieval fee on that request.

36. A class action is superior to any other available methods for the fair and efficient adjudication of the controversy. The proposed class is so numerous that joinder of all proposed class members is impossible. Further, the value of an individual claim could be relatively small such that individual class members lack the financial incentive to vigorously prosecute individual claims. Disposition of the claims in the aggregate as a class action will provide substantial benefits both to the parties and to the courts.

## COUNT I – DECLARATORY JUDGMENT

37.   The plaintiffs incorporate the above allegations to the extent not inconsistent with those made here.

38.   The plaintiffs authorized another to request their health care provider records via HIPAA release forms.

39.   In response to said requests, the defendants intentionally, knowingly, and/or unlawfully imposed certification charges and retrieval fees.

40.   The plaintiffs seek a declaration that the intentional, knowing, and/or unlawful imposition of said charges was in violation of Wis. Stat. § 146.83(3f)(b)4. and 5., and that all payments made pursuant to said charges be ordered null and void, with all monies being ordered returned to the plaintiffs, with legal interest.

## COUNT II – MONEY HAD AND RECEIVED/UNJUST ENRICHMENT

41.   The plaintiffs incorporate the above allegations to the extent not inconsistent with those made here.

42.   The defendants obtained and/or accepted benefits from the plaintiffs in the form of monies received for unlawful charges for certification charges and retrieval fees.

43.   The defendants knew or appreciated the benefit that they received from the plaintiffs in the form of monies received for unlawful charges for certification charges and retrieval fees.

44.   The defendants' retention of said benefit is inequitable and unjust and the defendants in good conscience should not keep said benefit.

45.     The defendants have the duty, implied in law, to make repayment to the plaintiffs of all said monies and for restitution, including disgorgement of all monies paid by the plaintiffs for unlawful charges, all profits made on said unlawful charges, and legal interest.

## COUNT III – CONVERSION

46.     The plaintiffs incorporate the above allegations to the extent not inconsistent with those made here.

47.     The defendants intentionally took money belonging to the plaintiffs and the proposed class.

48.     By imposing unlawful charges for certification charges and retrieval fees as a condition for releasing the plaintiffs' or proposed class members' health care provider records, the defendants took said money by compulsion and without the consent of the plaintiffs or proposed class members.

49.     The defendants' actions seriously interfered with the plaintiffs' right to possess the property.

50.     The defendants' actions were a substantial factor in producing the plaintiffs' damages, including loss of money and the lost time value of money, all in an amount to be determined in a trial of this matter.

## FOURTH CLAIM FOR RELIEF – PUNITIVE DAMAGES

51.     The plaintiffs incorporates the above allegations to the extent not inconsistent with those made here.

52.     The defendants acted in an intentional disregard of the rights of the plaintiffs herein, subjecting the defendants to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A. For an order directing disgorgement and/or restitution of all improperly collected charges, all profits made thereon, and interest;

B. For compensatory damages in an amount to be proven at the time of trial;

C. For punitive damages in an amount to be proven at the time of trial;

D. For all interest due and owing, including pre-judgment interest, and as otherwise provided by law;

E. For a declaratory judgment that the defendants' imposition of certification charges and retrieval fees was contrary to Wis. Stat. § 146.83(3f)(b)4. and 5. and that all resultant payments are null and void and shall be returned to the plaintiffs and proposed class.

F. For such other and further relief as the Court may deem necessary, proper and just under all of the circumstances.

**PLEASE TAKE NOTICE THAT THE PLAINTIFFS DEMAND A TRIAL IN THE ABOVE-ENTITLED ACTION.**

Dated at Brookfield, Wisconsin this 5th day of May, 2017.

**CANNON & DUNPHY, S.C.**
Attorneys for Plaintiffs

By:   <u>Electronically signed by Attorney Brett A. Eckstein</u>
Brett A. Eckstein
State Bar No. 1036964
Edward E. Robinson
State Bar No. 01025122
Allan M. Foeckler
State Bar No. 1031396

**P.O. ADDRESS:**
595 North Barker Road
P.O. Box 1750
Brookfield, WI  53008-1750
Telephone:    (262) 796-3702
Facsimile:    (262) 796-3712

An authenticated copy of this document was legally
served on ___5_/_17_/_17___ @ 2:56 Pm.
by:
Shawn Conrad
CREAM CITY PROCESS, LLC
www.creamcityprocess.com   414-212-5323

# Exhibit 3

FILED
07-24-2017
CIRCUIT COURT
DANE COUNTY, WI
2017CV001786
Honorable Frank D.
Remington
Branch 8

STATE OF WISCONSIN         CIRCUIT COURT         DANE COUNTY

DONIA MEYER
6943 Portage Road
Deforest, WI 53532,

Individually and on behalf of
a class of others similarly situated,

                              Plaintiff,

          v.                              Case No. _____
                                          Case Code: 30301

CIOX HEALTH,
925 N Point Pkwy., Ste. 305
Alpharetta, GA 30005

AND DIVERSIFIED MEDICAL
RECORDS SERVICES
32545 Golden Lantern Street
Dana Point, CA 92629

                              Defendants.

---

## CLASS ACTION COMPLAINT

---

NOW COMES, Plaintiff, Donia Meyer, by and through her attorneys, DeLadurantey Law Office, LLC and Usman Law Firm, LLC, and complains of Defendants CIOX Health and Diversified Medical Records Services and alleges to the best of her knowledge, information and belief formed after an inquiry reasonable under the circumstances, the following:

1.      Plaintiff is an adult resident of the State of Wisconsin.

2.      Defendant CIOX Health has a primary business location of 925 North Point Parkway, Suite 305, Alpharetta, GA 30005 and a major business location of 1030 Ontario Road, Green Bay, WI 54311.

3.     Defendant CIOX is the successor in interest to IOD Incorporated, having merged with them in 2016.

4.     Defendant CIOX is a/k/a and f/k/a IOD Incorporated.

5.     Defendant Diversified Medical Records Services is a corporation with a primary business address of 32545 Golden Lantern Street, Dana Point, CA 92629.


## BACKGROUND

6.     Pursuant to Wis. Stat. §146.83, a health care provider is limited to charging for paper copies "$1 per page for the first 25 pages; 75 cents per page for pages 26-50; 50 cents per page for pages 51-100; and 30 cents per page for pages 101 and above." Wis. Stat. §146.83(3f)(b)(1). A health care provider can charge $1.50 per page for microfiche or microfilm copies. Wis. Stat. §146.83(3f)(b)(2). X-rays have a maximum fee of $10 per image. Wis. Stat. §146.83(3f)(b)(3). These charges also apply to a person authorize by the patient.

7.     An attorney with "written informed consent" requesting the documents is a person authorized by the patient. Wis. Stat. § 146.83(1b).

8.     A retrieval fee of $20 can be charged for copies "[i]f the requested is not the patient or a person authorized by the patient." Wis. Stat. § 146.83(3f)(b)(5).

9.     A non-authorized person can also be charged an $8 certification fee. Wis. Stat. § 146.83(3f)(b)(4).

10.     The Defendants have engaged in a practice of charging additional and impermissible fees to authorized persons.

11.     The Plaintiff, Donia Meyer, provided written authorization to an attorney to retrieve her medical records from Defendants.

2

12.     Defendant CIOX charged her repeated "retrieval" fees ranging from $20.36 to $21.13 and "certification" fees ranging from $8.12 to $8.45 each time her medical records were requested.  Plaintiff is an "authorized person" under the statute they are not allowed to charge either of these categories of fees to her.

13.     Defendant Diversified Medical Records Systems charged her a "retrieval" or "certification" fee of $20.65 when she requested her medical records.  Plaintiff is an "authorized person" under the statute they are not allowed to charge her this fee.

14.     Mrs. Meyer also seeks to represent other persons in Wisconsin who were also charged additional fees over and above what Defendants were allowed to charge.

### JURISDICTION AND VENUE

15.     Jurisdiction is proper as Defendants conduct business in Wisconsin.

16.     Venue is proper as Defendant conduct business in Dane County.

### FACTS

17.     Prior to the filing of this case Mrs. Meyer suffered a physical injury.

18.     She retained an attorney to represent her in a personal injury claim.

19.     Mrs. Meyer signed an authorization for her attorney to obtain her medical records.

20.     Her attorney sought certified medical records from the University of Wisconsin Hospital and Clinics, Dean Clinic, Group Health Cooperative, and Saint Mary's Hospital Medical Center.

21.     Defendants were contracted to produce the records.

22.     Defendants did, in fact, produce certified medical records and bills regarding Mrs. Meyer.

3

23.     Defendant CIOX charged her repeated "retrieval" fees ranging from $20.36 to $21.13 and "certification" fees ranging from $8.12 to $8.45 each for time her medical records were requested.  Plaintiff is an "authorized person" under the statute they are not allowed to charge either of these categories of fees to her.

24.     Defendant Diversified Medical Records Systems charged her a "retrieval" or "certification" fee of $20.65 when she requested her medical records.  Plaintiff is an "authorized person" under the statute they are not allowed to charge her this fee.

25.     Ms. Meyer paid Defendant CIOX a total of $352.41 in fees not permitted under the statute.

26.     Ms. Meyer paid Defendant Diversified Medical Records Services a total of $20.65 in fees not permitted under the statute.

## CAUSE OF ACTION

27.     Plaintiff incorporates all proceeding paragraphs.

28.     Wis. Stat. § 146.83 only permits a certification fee or retrieval fee if it is made by someone not authorized by the patient.

29.     The fees charged to Plaintiff were not allowed under state law.

30.     The invoices that included the fees were paid.

31.     The Plaintiff and each other person who was charged an amount above that allowed under applicable law is entitled to a return of the funds charged.

32.     The actions of the Defendants were negligent, subjecting Defendants to damages of $1,000 per violation, plus costs and reasonable attorney fees.  Wis. Stat. § 146.84(1)(bm).

4

33.     Alternatively, the actions of the Defendants were willful, subjecting Defendants to exemplary damages of up to $25,000 per violation, plus costs and reasonable attorney fees.  Wis. Stat. § 146.84(1)(b).

34.     The Plaintiff and putative class members have incurred action damages in the form of paying fees in excess of what is allowed under Wisconsin law.

### Class Allegations

35.     This counterclaim is brought individually and on behalf of a class of Wisconsin consumers.

36.     The proposed Class consists of:

a.     Sub-Class A: a) All natural persons in the State of Wisconsin, b) who were charged a retrieval fee and/or certification fee by CIOX Health, when they were c) authorized persons under the statute.

b.     Sub-Class B: a) All natural persons in the State of Wisconsin, b) who were charged a retrieval fee and/or certification fee by Diversified Medical Records Services, when they were c) authorized persons under the statute.

37.     This action is properly maintainable as a class action under requirements set forth within Wis. Stat. § 803.08, because all putative class members share a general and common interest related to the impermissible retrieval and/or certification fees charged by Defendants.

38.     Plaintiff and counsel agree to adequately and fairly represent the interests of all putative class members.

39.     Upon information and belief, joinder of all interested parties is impracticable, as upon information and belief, the total number of class members exceeds 1,000 individuals.

5

## PRAYER FOR RELIEF

WHEREFORE, Mrs. Meyer prays that judgment be entered against Defendants for:

A.     An award of actual damages,

B.     $1,000 per violation for negligent violations.

C.     $25,000 per violation for willful violations;

D.     Costs and attorney's fees;

E.     For such other and further relief as may be just and proper.

Dated this 24th day of July, 2017

DeLadurantey Law Office, LLC

s/ Nathan E. DeLadurantey

Nathan E. DeLadurantey (WI# 1063937)
Heidi N. Miller (WI# 1087696)
DeLadurantey Law Office, LLC
330 S. Executive Drive, Suite 109
Brookfield, WI 53005
(414) 377-0515; (414) 755-0860 – Fax
Nathan@dela-law.com
Heidi@dela-law.com

Zeshan Usman (WI# 1069404)
USMAN LAW FIRM, LLC
525 Junction Rd., Ste. 8520N
Madison, WI 53717
(608) 829-1112; (888) 876-2636 - Fax
Z@UsmanLaw.com

6

## <u>VERIFICATION OF COMPLAINT AND CERTIFICATION</u>

Plaintiff, <u>Donia Meyer</u>, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

# Exhibit 4

STATE OF WISCONSIN          CIRCUIT COURT          MILWAUKEE COUNTY

Timothy Rave vs. CIOX Health, LLC et al

**Electronic Filing Notice**

Case No. 2018CV000607
Class Code: Money Judgment

FILED
01-22-2018
John Barrett
Clerk of Circuit Court
2018CV000607
Honorable Ellen R
Brostrom-06
Branch 06

CIOX HEALTH, LLC
C/O CORPORATION SERVICE CO.
8040 EXCELSIOR DR., STE. 400
MADISON WI 53717

Case number 2018CV000607 was electronically filed with/converted by the Milwaukee County Clerk of Circuit Court office. The electronic filing system is designed to allow for fast, reliable exchange of documents in court cases.

Parties who register as electronic parties can file, receive and view documents online through the court electronic filing website. A document filed electronically has the same legal effect as a document filed by traditional means. Electronic parties are responsible for serving non-electronic parties by traditional means.

You may also register as an electronic party by following the instructions found at **http://efiling.wicourts.gov/** and may withdraw as an electronic party at any time. There is a $ 20.00 fee to register as an electronic party.

If you are not represented by an attorney and would like to register an electronic party, you will need to enter the following code on the eFiling website while opting in as an electronic party.

**Pro Se opt-in code: 1b94e7**

Unless you register as an electronic party, you will be served with traditional paper documents by other parties and by the court. You must file and serve traditional paper documents.

Registration is available to attorneys, self-represented individuals, and filing agents who are authorized under Wis. Stat. 799.06(2). A user must register as an individual, not as a law firm, agency, corporation, or other group. Non-attorney individuals representing the interests of a business, such as garnishees, must file by traditional means or through an attorney or filing agent. More information about who may participate in electronic filing is found on the court website.

If you have questions regarding this notice, please contact the Clerk of Circuit Court at 414-278-4120.

BY THE COURT:

Electronically signed by John Barrett
Clerk of Circuit Court

01-22-2018
Date

GF-180(CCAP), 06/2017 Electronic Filing Notice          §801.18(5)(d), Wisconsin Statutes

This form shall not be modified. It may be supplemented with additional material.

Case 2:18-cv-00305-LA   Filed 02/28/18   Page 2 of 80   Document 1-4

FILED
01-22-2018
John Barrett
Clerk of Circuit Court
2018CV000607
Honorable Ellen R
Brostrom-06
Branch 06

**STATE OF WISCONSIN**          **CIRCUIT COURT**          **MILWAUKEE COUNTY**

**TIMOTHY RAVE**
1546 N. 122nd Street
Wauwatosa, WI 53226


Individually and on behalf of a class of others similarly
situated,

       Plaintiff

       v.

**CIOX HEALTH, LLC**
c/o Corporation Service Company
8040 Excelsior Drive, Suite 400
Madison , WI 53717

and

**COLUMBIA ST. MARY'S HOSPITAL MILWAUKEE, INC.**
c/o Corporation Service Company
8040 Excelsior Drive, Suite 400
Madison , WI 53717

       Defendants.

Case No.:
Case Code:  30301

---

**SUMMONS**

---

THE STATE OF WISCONSIN

To each person named above as a Defendant:

       You are hereby notified that the Plaintiff named above has filed a lawsuit or other legal

action against you. The Complaint, which is attached, states the nature and basis of the legal action.

       Within 45 days of receiving this Summons you must respond with a written answer, as that

term is used in Chapter 802 of the Wisconsin Statutes, to the Complaint. The court may reject or

disregard an answer that does not follow the requirements of the statutes. The answer must be sent

or delivered to the court, whose address is Milwaukee County Courthouse, 901 North Ninth Street, Milwaukee, Wisconsin 53233 and to Welcenbach Law Offices, S.C., Plaintiff's attorney, whose address is 933 N. Mayfair Rd., Suite 311, Milwaukee, Wisconsin 53226. You may have an attorney help or represent you.

If you do not provide a proper answer within 45 days, the court may grant judgment against you for the award of money or other legal action requested in the Complaint and you may lose your right to object to anything that is or may be incorrect in the Complaint. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure or property.

Dated at Milwaukee, Wisconsin this 22nd day of January, 2018.

WELCENBACH LAW OFFICES, S.C.
Attorneys for Plaintiff

By: /s/Electronically signed by Robert J. Welcenbach
Robert J. Welcenbach – SBN: 1033091

P.O. Address
933 N. Mayfair Rd., Ste. 311
Milwaukee, WI 53226
(414)774-7330
Facsimile: (414) 774-7670

FILED
01-22-2018
John Barrett
Clerk of Circuit Court
2018CV000607
Honorable Ellen R
Brostrom-06
Branch 06

**STATE OF WISCONSIN**  **CIRCUIT COURT**  **MILWAUKEE COUNTY**

**TIMOTHY RAVE**
1546 N. 122nd Street
Wauwatosa, WI 53226

Individually and on behalf of a class of others similarly
situated,

             Case No.:
  Plaintiff          Case Code:  30301

  v.

**CIOX HEALTH, LLC**
c/o Corporation Service Company
8040 Excelsior Drive, Suite 400
Madison , WI 53717

and

**COLUMBIA ST. MARY'S HOSPITAL MILWAUKEE, INC.**
c/o Corporation Service Company
8040 Excelsior Drive, Suite 400
Madison , WI 53717

  Defendants.

**CLASS ACTION COMPLAINT**
**&**
**REQUEST FOR JURY TRIAL**

   Plaintiff Timothy Rave ("Rave" or "Plaintiff"), through his undersigned counsel files this

Class Action Complaint and Request for Jury Demand on his individual behalf and on behalf a

class of all similarly situated persons against Defendants and says in support:

## I.   PARTIES

1.  Plaintiff is an adult resident of the State of Wisconsin who resides at the address captioned above.

2.  That IOD Incorporated was a Wisconsin corporation that acted as the agent for and/or business associate for COLUMBIA ST. MARY'S HOSPITAL MILWAUKEE, INC ("CSM") and determined the amounts to charge and assessed charges for the requests for certified medical records for CSM with the consent and approval of CSM.

3.  That IOD Incorporated ceased to exist on December 31, 2015 when it merged with Healthport Technologies, LLC.  That Healthport Technologies, LLC was designated as the surviving company.

4.  As the surviving company, Healthport Technologies, LLC took ownership of all of the assets of IOD Incorporated and assumed all of the liabilities of IOD, Incorporated when IOD Incorporated was dissolved and merged into Healthport Technologies, LLC on December 31, 2015.

5.  Healthport Technologies, LLC changed its name to CIOX Health, LLC on or about March 2, 2016.

6.  The Defendant, CIOX HEALTH, LLC, ("CIOX") is a corporation duly licensed to conduct business in the State of Wisconsin doing business as "Ciox" has assumed all of the liabilities of IOD, Incorporated and is thus liable to Plaintiffs and the putative class members for all of the damages claimed herein.

7.  That CIOX as the surviving company to the aforesaid merger is responsible and liable for the actions and obligations of IOD as alleged herein.

8.  The Defendant, COLUMBIA ST. MARY'S HOSPITAL MILWAUKEE, INC. ("CSM")

2

is a Wisconsin corporation headquartered at 2323 N. Lake Drive, WI 53211 and is duly licensed to conduct business in the State of Wisconsin and whose registered agent for service of process is captioned above.  That, upon information and belief, CSM is a "health care provider" pursuant to Wis. Stat. §146.81.

## II. BACKGROUND

9.  The Citizens of Wisconsin have valid interests in obtaining copies of their medical records. They may want them to provide to their healthcare providers, for further evaluation, to pursue legal claims for injuries or simply to maintain the records out of personal concerns. Whatever the reason, the records must be made available for them to obtain.

10. While the citizens may want to obtain copies of their health records, the medical providers do not want to bear the expense of providing copies of the records to their patients.

11. The Wisconsin Legislature has addressed the respective wants and needs of both patients and the health care providers by enacting a statute, Wis. Stat. §146.83, that establishes the patient's rights to copies and sets the maximum compensation that the health care providers who provide the records may charge.

12. At this time, the production of copies of electronically stored information can be accomplished at minimal cost. The copy cost by a third party, such as Staples, starts at $.03 per page for black and white and up to $.12 per page for color copies.

13. The rates allowed by the Wisconsin law are substantially more than the costs of obtaining copies form third parties. Under Wis. Stat. §146.83, the charges may be as follows:

3

(b) Except as provided in sub. (1f), a health care provider may charge no more than the total of all of the following that apply for providing the copies requested under par. (a):

1. For paper copies: $1 per page for the first 25 pages; 75 cents per page for pages 26 to 50; 50 cents per page for pages 51 to 100; and 30 cents per page for pages 101 and above.

2. For microfiche or microfilm copies, $1.50 per page.

3. For a print of an X-ray, $10 per image.

4. If the requester is not the patient or a person authorized by the patient, for certification of copies, a single $8 charge.

5. If the requester is not the patient or a person authorized by the patient, a single retrieval fee of $20 for all copies requested.

6. Actual shipping costs and any applicable taxes.

14. A patient or a "person authorized in writing by the patient" who pays the fee is entitled to copies at the statutory rate and the "health care provider" must provide them pursuant to that rate under Wis. Stat. §146.83(3f).

15. Medical records may be released without the patient's authorization under Wis. Stat. 146.82(2), and, in that event, the provider may charge the $8.00 certification fee and a $20.00 retrieval fee.

16. This action arises because the Defendants, have attempted to enhance their profits that they can make off the already generous allowable legislative per copy charge by also routinely charging patients or persons authorized by the patient, an $8.00 certification fee, a $20.00 retrieval fee, processing, basic or other fees not authorized by the statute.

4

17. That on May 4, 2017, the Wisconsin Supreme Court issued a decision in <u>Moya v.</u>
    <u>Healthport Technologies</u>, et. al, 2017WI 45 (2017) olding that a health care provider and
    their medical records provider may not charge certification, basic, processing or retrieval
    fees for producing a patient's records if the records are requested by either the patient or
    any person authorized in writing by the patient. The person authorized in writing acts
    the agent for a known principal.

18. That a copy of the decision is attached hereto as ***Exhibit A***.

19. The Plaintiff, Timothy Rave, is one of many persons who the Defendants charged
    illegal fees contrary to Wis. Stat. §146.83.

20. The Plaintiff also seeks to represent himself and the other persons who are similarly
    situated to him because the relatively low dollar amount of the illegal charges by the
    Defendants make it an appropriate situation for a case under Wis. Stat. Sec. §803.08
    which provides:

    > When the question before the court is one of a common or
    > general interest of many persons or when the parties are very
    > numerous and it may be impracticable to bring them all before
    > the court, one or more may sue or defend for the benefit of the
    > whole.

21. Whether or not the Defendants charged in excess of the generous amounts allowed by
    Wisconsin law is a common or general interest to any person who has been charged by
    the Defendants or who may deal with the Defendants in the future.

22. Upon information and belief, the common or general interest question raised and causes
    of actions presented are of a common and general interest of many persons and those
    persons are very numerous and it would be impracticable to bring all such persons
    before the court.

23. Plaintiff should be permitted to proceed to sue for the benefit of the following classes:

5

**Columbia St. Mary's Class**:

All persons in Wisconsin:

(i) who were patients at Columbia St. Mary's who authorized another person in writing to obtain the patient's medical records from Columbia St. Mary's; and

(ii) were charged a basic, retrieval and/or a certification fee by Defendant Columbia St. Mary through its agent IOD, in violation of Wis. Stat. §146.83(3f)(b)(4) - (5) from July 1, 2011 through December 31, 2015; or

(iii) were charged a basic, retrieval and/or a certification fee by Defendant Columbia St. Mary directly or indirectly through its agent *other than* IOD in violation of Wis. Stat. §146.83(3f)(b)(4) - (5) since July 1, 2011 through the date of trial; or

**IOD Class:**

All persons in Wisconsin who:

(i) were patients at a medical provider other than Columbia St. Mary's who authorized another person in writing to obtain the patient's medical records; and

 (iii) were charged a basic, retrieval and/or a certification fee by IOD in violation of Wis. Stat. §146.83(3f)(b)(4) - (5); and

(iv) since July 1, 2011 through December 31, 2015.

The Classes specifically excludes the following persons or entities: (i) Defendants, any predecessor, subsidiary, sister and/or merged companies, and all of the present or past directors, officers, employees, principals, shareholders and/or agents of the Defendants; (ii) any and all Federal, State, County and/or Local

6

Governments, including, but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, councils and/or any other subdivision, and any claim that such governmental entities may have, directly or indirectly; (iii) any currently-sitting Wisconsin state court Judge or Justice, or any federal court Judge currently or previously sitting in Wisconsin, and the current spouse and all other persons within the third degree of consanguinity to such judge/justice or (iv) any law firm of record in these proceedings, including any attorney of record in these proceedings; and (v) anyone person who would otherwise belong to the class but who Defendants can identify as being charged a fee, either directly or indirectly through a person authorized in writing, but said fee was not collected or paid to Defendants by anyone.

### III. JURISDICTION & VENUE

24. This Court has jurisdiction over Defendants in that Defendants are physically located in Milwaukee County and conduct substantial business in Milwaukee County and are registered in this State to conduct business. This transaction further arose in Milwaukee County.

25. Venue is also appropriate in this County because Defendants are based in Milwaukee County and conduct substantial business in Milwaukee County and has, upon information and belief, employees based in Milwaukee County.

### IV. FACTS

26. Timothy Rave was injured on July 23, 2013 when he was involved in a car crash.

27. Mr. Rave retained Welcenbach Law Offices as his attorneys who processed his personal injury claim.

7

28. Mr. Rave signed HIPAA releases authorizing the release of medical information to his attorneys.

29. Mr. Rave's attorneys sought certified medical records and billings from Defendant, CSM.

### A. Certified Medical Bill Request - CSM

30. That on or about December 11, 2013, Mr. Rave's attorneys wrote and requested certified medical bills from CSM and provided a written consent in the form of a HIPAA release signed by Mr. Rave.

31. That IOD responded to the medical bill request on behalf of CSM and provided a four (4) page certified bill for Mr. Rave and charged on invoice number 26252002 the sum of $35.84.

32. That Welcenbach Law Offices paid the $35.84 charge to IOD on behalf of Mr. Rave to obtain his certified medical bills.

33. That CSM and IOD charged certification, retrieval, processing and/or basic fees to Mr. Rave contrary to Wis. Stat. §146.83 to obtain his certified medical bills.

34. That Defendants have negligently or knowingly and willfully charged these fees contrary to statute.

### B. Certified Medical Records Request - CSM

35. That on or about December 11, 2013, Mr. Rave's attorneys wrote and requested certified medical records from CSM and provided a written consent in the form of a HIPAA release signed by Mr. Rave.

36. That IOD responded to the medical records request on behalf of CSM and provided forty three (43) pages of certified medical records for Mr. Rave and charged on invoice number 26247649 the sum of $75.28 for the certified medical records of Mr. Rave.

8

37. That Welcenbach Law Offices paid the $75.28 charge to IOD to obtain the certified medical records for Mr. Rave.

38. That IOD and CSM charged certification, processing, retrieval and/or basic fees to Mr. Rave contrary to Wis. Stat. §146.83 to obtain his certified medical records.

39. That IOD and CSM have negligently or knowingly and willfully charged these fees contrary to statute.

## VIOLATION OF WIS. STAT. §146.83
## ON BEHALF OF PLAINTIFF AND CLASS MEMBERS

40. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

41. That Rave ultimately settled his personal injury case and reimbursed Welcenbach Law Offices for all charges incurred from Defendants.

42. That Ciox, having assumed all of the liabilities of IOD, and CSM are jointly and severally liable for the damages to Plaintiff and the Class Members.

43. In Wisconsin, access to patient health care records is governed by Wis. Stat. § 146.83.

    Wis. Stat. §146.83(3f)(a) provides in pertinent part:

    > Except as provided in sub. (1f) or s. 51.30 or 146.82 (2), if a person requests copies of a patient's health care records, provides informed consent, and pays the applicable fees under par. (b), the health care provider ***shall*** provide the person making the request copies of the requested records.

    Wis. Stat. §146.83(3f)(a) (Emphasis added.)

44. Wis. Stat. §§146.83(3f)(b)(1) - (6) set out the maximum charges that may be charged and collected for medical records and provides:

    > Except as provided in sub. (1f), a health care provider may charge no more than the total of all of the following that apply for providing the copies requested under par. (a):

9

1.    For paper copies: $1 per page for the first 25 pages; 75 cents per page for pages 26 to 50; 50 cents per page for pages 51 to 100; and 30 cents per page for pages 101 and above.

2.    For microfiche or microfilm copies, $1.50 per page.

3.    For a print of an X−ray, $10 per image.

4.    ***If the requester is not the patient or a person authorized by the patient***, for certification of copies, a single $8 charge.

5.    ***If the requester is not the patient or a person authorized by the patient***, a single retrieval fee of $20 for all copies requested.

6.    Actual shipping costs and any applicable taxes.

Wis. Stat. §146.83(3f)(b)(1) - (6) (emphasis added.)

45. The phrase "person authorized by the patient" is defined in Wis. Stat. § 146.81(5) to mean "any person authorized in writing by the patient." This language is unambiguous and clear and would obviously exempt anyone with a HIPAA compliant medical records release.

46. Mr. Rave filed this suit because he was wrongfully charged a basic, certification, processing or retrieval fee by the Defendants in violation of Wis. Stat. §146.83(3f)(b)(4) - (5).

47. For medical records production related to IOD invoice number 26247649, the IOD and CSM charged the Plaintiff a certification fee, processing fee, basic or retrieval fees although the request was made by the plaintiff or a person authorized in writing by the Plaintiff, namely, his attorneys.

48. For medical records production related to IOD invoice number 26252002, the IOD and CSM charged the Plaintiff a certification fee, processing fee, basic or retrieval fees although the request was made by the plaintiff or a person authorized in writing by the Plaintiff, namely, his attorneys.

49. That all invoices issued from IOD and/or CSM to Plaintiff or his counsel were paid.

50. That IOD and/or CSM have charged other Wisconsin residents a retrieval fee, basic, processing and/or a certification fee or other inappropriate fees although the request for

10

the records or bills was made by the patients themselves or persons authorized in writing by them.

51. That IOD and/or CSM were not entitled to charge the Plaintiff or the Class Members a basic fee, processing fee, certification fee or retrieval fees when they request their own records or someone authorized by them in writing has requested their records.

52. That IOD and/or CSM have charged non-allowed fees and fees in excess of the amounts allowed by Wisconsin law.

53. That IOD and CSM have violated the provisions of Wis. Stat. §146.83.

54. The Plaintiff and the Class Members who have been charged a basic fee, processing fee, retrieval fee or certification fee when that person or a person authorized by them in writing has requested their own records, is entitled to recover the fees charged by the Defendants.

55. That IOD and/or CSM knowingly and willfully violated Wis. Stat. §146.83 by charging retrieval fees, certification fee or other inappropriate fees.

56. That the violation of Wis. Stat. §146.83, subjects Ciox, due to its having assumed all liability of IOD, and CSM to exemplary damages of between $1.00 and $25,000.00 per violation, plus costs and reasonable actual attorney fees pursuant to Wis. Stat. §146.84(1)(a).

57. That Plaintiff and the Class Members have incurred actual damages due to the knowing and willful violation of Wis. Stat. §146.83 by IOD and/or CSM.

58. That Plaintiff and the Class Members are entitled to recover their damages, plus exemplary damages of between $1.00 and $25,000.00 per violation, plus costs and reasonable actual attorney fees from Defendants for the knowing and willful violation of Wis. Stat. §146.83 by IOD and/or CSM.

11

59. That, alternatively, IOD and/or CSM negligently violated Wis. Stat. §146.83 by charging retrieval fees, certification fee or other inappropriate fees.

60. A negligent violation of Wis. Stat. §146.83, subjects Defendants to exemplary damages of between $1.00 and $1,000.00 per violation, plus costs and reasonable actual attorney fees pursuant to Wis. Stat. §146.84(1)(b).

61. That Plaintiff and the Class Members have incurred actual damages due to the negligent violation of Wis. Stat. §146.83 by IOD and/or CSM.

62. That Plaintiff and the Class Members are entitled to recover their damages, plus exemplary damages of between $1.00 and $1,000.00 per violation, plus costs and reasonable actual attorney fees from Defendants for the negligent violation of Wis. Stat. §146.83.

## UNJUST ENRICHMENT - DISGORGEMENT

63. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

64. IOD and CSM knew the monies charged were unlawful.

65. IOD and/or CSM appreciated and received the benefit of the monies they charged illegally.

66. IOD and/or CSM's retention of said benefit is inequitable and unjust and Defendants should be required to return said monies and disgorge all illegal charges, profits and interest earned on same.

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in favor of Plaintiff and the Class Members and against the Defendants as follows|:

1) Certify the Proposed Classes, appoint the Plaintiff as Class Representative and appoint his counsel as Class Counsel;

12

2) For compensatory damages in an amount to be determined at trial by a jury;

3) For exemplary damages up to $25,000.00 per violation, plus costs and reasonable actual attorney's fees incurred by Plaintiff(s);

4) For the return of all monies, profit, interest and pre-judgment interest on all sums illegally collected;

5) For such other and further relief as this court finds necessary and proper.

---

PLAINTIFF REQUESTS A TRIAL BY JURY

---

Dated this 22nd day of January, 2018.

WELCENBACH LAW OFFICES, S.C.
Attorney for Plaintiff

Electronically submitted by Robert J. Welcenbach
Robert J. Welcenbach
State Bar No. 1033091

13

**2017 WI 45**

# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2014AP2236 |
| COMPLETE TITLE: | Carolyn Moya, |
| |         Plaintiff-Respondent-Petitioner, |
| |    v. |
| | Aurora Healthcare, Inc. and Healthport |
| | Technologies, LLC, |
| |         Defendants-Appellants. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
366 Wis. 2d 541, 874 N.W. 2d 336
(2016 WI App 5 – Published)

| | |
|---|---|
| OPINION FILED: | May 4, 2017 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 20, 2016 |

| SOURCE OF APPEAL: | |
|---|---|
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Karen E. Christenson |

| JUSTICES: | |
|---|---|
| CONCURRED: | |
| DISSENTED: | ZIEGLER, J. dissents (opinion filed). |
| NOT PARTICIPATING: | BRADLEY, R. G., J. and KELLY, J. did not |
| | participate. |

ATTORNEYS:

    For the plaintiff-respondent-petitioners, there was a brief by *Robert J. Welcenbach* and *Welcenbach Law Offices, S.C.,* Milwaukee, and oral argument by *Robert J. Welcenbach.*

    For the defendants-appellants, there was a brief by *John Franke*, *Daniel A. Manna* and *Gass, Weber and Mullins, LLC,* Milwaukee, and oral argument by *John Franke.*

**2017 WI 45**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.    2014AP2236
(L.C. No.   13-CV-2642)

STATE OF WISCONSIN                    :        IN SUPREME COURT

Carolyn Moya,

      Plaintiff-Respondent-Petitioner,

v.

Aurora Healthcare, Inc. and Healthport Technologies, LLC,

      Defendants-Appellants.

**FILED**

**MAY 4, 2017**

Diane M. Fremgen
Clerk of Supreme Court

---

REVIEW of a decision of the Court of Appeals.  *Reversed and remanded for further proceedings.*

¶1    MICHAEL  J.  GABLEMAN,  J.    This  is  a  review  of  a published  decision  of  the  court  of  appeals  that  reversed  the Milwaukee  County  circuit  court's[1]  denial  of  Aurora  Healthcare, Inc.  and  Healthport  Technologies,  LLC's  (collectively  referred to  as  "Healthport")  motion  for  summary  judgment  and  remanded  the case  with  directions  to  grant  Healthport's  motion  for  summary

---

[1] The Honorable Karen E. Christenson presiding.

judgment.  Moya v. Aurora Healthcare, Inc., 2016 WI App 5, 366
Wis. 2d 541, 874 N.W.2d 336.

¶2    Today, we are asked to interpret the meaning of the
phrase "person authorized by the patient" in Wis. Stat.
§ 146.83(3f)(b)4.-5. (2013-14),[2] which exempts a "patient or a
person authorized by the patient" from paying certification
charges and retrieval fees for obtaining copies of the patient's
health care records.  More particularly, we are asked to
determine whether an attorney whose client authorized him via a
HIPAA[3] release form to obtain her health care records may benefit
from this fee exemption.  Because the phrase "person authorized
by the patient" is defined in Wis. Stat. § 146.81(5) to include
"any person authorized in writing by the patient," we hold that
an attorney authorized by his or her client in writing via a
HIPAA release form to obtain the client's health care records is
a "person authorized by the patient" under Wis. Stat.
§ 146.83(3f)(b)4.-5. and is therefore exempt from certification
charges and retrieval fees under these subdivisions.
Consequently, the decision of the court of appeals is reversed,
and the case is remanded for further proceedings consistent with
this opinion.

---

[2] All subsequent references to the Wisconsin Statutes are to
the 2013-14 version unless otherwise indicated.

[3] HIPAA stands for Health Insurance Portability and
Accountability Act.  A HIPAA release form is a type of form
wherein a patient consents to the release of his or her health
care information to a third party.

2

¶3   We begin with a brief factual background and description of the procedural history.   We then set forth the standard of review and the relevant rules for statutory interpretation.   We then conclude that Carolyn Moya's ("Moya") attorney is a "person authorized by the patient" under Wis. Stat. § 146.83(3f)(b)4.-5. and is therefore exempt from the certification charge and retrieval fee authorized by that statute.   Next, we address Healthport's arguments that the doctrines of voluntary payment and waiver bar Moya's claim.

### I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.   The Statutes Governing Access to Health Care Records

¶4   Access to patient health care records is governed by Wis. Stat. § 146.83.   Under subsec. (3f), a health care provider shall, subject to exceptions that are inapplicable here, provide copies of a patient's health care records "if a person requests copies of a patient's health care records, provides informed consent, and pays the applicable fees under par. (b)." § 146.83(3f)(a).

¶5   Pursuant to para. (b), health care providers may impose certain costs on the person requesting health care records under para. (a):

> (b) Except as provided in sub. (1f), a health care provider may charge no more than the total of all of the following that apply for providing the copies requested under par. (a):
>
> 1. For paper copies:  $1 per page for the first 25 pages;  75 cents per page for pages 26 to 50;  50 cents per page for pages 51 to 100;  and 30 cents per page for pages 101 and above.

3

2. For microfiche or microfilm copies, $1.50 per page.

3. For a print of an X-ray, $10 per image.

4. If the requester is not the patient or a person authorized by the patient, for certification of copies, a single $8 charge.

5. If the requester is not the patient or a person authorized by the patient, a single retrieval fee of $20 for all copies requested.

6. Actual shipping costs and any applicable taxes.

Wis. Stat. § 146.83(3f)(b) (emphasis added).  According to subd. 4. and subd. 5., the patient and a person authorized by the patient are exempt from the certification charge and retrieval fee.  This statute, though, does not provide a definition for a "person authorized by the patient."

¶6    Instead, a "person authorized by the patient" is defined in Wis. Stat. § 146.81(5) as

the parent, guardian, or legal custodian of a minor patient, as defined in s. 48.02 (8) and (11), the person vested with supervision of the child under s. 938.183 or 938.34 (4d), (4h), (4m), or (4n), the guardian of a patient adjudicated incompetent in this state, the person representative, spouse, or domestic partner under ch. 770 of a deceased patient, any person authorized in writing by the patient or a health care agent designated by the patient as a principal under ch. 155 if the patient has been found to be incapacitated under s. 155.05 (2), except as limited by the power of attorney for health care instrument. If no spouse or domestic partner survives a deceased patient, "person authorized by the patient" also means an adult member of the deceased patient's immediate family, as defined in s. 632.895 (1) (d).  A court may appoint a temporary guardian for a patient believed incompetent to consent to the release of records under this section as the person authorized by

4

the patient to decide upon the release of records, if no guardian has been appointed for the patient.

(Emphasis added). Because this definition uses the disjunctive "or," see Hull v. State Farm Mut. Auto. Ins., 222 Wis. 2d 627, 638, 586 N.W.2d 863 (1998) ("'[O]r' should be interpreted disjunctively."), in order to be a person authorized by the patient under Wis. Stat. § 146.83(3f)(b)4.-5., and therefore enjoy exemption from the certification charge and retrieval fee, a person must fall into only one of the above categories of persons. One of the categories in the above definition is "any person authorized in writing by the patient," and it is this category on which Moya relies in arguing that her attorney is a "person authorized by the patient" under § 146.83(3f)(b)4.-5.

B.  Moya's Class Action Lawsuit

¶7    This case comes to us by way of a class action lawsuit filed by Moya on behalf of not only herself but all other similarly situated persons who have been billed the certification charge and retrieval fee by Healthport for obtaining their own healthcare records. The class action arose from Moya's personal injury claim[4] in which Moya hired Welcenbach Law Offices, S.C. to represent her and the law firm had to pay the certification charge and retrieval fee, despite the fact that Moya had authorized the law firm in writing to obtain those records.

---

[4] Moya's personal injury claim arose from a car accident in 2011 from which she sustained injuries. This claim has since been settled.

5

¶8    Moya authorized her attorney, Robert Welcenbach, to obtain her health care records by signing HIPAA release forms giving to Welcenbach Law Offices, S.C. "authoriz[ation] to receive [her] health information."

¶9    Atty. Welcenbach subsequently submitted requests for Moya's health care records,[5] and Healthport, when fulfilling the requests, imposed certification charges and retrieval fees pursuant to Wis. Stat. § 146.83(3f)(b)4.-5.   Atty. Welcenbach paid the certification charges and retrieval fees and passed the associated costs to Moya by deducting the costs from the settlement proceeds resulting from her personal injury claim.[6]

¶10   At the time Healthport invoiced Atty. Welcenbach, he paid the costs, and he did not specifically dispute them. However, he had on multiple previous occasions disputed the imposition of such costs in other cases.

---

[5] Atty. Welcenbach submitted his request to Moya's health care provider, Aurora Healthcare, Inc. ("Aurora"), but Aurora and Healthport have an agreement whereby Healthport handles Aurora's health care records requests.

[6] The total deducted from Moya's settlement proceeds for these costs was $294.70.

Contrary to the assertion made by the dissent, the fact that Atty. Welcenbach passed these costs along to Moya was not a factor in arriving at our conclusion that Atty. Welcenbach is a person authorized by the patient for purposes of Wis. Stat. § 146.83(3f)(b)4.-5.   See dissent, ¶62 n.3.   Our determination that Atty. Welcenbach is a person so authorized is derived from our application of the plain language of the statute and nothing more.

6

¶11   In   response   to   Healthport's   imposition   of   the
certification charges and retrieval fees, Moya filed this class
action lawsuit.   She argues that Healthport violated Wis. Stat.
§ 146.83(3f)(b)4.-5. when it imposed the certification charges
and retrieval fees because her attorney is a "person authorized
by the patient," thereby exempting her attorney from paying the
certification charges and retrieval fees.

¶12   Healthport   moved   to   dismiss   Moya's   complaint   for
failure   to   state   a   claim,   and   the   circuit   court[7]   denied
Healthport's   motion.     Healthport   filed   an   answer,   and   the
parties   underwent   limited   discovery.     After   the   limited
discovery, Healthport filed a motion for summary judgment asking
the circuit court to dismiss Moya's claim with prejudice.   The
circuit court[8] denied Healthport's motion.   Healthport filed a
motion for reconsideration, and the circuit court[9] again denied
Healthport's motion.

¶13   Healthport   filed   an   interlocutory   appeal,   and   the
court   of   appeals   reversed   the   circuit   court's   denial   of
Healthport's motion for summary judgment and remanded the case
with   instructions   to   grant   Healthport's   motion.     Moya,   366
Wis. 2d 541, ¶1.   The court of appeals determined that Moya's
attorney   was   not   a   "person   authorized   by   the   patient"   and

_____

[7] The Honorable William W. Brash III presiding.

[8] The Honorable Karen E. Christenson presiding.

[9] The Honorable Pedro A. Colon presiding.

7

therefore Healthport could impose the certification charges and retrieval fees on Moya's attorney.  Id., ¶16.  Judge Kessler dissented stating that she would uphold the circuit court's denial of Healthport's motion for summary judgment and would conclude that Healthport could not impose the certification charge and retrieval fee.  Id., ¶¶28-29 (Kessler, J., dissenting).

¶14  Moya petitioned this court for review, which we granted in order to determine whether her attorney is a "person authorized by the patient" and thus exempt from paying the certification charge and the retrieval fee found in Wis. Stat. § 146.83(3f)(b)4.-5.

## II.  STANDARD OF REVIEW

¶15  "Whether the circuit court properly granted summary judgment is a question of law that this court reviews de novo." Racine County v. Oracular Milwaukee, Inc., 2010 WI 25, ¶24, 323 Wis. 2d 682, 781 N.W.2d 88 (quoting Hocking v. City of Dodgeville, 2009 WI 70, ¶7, 318 Wis. 2d 681, 768 N.W.2d 552). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Wis. Stat. § 802.08(2).  In making this determination, this court applies a two-step test. Green Spring Farms v. Kersten, 136 Wis. 2d 304, 314-15, 401 N.W.2d 816 (1987).  Under the first step, this court asks if the plaintiff stated a claim for relief.  Id. at 315.  Under the

8

second step, this court applies the summary judgment statute and asks if any factual issues exist that preclude summary judgment. Id.

¶16  "We review questions of statutory interpretation and application independently, but benefiting from the discussions of the circuit court and the court of appeals."  State v. Grunke, 2008 WI 82, ¶10, 311 Wis. 2d 439, 752 N.W.2d 769.

### III.  DISCUSSION

#### A.  The Rules of Statutory Interpretation

¶17  "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect."  State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110.  Statutory interpretation begins with the text of the statute.  Id., ¶45 (quoting Seider v. O'Connell, 2000 WI 76, ¶43, 236 Wis. 2d 211, 612 N.W.2d 659).  If the text of the statute is plain and unambiguous, our inquiry stops there.  Id. (quoting Seider, 236 Wis. 2d 211, ¶43).

¶18  If the text is ambiguous, we must look beyond the text to other, extrinsic sources of information, such as legislative history, to interpret the statute.  Id., ¶46.  "[A] statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses."  Id., ¶47.  Even without ambiguity, though, we may consult extrinsic sources to confirm our understanding of the plain language of a statute. Id., ¶51.

9

¶19   "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning."  Id., ¶45.  We also look to the context: "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results."  Id., ¶46.

B.  Interpretation of "Any Person Authorized in Writing by the Patient"

¶20   Moya argues that "any person authorized in writing by the patient" in Wis. Stat. § 146.81(5) is "defined broadly by the legislature" and that the plain meaning of the statutory language requires nothing more than a person and a written authorization from the patient.  Thus, Moya's attorney qualifies as a "person authorized in writing by the patient" simply because he is a person and has a written authorization from Moya in the nature of the HIPAA release form.  Healthport, on the other hand, argues that the context of § 146.81(5) indicates that the person authorized in writing by the patient must (in addition to having authorization to obtain health care records) also be authorized to make health care decisions on behalf of the patient.  In response to this argument, Moya says Healthport can achieve this definition only by adding its own language to the statute.

¶21   After examining the language of the statute and applying the well-established rules of statutory interpretation,

10

we agree with Moya.   The context of the statutory definition of "person authorized by the patient" provided in § 146.81(5) indicates that "any person authorized in writing by the patient" is a stand-alone category, separate and apart from the remaining categories, containing no limitations beyond those expressly written.   We base our determination in this regard on the punctuation and conjunctions given in the statute and see these categories as follows:

(1)   "[T]he parent, guardian, or legal custodian of a minor patient, as defined in s. 48.02 (8) and (11)";

(2)   "the person vested with supervision of the child under s. 938.138 or 938.34 (4d), (4h), (4m), or (4n)";

(3)   "the guardian of a patient adjudicated incompetent in this state";

(4)   "the personal representative, spouse, or domestic partner under ch. 770 of a deceased patient";

(5)   "any person authorized in writing by the patient or";

(6)   "a health care agent designated by the patient as a principal under ch. 155 if the patient has been found to be incapacitated under s. 155.05(2), except as limited by the power of attorney for health care instrument."

(7)   "If no spouse or domestic partner survives a deceased patient, 'person authorized by the patient' also means an adult member of the deceased patient's immediate family, as defined in s. 632.895(1)(d)."

(8)   "A court may appoint a temporary guardian for a patient believed incompetent to consent to the release of records under this section as the person authorized by the patient to decide upon the release of the records, if no guardian has been appointed for the patient."

Wis. Stat. § 146.81(5) (emphasis added).

11

¶22   Thus, the phrase "any person authorized in writing by the patient" must be interpreted as its own category of persons authorized by the patient.   The statutory language is unambiguous in that it requires only a person with a written authorization from the patient.   The plain meaning of the statute does not require that the authorization be an authorization to make health care decisions on behalf of the patient.   Thus, when the phrase "person authorized by the patient" is used in Wis. Stat. § 146.83(3f)(b)4.-5. in the context of obtaining copies of health care records, it includes "any person authorized in writing by the patient" to obtain such records.   The definition requires no additional authorization for such person to qualify for the exemption from the certification charge and retrieval fee.

¶23   Healthport argues that this conclusion is inconsistent with the general principle that we interpret an item in a list consistently with the remaining items in the list.   See State v. Popenhagen, 2008 WI 55, ¶46, 309 Wis. 2d 601, 749 N.W.2d 611. From this general principle, Healthport urges us to conclude that "any person authorized in writing by the patient" must have the ability to make health care decisions on the patient's behalf.   Healthport's argument runs as follows:   Because each of the other categories of persons in the definition of "person authorized by the patient" in Wis. Stat. § 146.81(5) has the authority to make health care decisions on behalf of the patient, the fifth category listed above must have that

12

authority as well in order to qualify as a "person authorized by the patient."

¶24  This argument is unpersuasive in light of the relevant statutory context.  Examining the various categories in the definition of "person authorized by the patient" in Wis. Stat. § 146.81(5) demonstrates that the legislature did not specify that each must have the authority to make health care decisions for the patient.  Instead, the legislature placed varying parameters on each distinct category.  For example, in the first category, the legislature chose to limit it to the parent, guardian, or legal custodian of a minor patient.  Therefore, a parent, guardian, or legal custodian of a minor is automatically a "person authorized by the patient" wherever that phrase appears in Wis. Stat. §§ 146.81-.84; nothing else is necessary to qualify and no other limitation is imposed.  Other categories, however, are narrower.  For example, the eighth category is specifically limited to a temporary guardian appointed by a court to "decide upon the release of records" for an incompetent patient.  At least for this category, having specific authorization to make health care decisions for the incompetent patient is a requirement.

¶25  We cite these instances of circumscription within the statute not as demonstrations of the legislature's collective facility with language but, rather, to bolster our understanding that, when the legislature chooses to say "any person authorized in writing by the patient," we must interpret these words without the kind of limitation proposed by Healthport.  Cf.

13

Indus. to Indus., Inc. v. Hillsman Modular Molding, Inc., 2002 WI 51, ¶19, 252 Wis. 2d 544, 644 N.W.2d 236.  Put simply, had the legislature intended to place parameters of the kind Healthport suggests on a person authorized in writing by the patient, "it would have done so."  Id.  It did not, and so we do not.[10]

¶26 Healthport argues that interpreting the category "any person authorized in writing by the patient" without the additional requirement that the authorization be for making health care decisions creates chaos and inconsistency throughout the statutory scheme.  Without constancy as to what the authorization must be for, Healthport argues that the definition of a "person authorized by the patient" would change each time it is used throughout the statute.  However, it is enough to refute this argument to note that, contrary to what Healthport argues, the definition of a "person authorized by the patient" remains constant throughout the statutes governing access to health care records.  Instead of creating chaos, permitting the specific nature of the authorization allows for flexibility.  In

---

[10] According to the dissent, such an interpretation is one done in a vacuum, not taking into account the context in which the words are written.  E.g., dissent, ¶41.  However, interpreting the text to also contain the words "to consent to the release of the patient's health care records" ignores the immediate context of the text we are asked to interpret here because it does not take into account the distinction between "any person authorized in writing by the patient" and the other categories of persons used in the statute.

14

all cases, we simply look to the written authorization to determine what the patient has authorized the person to do.

¶27 Because the definition of "any person authorized in writing by the patient" does not specify what the person must be authorized to do, the written authorization necessary for an attorney to qualify will depend on the function the attorney seeks to perform. In other words, _why_ an attorney might need written authorization may be different in different contexts. For example, to perform the function of a "person authorized by the patient" in some contexts, the attorney might need authorization to make certain decisions on behalf of the patient. See, e.g., Wis. Stat. § 146.82(1) (informed consent to release records may be given by a "person authorized by the patient"). But in other contexts, the attorney would only need authorization to receive copies of health care records. That is the case in Wis. Stat. § 146.83(3f), the statute governing requests for copies of such records. Regardless of the context, what mattered to the legislature in defining "person authorized by the patient" to include "any person authorized in writing by the patient" is that the person _does_ have written authorization from the patient to perform the relevant function.

¶28 Past iterations of the statute support our conclusion that the plain meaning of "any person authorized in writing by the patient" is exactly what it says. See County of Dane v. LIRC, 2009 WI 9, ¶27, 315 Wis. 2d 293, 759 N.W.2d 571 (quoting Richards v. Badger Mut. Ins., 2008 WI 52, ¶22, 309 Wis. 2d 541, 749 N.W.2d 581) (statutory context includes past iterations of

15

the statute).  When the legislature first enacted the statute in
1979, Wis. Stat. § 146.81(5) defined "person authorized by the
patient" as

> the parent, guardian or legal custodian of a minor
> patient, as defined in s. 48.02 (9) and (11), the
> guardian of a patient adjudged incompetent, as defined
> in s. 880.01 (3) and (4), the personal representative
> or spouse of a deceased patient or any person
> authorized in writing by the patient.

In this version of the statute, "any person authorized in
writing by the patient," as evidenced by the use of "or," is the
last category of persons considered a "person authorized by the
patient."  We see from our reading of the 1979 statute that "any
person authorized in writing by the patient" has always been a
distinct category of persons——one without limitation other than
a requirement of authorization in writing from the patient.

¶29  Nevertheless, Healthport argues that a 2014 amendment
to the statutes governing health care records, Wis. Stat.
§ 146.83(1b), provides context that shows that the legislature
intended to exclude attorneys from the definition of a "person
authorized by the patient."  The 2014 addition of § 146.83(1b)
states, "Notwithstanding s. 146.81(5), in this section a 'person
authorized by the patient' includes an attorney appointed to
represent the patient under s. 977.08[11] if that attorney has
written informed consent from the patient to view and obtain
copies of the records."    According to Healthport, the

---

[11] Wisconsin Stat. § 977.08 relates to the appointment of a
state public defender.

legislature's use of "[n]otwithstanding" shows that the legislature, in § 146.83(1b), included a certain type of attorney—public defenders—as a person authorized by the patient to receive health care records in spite of a general exclusion of attorneys from Wis. Stat. § 146.81(5).

¶30 While the legislature may have intended to expressly include public defenders, we decline Healthport's implicit invitation to add limiting language to Wis. Stat. § 146.81(5). The legislature, with its use of "any person," chose not to place a limit on who could be authorized in writing by the patient under § 146.81(5), and we give effect to the enacted text. See Bruno v. Milwaukee County, 2003 WI 28, ¶14, 260 Wis. 2d 633, 660 N.W.2d 656 (refusing to add additional requirements to the definition of "retirement" because those additional requirements were not mentioned in the text). And more to the point, nothing about the express inclusion of public defenders leads us to conclude the legislature intended to exclude other attorneys.[12]

---

[12] Healthport has failed to establish that the doctrine of expressio unius est exclusio alterius (the expression of one thing is the exclusion another) applies here because nothing indicates that the legislature considered attorneys other than public defenders when enacting the language of Wis. Stat. § 146.83(1b). See Wis. Citizens Concerned for Cranes & Doves v. DNR, 2004 WI 40, ¶17 n.11, 270 Wis. 2d 318, 677 N.W.2d 612 ("This rule may be applied only where there is some evidence that the legislature intended it to apply.").

(continued)

17

¶31  In  sum,  Moya's  attorney  qualifies  as  a  "person
authorized  by  the  patient"  because  he  is  a  person,  he  has  a
written  authorization  from  Moya  via  the  HIPAA  release  form,  and
Moya,  the  patient,  signed  the  HIPAA  release  form  to  provide  her
attorney  the  authorization  to  receive  her  health  care  records.
Therefore,  as  a  person  authorized  by  the  patient,  Moya's
attorney  is  exempt  from  the  certification  charges  and  retrieval
fees  Healthport  imposed  under  Wis.  Stat.  § 146.83(3f)(b)4.-5.

C.  The Doctrine of Voluntary Payment Does Not Apply

¶32  Healthport  argues  that  the  doctrine  of  voluntary
payment  bars  Moya's  class  action  lawsuit  and  thereby  entitles
Healthport  to  summary  judgment;  however,  we  conclude  that  the
doctrine  of  voluntary  payment  does  not  apply.

¶33  "The  voluntary  payment  doctrine  places  upon  a  party
who  wishes  to  challenge  the  validity  or  legality  of  a  bill  for
payment  the  obligation  to  make  the  challenge  either  before
voluntarily  making  payment,  or  at  the  time  of  voluntarily  making
payment."  Putnam v. Time Warner Cable of Se. Wis., Ltd. P'ship,
2002  WI  108,  ¶13,  255  Wis. 2d  447,  649  N.W.2d  626.  "[T]he
voluntariness  in  the  doctrine  goes  to  the  willingness  of  a

---

The  dissent  also  seems  to  be  looking  for  "attorneys"  to  be
expressly  and  specifically  listed  persons  authorized  by  the
patient.  See, e.g.,  dissent,  ¶42.  However,  if  we  are  to  look
for  such  narrow  categories,  who  then  would  qualify?  The  answer
is  no  one  because  no  category  of  persons  is  so  specifically
listed  in  the  statute.

18

person to pay a bill <u>without protest as to its correctness or legality</u>."  <u>Id.</u>, ¶15.

¶34  It is axiomatic that we give effect to the legislature's expressed intent when we interpret statutes. <u>Kalal</u>, 271 Wis. 2d 633, ¶44.  Here, we determined that the legislature's expressed intent that a person with a written authorization from a patient does not have to pay the certification charge or retrieval fee for obtaining health care records.  Thus, "[a]pplication of the common law voluntary payment doctrine would undermine the manifest purposes of [Wis. Stat. § 146.83(3f)]."  <u>MBS-Certified Pub. Accountants, LLC v. Wis. Bell, Inc.</u>, 2012 WI 15, ¶4, 338 Wis. 2d 647, 809 N.W.2d 857.  Consequently, we cannot apply it in this case to bar Moya's claim.

D.  The Doctrine of Waiver Does Not Apply

¶35  Healthport also argues that Moya's class action lawsuit is barred by the doctrine of waiver.  We disagree.

¶36  "Waiver has been defined as a voluntary and intentional relinquishment of a known right."  <u>Attoe v. State Farm Mut. Auto. Ins.</u>, 36 Wis. 2d 539, 545, 153 N.W.2d 575 (1967).  Waiver can be done through conduct.  <u>Id.</u>

¶37  Healthport argues that Moya waived her ability to obtain her health care records at a lower cost because she chose to authorize her attorney to obtain her health care records instead of requesting them herself, thereby voluntarily and intentionally relinquishing her right not to be charged the certification charge and retrieval fee.  As with the application

19

of the doctrine of voluntary payment, we decline to apply the doctrine of waiver to subvert the legislature's intent. To conclude that the doctrine of waiver applies would require us to conclude that Moya's attorney has to pay the certification charge and retrieval fee. However, we conclude that Moya's attorney does not have to pay the certification charge or retrieval fee because he is a "person authorized by the patient." Thus, the doctrine of waiver does not apply to bar Moya's class action lawsuit.

## IV. CONCLUSION

¶38  Because the phrase "person authorized by the patient" is defined in Wis. Stat. § 146.81(5) to include "any person authorized in writing by the patient," we hold that an attorney authorized by his or her client in writing via a HIPAA release form to obtain the client's health care records is a "person authorized by the patient" under Wis. Stat. § 146.83(3f)(b)4.-5. and is therefore exempt from certification charges and retrieval fees under those subdivisions.

*By the Court.*—The decision of the court of appeals is reversed and the case is remanded for proceedings consistent with this opinion.

¶39  REBECCA GRASSL BRADLEY and DANIEL KELLY, JJ., did not participate.

20

¶40  ANNETTE  KINGSLAND  ZIEGLER,  J.   *(dissenting)*.   The
question  before  this  court  is  whether  a  personal  injury  attorney
who  obtains  his  or  her  client's  written  consent  to  receive
copies  of  the  client's  health  care  records  is  a  "person
authorized  by  the  patient"  under  Wis.  Stat.  § 146.83(3f)(b),
such  that  the  attorney  need  not  pay  certification  and  retrieval
fees  when  requesting  copies  of  the  records  from  a  health  care
provider.   The  circuit  court  concluded  that  such  an  attorney  is
exempt  from  the  fees  as  a  "person  authorized  by  the  patient."
The  court  of  appeals  in  examining  the  same  statutory  language
answered  this  question  in  the  negative,  concluding  that  a
"person  authorized  by  the  patient"  within  the  meaning  of  Wis.
Stat.  §§ 146.81(5)  and  146.83(3f)(b)  is  a  person  who  has  "the
power  to  consent  to  the  <u>release</u>  of  the  patient's  records,"  not  a
person  who  merely  has  the  power  to  receive  those  records.   <u>Moya
v. Aurora  Healthcare,  Inc.</u>,  2016  WI  App  5,  ¶16,  366  Wis. 2d  541,
874  N.W.2d  336  (emphasis  added).   This  court  reverses  that  court
of  appeals'  determination  today  purportedly  because  the  language
is  clear.   I  write  because  when  utilizing  traditional  methods  of
statutory  interpretation,  examining  the  text,  its  context  and
construction,  the  plain  meaning  demonstrates  that  "person
authorized  by  the  patient"  has  a  less  expansive  meaning  than  my
colleagues  have  adopted.

¶41  The  court  concludes  that  an  attorney  authorized  by  his
or  her  client  in  writing  to  obtain  the  client's  health  care
records  is  a  "person  authorized  by  the  patient"  under  Wis.  Stat.
§§ 146.81(5)  and  146.83(3f)(b).   In  so  doing  it  explains  that  it

1

is relying on the "plain meaning" of the statute.  I acknowledge
that the interpretation of the statutes adopted by this court is
defensible if one only looks at those words in a vacuum.  The
conclusion of the court of appeals, however, is also supported
by the text.  How do we know which interpretation is correct?
Each interpretation relies on the language of the statute, yet
the court of appeals and this court reach opposite conclusions.
I endeavor to wade through a more thorough statutory analysis in
order to reach a conclusion.

¶42  As a practical matter, it certainly makes sense that
the legislature might choose to exempt personal injury attorneys
from the challenged fees.  These attorneys act as advocates for
their clients and perhaps should be able to obtain the records
without the fee.  However, these lawyers are not listed in Wis.
Stat. § 146.81(5), the statute that defines "person authorized
by the patient," nor are they exempt under Wis. Stat.
§ 146.83(1b), whereby the legislature determined that public
defenders need not pay the fee.  These lawyers do not fall into
the class of persons listed in § 146.81(5) as they are not
otherwise legally poised to essentially become the decision-
maker for the patient when the patient cannot legally act on his
or her behalf.  Section 146.81(5) defines "person authorized by
the patient" in part to be:

> [T]he parent, guardian, or legal custodian of a minor
> patient, as defined in s. 48.02(8) and (11), the
> person vested with supervision of the child under
> s. 938.183 or 938.34(4d), (4h), (4m), or (4n), the
> guardian of a patient adjudicated incompetent in this
> state, the personal representative, spouse, or
> domestic partner under ch. 770 of a deceased patient,

2

> any person authorized in writing by the patient or a
> health care agent designated by the patient as a
> principal under ch. 155 if the patient has been found
> to be incapacitated under s. 155.05(2), except as
> limited by the power of attorney for health care
> instrument.

§ 146.81(5).  Notably absent in this provision are lawyers who advocate on a patient's behalf in a lawsuit.[1]  While it may make sense to exempt these lawyers from paying fees, the choice is not the court's to make; it is within the province of the legislature.   I must examine the text of the statute at issue using fundamental tools of statutory construction to determine which of two interpretations of the phrase "person authorized by the patient" was intended by the legislature; as put by Aurora Healthcare,    Inc.,    and    Healthport    Technologies,    LLC ("Healthport"), these two interpretative options are: (1) "any person authorized in writing by the patient to obtain the patient's health care records"; or (2) "any person authorized in writing by the patient to consent to the release of the patient's health care records."   In so doing I look to the surrounding text and examine that text in light of the canons of construction, not just part of the statutory text, in a vacuum.

> It is . . . a solemn obligation of the judiciary to
> faithfully give effect to the laws enacted by the
> legislature, and to do so requires a determination of
> statutory meaning.   Judicial deference to the policy
> choices enacted into law by the legislature requires
> that statutory interpretation focus primarily on the

---

[1] Those attorneys advocate on behalf of the client/patient and may receive authority from a client to, for example, settle a case; importantly, however, such attorneys, unlike those persons in Wis. Stat. § 146.81(5), are not standalone decision-makers who act with or without the patient's consent.

3

language of the statute. We assume that the legislature's intent is expressed in the statutory language. . . . It is the enacted law, not the unenacted intent, that is binding on the public. Therefore, the purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect.

State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110.

¶43 Given the above charge, I write to examine the statutes at issue and the court's reasoning, considering the disputed statutory text in context and in light of fundamental canons of construction. For reasons I will explain, the interpretation adopted by the court today fails to adhere to fundamental principles of statutory construction and in fact renders the overall statutory scheme virtually meaningless. Ultimately, I would conclude, like the court of appeals, that the text of the statutes requires a conclusion that Moya's personal injury attorney is not a "person authorized by the patient" under Wis. Stat. § 146.83(3f)(b). The lawyer at issue is not within the definition of "person authorized by the patient" in Wis. Stat. § 146.81(5) nor is he or she exempt from payment of fees under § 146.83(1b) as are other lawyers. Thus, I must respectfully dissent.

I

¶44 I begin by setting forth established principles of statutory interpretation. Statutory interpretation is governed first and foremost by the principle that "[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." Antonin Scalia &

4

Bryan A. Garner, <u>Reading Law: The Interpretation of Legal Texts</u> 56 (2012) (denominating this rule the "Supremacy-of-Text Principle").  Judges should "determin[e] the application of a governing text to given facts on the basis of how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued." <u>Id.</u> at 33.  This approach recognizes that "[t]he law <u>is</u> what the law <u>says</u>," <u>Bank One Chicago, N.A. v. Midwest Bank & Trust Co.</u>, 516 U.S. 264, 279 (1996) (Scalia, J., concurring in part and concurring in the judgment), and that "[a]n interpreter who bypasses or downplays the text becomes a lawmaker without obeying the constitutional rules for making law."  Frank H. Easterbrook, <u>Textualism and the Dead Hand</u>, 66 Geo. Wash. L. Rev. 1119, 1120 (1998).

¶45  Proper statutory interpretation rests on the fundamental premise that "[n]othing but <u>conventions</u> and <u>contexts</u> cause a symbol or sound to convey a particular idea."  Scalia & Garner, <u>supra</u>, at xxvii (emphases added).

> The enactment of a law is a form of communication through language——from the law-giver to those affected by the law, as well as to those who must enforce, apply, or interpret the law.  This sort of communication is only possible if the participants have a set of shared practices and conventions that permit them to convey meaning to each other.  At the most basic level, intelligible communication requires that both parties attach the same meaning to the same sounds or signs.  Furthermore, we often need to be able to tell which of several possible meanings is intended by considering the context in which a word is used.  Our shared practices and conventions also go beyond word meanings.  The rules of grammar and syntax, for example, represent shared conventions that assist us in decoding the communications of others.

John  F.  Manning  &  Matthew  C.  Stephenson,  Legislation  and Regulation 222 (2010).

¶46 These  twin  pillars  of  interpretation,  context  and convention,  are  indispensable  to  the  functioning  of  the judiciary.  Convention  is  sometimes  realized  in  part  through  the implementation  of  certain  "canons  of  construction,"  which  are "rules  of  thumb  that  that  help  courts  determine  the  meaning  of legislation."  Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253 (1992).  A  number  of  these  canons  will  be  discussed  in  more detail below.

¶47 Context,  on  the  other  hand,  includes  (1) "the  purpose of  the  text,"  which  must  be  "gathered  only  from  the  text  itself, consistently  with  the  other  aspects  of  its  context";  (2) "a word's  historical  associations  acquired  from  recurrent  patterns of  past  usage";  and  (3) "a  word's  immediate  syntactic  setting— that  is,  the  words  that  surround  it  in  a  specific  utterance." Scalia  &  Garner,  supra,  at  33  (emphasis  omitted)  (citing I.A. Richards,  Interpretation in Teaching viii (1938)).

¶48 Application  of  these  principles—an  unrelenting  focus on  the  meaning  of  the  text,  discovered  through  a  careful examination  of  context  and  the  application,  where  necessary,  of canons  of  construction—promotes  "certainty,  predictability, objectivity,  reasonableness,  rationality,  and  regularity,  which are  the  objects  of  the  skilled  interpreter's  quest."  Id. at 34 (citing  Frederick  J.  de  Sloovère,  Textual Interpretation of Statutes, 11 N.Y.U. L.Q. Rev. 538, 541 (1934)).  I  now  turn  to

the issue of statutory interpretation at the heart of this appeal and, in analyzing it, employ this methodology.

II

¶49  Wisconsin Stat. § 146.83(3f)(a) explains that, with certain exceptions, "if a person requests copies of a patient's health care records, provides informed consent, and pays the applicable fees under par. (b), the health care provider shall provide the person making the request copies of the requested records."  Wis. Stat. § 146.83(3f)(a).  Wisconsin Stat. § 146.83(3f)(b), in turn, establishes the "applicable fees," including, as relevant here, the following two fees: (1) "If the requester is not the patient or a person authorized by the patient, for certification of copies, a single $8 charge"; and (2) "If the requester is not the patient or a person authorized by the patient, a single retrieval fee of $20 for all copies requested."  Wis. Stat. § 146.83(3f)(b)4.-5. (emphases added). In this case, Carolyn Moya's ("Moya") personal injury attorney obtained written consent from Moya to receive copies of her health care records.  Moya claims her attorney is therefore a "person authorized by the patient" and thus exempt from these fees.

¶50  "Person authorized by the patient" is defined in Wis. Stat. § 146.81(5) as follows:

> [T]he parent, guardian, or legal custodian of a minor patient, as defined in s. 48.02(8) and (11), the person vested with supervision of the child under s. 938.183 or 938.34(4d), (4h), (4m), or (4n), the guardian of a patient adjudicated incompetent in this state, the personal representative, spouse, or domestic partner under ch. 770 of a deceased patient,

7

> any person authorized in writing by the patient or a
> health care agent designated by the patient as a
> principal under ch. 155 if the patient has been found
> to be incapacitated under s. 155.05(2), except as
> limited by the power of attorney for health care
> instrument.  If no spouse or domestic partner survives
> a deceased patient, "person authorized by the patient"
> also means an adult member of the deceased patient's
> immediate family, as defined in s. 632.895(1)(d).  A
> court may appoint a temporary guardian for a patient
> believed incompetent to consent to the release of
> records under this section as the person authorized by
> the patient to decide upon the release of records, if
> no guardian has been appointed for the patient.

§ 146.81(5) (emphasis added).

¶51 Moya and the court rely on the emphasized text for their conclusion that Moya's attorney fits the definition of "person authorized by the patient."  At the outset, it should be noted that it is not clear whether the phrase "any person authorized in writing by the patient" in Wis. Stat. § 146.81(5) is a standalone category or whether it is connected to the following phrase, namely "or a health care agent designated by the patient as a principal under ch. 155 if the patient has been found to be incapacitated under s. 155.05(2)."  § 146.81(5). Healthport contends that this court need not resolve this issue, and I agree.  As I will demonstrate, whether read as constituting its own category or read in conjunction with the phrase that follows it, the phrase "any person authorized in writing by the patient" does not include Moya's attorney.

¶52 More generally, it is apparent that the mention of lawyers is completely absent from this statutory definition and, instead, the categories of individuals in the statute have the commonality of those people who can legally act and make

8

decisions when the patient cannot; that is not what a personal injury lawyer does.    Lawyers are not like the other categories of individuals listed.    While lawyers may advocate on behalf of their clients, they are ultimately subject to their clients' direction.    The categories of individuals in Wis. Stat. § 146.81(5), on the other hand, are composed of individuals who stand in the shoes of a patient and make decisions for the patient, but are not those who simply advocate for a client at the client's direction.

III

¶53 Also important is a recognition that, as noted by Healthport, the definition of "person authorized by the patient" provided in Wis. Stat. § 146.81(5) does not clearly define the nature of the "authori[ty]" provided by the patient to the person authorized by the patient.    The circuit court determined that, for purposes of Wis. Stat. § 146.83(3f)(b), the authority was the authority to inspect a patient's health care records. Moya, 366 Wis. 2d 541, ¶4.    The court of appeals concluded that the authority was the authority to consent to the release of a patient's health care records.    Id., ¶16.

¶54 Review of Wis. Stat. § 146.81(5) makes apparent that the definition of "person authorized by the patient" provided therein has a common focus on categories of people who are authorized by law to act as the patient, not just act because the patient vested them with limited authority to obtain records.    Those included in the statutory definition include those such as "the parent . . . of a minor patient," for

9

instance, or "the guardian of a patient adjudicated incompetent in this state," but the statute does not explicitly describe what type of authority these people possess. § 146.81(5).    The kind of authority vested by law in these people is far different than the kind of obligations a lawyer takes on in representing a person in a lawsuit.    These people listed are those who could sign a release that would authorize the lawyer to get the records.    The lawyer, unlike those listed in § 146.81(5), could not, for example, sign the form on behalf of the patient as all these individuals could do.

¶55    These observations are relevant to the plain meaning of "any person authorized in writing by the patient" in Wis. Stat. § 146.81(5).    A person who states "I have been authorized in writing" has said nothing about what she has been authorized to do.    For example, a person who has been authorized in writing to speak on a patient's behalf is technically a "person authorized in writing by the patient," see § 146.81(5), but no one would argue that this type of person would fulfill the definition of "person authorized by the patient" in Wis. Stat. § 146.83(3f)(b).    Those listed in the statute, however, have in common, for example, the authority vested in them by law.    In sum, examination of the phrase "any person authorized in writing by the patient" in § 146.81(5) in isolation is not sufficient to decide this case.

¶56    The court defines the nature of the authority in Wis. Stat. § 146.81(5) differently depending on in which portion of

10

chapter 146 that phrase is used.[2]  So because, in the context of Wis. Stat. § 146.83(3f), the "person [potentially] authorized by the patient" is "request[ing] copies of a patient's health care records," § 146.83(3f)(a), the definition of "person authorized by the patient" in that portion of the statutes, in the court's view, is "person authorized by the patient to obtain the patient's healthcare records" (as long as, pursuant to § 146.81(5), that authorization is written authorization).  But any person who obtains records this way would need written authorization.

¶57  In other words, the court simply concludes that because Moya's attorney was "authorized in writing" to receive copies of Moya's health care records, he is a "[p]erson authorized by the patient" as defined in Wis. Stat. § 146.81(5), which definition applies to the fee portion of the statutory scheme, Wis. Stat. § 146.83(3f)(b).  See § 146.81.  That interpretation possesses the benefit of being uncomplicated, but that does not mean it is correct.  The court's reading fails to account for a number of important considerations—namely, significant clues provided by investigation of the statutory

---

[2] Typically, the "[p]resumption of consistent usage" canon would instruct that "[a] word or phrase is presumed to bear the same meaning throughout a text."  Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 170 (2012).  In the court's defense, however, it may not be necessarily in violation of that canon because the nature of the authority, while changing, changes to attend to the purpose of the specific statute.

11

No.  2014AP2236.akz

context and the application of canons of construction—which counsel a different reading of the statute.

¶58 More specifically, the court's conclusion falls prey to a criticism directed at Moya by Healthport:

> Although [Moya] repeatedly urges this Court to follow the "plain language" or "plain meaning" of the statutory words, she fails to provide a reason why her proposed interpretation follows from those words. Instead, [Moya] simply assumes that the legislature meant to say "any person authorized in writing by the patient to obtain that patient's health care records." A plain language argument that simply assumes the addition of a critical clause is not a plain language argument at all.

¶59 The truth of the matter is that the statutory phrase "any person authorized in writing by the patient," viewed alone, simply does not provide enough information for the court to reach a conclusion in this case.  But statutory interpretation requires more than simply looking at a set of words in total isolation.  The court must look to something more—the context of the phrase and applicable canons of constructions—to reach the correct answer.

¶60 Before discussing how these tools help establish the plain meaning of this phrase in this statute, I explain how these tools immediately demonstrate a number of significant deficits in the court's approach.  First, the phrase "person authorized by the patient" must require more in the context of Wis. Stat. § 146.83(3f) than the court says it does because, with a few exceptions, "a person request[ing] copies of a patient's health care records" under that provision must additionally "provide[] informed consent" in order to obtain the

12

records.   § 146.83(3f)(a).   Informed consent under the statute "means written consent to the disclosure of information from patient health care records to an individual, agency, or organization that includes" specified pieces of information such as the patient's name and the signature of the patient or the person authorized by the patient.   Wis. Stat. § 146.81(2). Therefore, under the court's interpretation, nearly _every_ person who obtains health care records under § 146.83(3f) will, by nature of the informed consent they must provide, automatically be a "person authorized by the patient" and thus, virtually no one will ever pay certification or retrieval fees as called for by the statute.

¶61  If the court were correct and all one needed to become a "person authorized by the patient" was informed consent, then there would be no need for a statutory definition of "person authorized by the patient."   A person possessing informed consent and a "person authorized by the patient" must therefore be very different individuals possessing different degrees of authority.   See, e.g., Pawlowski v. Am. Family Mut. Ins. Co., 2009 WI 105, ¶22, 322 Wis. 2d 21, 777 N.W.2d 67 ("As a basic rule of statutory construction, we endeavor to give each statutory word independent meaning so that no word is redundant or superfluous.   When the legislature chooses to use two different words, we generally consider each separately and presume that different words have different meanings.").   The reason that both informed consent and separate authorization are required in this statutory scheme is because the individuals

13

exempted from the statutory fees at issue are either patients or those who are essentially the equivalents of patients.  The legislature defined "person authorized by the patient" to mean individuals that could actually step in and make decisions for the patient.  In contrast, lawyers are advocates but they do not step in and become the decision-maker; in fact, it is unethical for them to do so.

¶62  The legislature does not enact a fee statute to collect no fees.  While this seems obvious, I need not look to legislative history or some unknown possible intent; I need only look at the words of the statute.  And this is where context and canons of construction provide guidance.  It is a "well-established canon[] of statutory construction" that "[s]tatutory interpretations that render provisions meaningless should be avoided."  Belding v. Demoulin, 2014 WI 8, ¶17, 352 Wis. 2d 359, 843 N.W.2d 373; see also, e.g., United States v. Tohono O'Odham Nation, 563 U.S. 307, 315 (2011) ("Courts should not render statutes nugatory through construction."); Louisville Water Co. v. Clark, 143 U.S. 1, 12 (1892) ("Any other interpretation of the act . . . would render it inoperative for the purposes for which, manifestly, it was enacted."); Kalal, 271 Wis. 2d 633, ¶46 ("Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage.").  The court's approach virtually guts the

14

possibility of collecting fees and certainly contravenes fairly basic canons of construction.[3]

¶63  Another flaw in the court's reading of the relevant statutes is that the language of Wis. Stat. § 146.81(5) does not mention lawyers at all but lawyers are exempted in other sections.  "Under the doctrine of _expressio unius est exclusio alterius_, 'the express mention of one matter excludes other similar matters [that are] not mentioned.'"  _FAS, LLC v. Town of Bass Lake_, 2007 WI 73, ¶27, 301 Wis. 2d 321, 733 N.W.2d 287 (alteration in original) (quoting _Perra v. Menomonee Mut. Ins. Co._, 2000 WI App 215, ¶12, 239 Wis. 2d 26, 619 N.W.2d 123).  The legislature was fully capable of adding lawyers to the

---

[3] It is true that Wis. Stat. § 146.82(2) contains a list of entities that may obtain health care records without informed consent under certain circumstances, such as (generally speaking) emergency medical services personnel assisting a patient, district attorneys prosecuting alleged child abuse, and courts conducting termination of parental rights proceedings. _See_ § 146.82(2)(a)2., 11.–11m.  I do not find compelling the argument that the certification and retrieval fees in Wis. Stat. § 146.83(3f)(b)4.–5. are reserved for this specialized subset of requesters.  If the legislature had intended such a result, it could have provided for it much more clearly.

Further, it may well be that these entities share common characteristics of which the court is not, at this time, fully aware.  For instance, many of the entities listed in this group seem to possess a public interest component, such that a fee for health care records would ultimately be transferred to the taxpayer.  Other entities in this group would seemingly include health care providers themselves using health care records for internal matters.  _See, e.g.,_ Wis. Stat. § 146.82(2)(a)3. (exception provided "[t]o the extent that the records are needed for billing, collection or payment of claims.").

15

definition of "person authorized by the patient," but it did not
do so.

¶64  A third problem with the court's interpretation stems
from the language of the legislature's 2014 enactment of 2013
Wisconsin  Act  342,  which  in  turn  created  Wis.  Stat.
§ 146.83(1b).  Importantly, this statute further defined those
who are exempt from payment.  Section § 146.83(1b) provides:

> Notwithstanding s. 146.81(5), in this section, a
> "person authorized by the patient" includes an
> attorney appointed to represent the patient under s.
> 977.08 [a section in the chapter pertaining to the
> State Public Defender] if that attorney has written
> informed consent from the patient to view and obtain
> copies of the records.

§ 146.83(1b) (emphasis added).  "Notwithstanding" the definition
of "person authorized by the patient" means "in spite of" the
definition  of  "person  authorized  by  the  patient."
Notwithstanding, Black's Law Dictionary 1231 (10th ed. 2014)
(emphasis  added).   It  would  be  strange  indeed  for  the
legislature to have used the word "notwithstanding" if, as is
suggested by the court's opinion, these attorneys already met
the definition of "person authorized by the patient" in Wis.
Stat. § 146.81(5) prior to the enactment of § 146.83(1b).  Put
differently,  the  legislature's  recent  amendment  strongly
indicates that individuals like Moya's attorney are not included
in the definition of "person authorized by the patient."  If
lawyers who received authorization in writing were included in
§ 146.81(5), § 146.83(1b) would be surplusage and completely
unnecessary.

16

¶65 The amendment in Wis. Stat. § 146.83(1b) provides similar guidance when viewed in light of any of a number of canons of construction. One such canon has already been referenced: "Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." Kalal, 271 Wis. 2d 633, ¶46. As Healthport points out, "[i]f the definition of 'person authorized by the patient' already included attorneys with an informed consent, the new section 146.83(1b) would be wholly superfluous." Indeed it would.

¶66 Again, "[u]nder the doctrine of expressio unius est exclusio alterius, 'the express mention of one matter excludes other similar matters [that are] not mentioned.'" FAS, LLC, 301 Wis. 2d 321, ¶27 (alteration in original) (quoting Perra, 239 Wis. 2d 26, ¶12). That is, the legislature obviously could have expanded the reach of Wis. Stat. § 146.83(1b) to include personal injury attorneys, but it did not do so. Similarly, "[n]othing is to be added to what the text states or reasonably implies (casus omissus pro omisso habendus est). That is, a matter not covered is to be treated as not covered." Scalia & Garner, supra, at 93 (describing this as the "Omitted-Case Canon"). Under this principle, a judge should not, among other things "elaborate unprovided-for exceptions to a text." Id.; see also id. ("[I]f the Congress [had] intended to provide additional exceptions, it would have done so in clear language." (alterations in original) (quoting Petteys v. Butler, 367 F.2d 528, 538 (8th Cir. 1966) (Blackmun, J., dissenting))). This is exactly what the court may be read to do in concluding that

17

Moya's attorney is exempt from the fees at issue. This court should not be acting where the legislature has declined to do so.

¶67 Accordingly, the court's interpretation of Wis. Stat. § 146.83(3f)(b) possesses substantial flaws, and I cannot agree with it. Fortunately, it is not the only interpretation presented in this case. Again, it is important to recognize that Wis. Stat. § 146.81(5) does not clearly define the nature of the "authori[ty]" provided by the patient to the person chosen by the patient; the statute instead lists categories of individuals. In order to determine the nature of this authority, then, it is again beneficial to look to context and to apply recognized canons of construction.

¶68 Two related canons of construction, noscitur a sociis and ejusdem generis, are particularly helpful here. Pursuant to the noscitur a sociis canon of construction, "[a]n unclear statutory term should be understood in the same sense as the words immediately surrounding or coupled with it." State v. Quintana, 2008 WI 33, ¶35, 308 Wis. 2d 615, 748 N.W.2d 447 (quoting Wis. Citizens Concerned for Cranes & Doves v. DNR, 2004 WI 40, ¶40, 270 Wis. 2d 318, 677 N.W.2d 612). That is, it is reasonable to ascertain the meaning of the phrase "person authorized by the patient" by analyzing the phrase in light of the surrounding categories enumerated in the definition. See Moya, 366 Wis. 2d 541, ¶12; see also Kalal, 271 Wis. 2d 633, ¶46 ("Context is important to meaning.").

18

¶69  As explained, none of the enumerated categories in Wis. Stat. § 146.81(5) consists of attorneys.  Further, the phrase "any person authorized in writing by the patient" is placed in the middle of the list rather than at its end; therefore, it does not seem to be an expansion of the categories previously listed to new categories of people, nor does it seem to be an extension of the previously listed categories to include a host of new categories.  See, e.g., State v. Givens, 28 Wis. 2d 109, 115, 135 N.W.2d 780 (1965) ("When the statute, after the specific enumerations, in a 'catchall' clause proscribes 'otherwise disorderly conduct' which tends to 'provoke a disturbance,' this must mean conduct of a type not previously enumerated but similar thereto in having a tendency to disrupt good order and to provoke a disturbance.").

¶70  In fact, if I consult the noscitur a sociis canon of construction, it depends upon whether the enumerated persons in Wis. Stat. § 146.81(5) possess a "similar meaning."  Quintana, 308 Wis. 2d 615, ¶35.  If the various categories are unrelated, then one would presume that the individual categories should be interpreted broadly.  See id.  Conversely, if the various categories are related, then the "authori[ty]" provided by the patient to the person chosen by the patient in § 146.81(5) should be understood in light of the characteristics shared by each category.  See id.  As was previously discussed, the categories of individuals listed have in common the fact that they become decision-makers for the patient.  Thus, we further

19

conclude that the phrase "person authorized by the patient" is not to be construed as expansive.

¶71  Additionally, a related canon of construction, ejusdem generis, "instructs that when general words follow specific words in the statutory text, the general words should be construed in light of the specific words listed" such that "the general word or phrase will encompass only things of the same type as those specific words listed." Id., ¶27 (citing Adams Outdoor Advert., Ltd. v. City of Madison, 2006 WI 104, ¶62 n.15, 294 Wis. 2d 441, 717 N.W.2d 803). But if "[t]he specific terms listed in the statute have no common feature or class from which one could ascertain an intention to restrict the meaning of the general term," then "the general terms should be interpreted broadly to give effect to the legislature's intent." Id., ¶¶26, 28, 31-32; see also Scalia & Garner, supra, at 101 (under the "General-Terms Canon," "[g]eneral terms are to be given their general meaning (generalia verba sunt generaliter intelligenda)," so long as there is no "indication to the contrary"). So again, because the categories of individuals have in common the fact that they become decision-makers for the patient, the words are not expansive.

¶72  Consequently, it is important to ascertain whether there are similarities between the categories of individuals listed in Wis. Stat. § 146.81(5). If there are similarities, this would indicate that the "authori[ty]" granted in § 146.81(5) should be interpreted more narrowly and more exclusively; if there are no similarities, then this

20

"authori[ty]" should be interpreted more broadly and less exclusively.

¶73 Wisconsin Stat. § 146.81(5) defines "[p]erson authorized by the patient" to include individuals acting on behalf of: (1) minor patients; (2) patients who have been adjudicated incompetent; (3) deceased patients; and (4) incapacitated patients. § 146.81(5). One might argue that the legislature envisioned a certain commonality among these categories of individuals. And indeed, the court of appeals, comparing Moya and her personal injury attorney to these other pairs of individuals, interpreted "authorized" in the phrase "person authorized by the patient" to mean "having the power to consent to the release of the patient's records," rather than merely the power to receive those records. Moya, 366 Wis. 2d 541, ¶16 (emphasis added); see also § 146.81(5) ("A court may appoint a temporary guardian for a patient believed incompetent to consent to the release of records under this section as the person authorized by the patient to decide upon the release of records, if no guardian has been appointed for the patient." (emphasis added)). The court of appeals concluded that adoption of Moya's argument would violate the manifest purpose of the relevant statutes, expanding the definition of "person authorized by the patient" beyond the "very specific list of individuals" contemplated by the legislature. See Moya, 366 Wis. 2d 541, ¶12.

¶74 The interpretation of the court of appeals is reasonable. It better comports with the other enumerated

21

categories of persons in Wis. Stat. § 146.81(5).  It possesses none of the major defects of the court's interpretation which I identified above.  And it is supported by the statutory context and by canons of construction.  And this holds true whether "any person authorized in writing by the patient" is read as a standalone category or together with the following clause.  If read as a standalone category, "any person authorized in writing by the patient" would clearly not be intended as a broad, "catch-all" group, because it would not fall at the end of the list of enumerated categories; and if read together with the following clause ("or a health care agent designated by the patient as a principal under ch. 155 if the patient has been found to be incapacitated under s. 155.05(2)," § 146.81(5)), then "any person authorized in writing by the patient" would share the characteristics of the other enumerated categories and would not be intended to include attorneys.  These canons certainly point strongly in one direction: against the reading adopted by the court.

¶75  The court does not adequately address the reading dictated by application of the interpretative methodology discussed above; as a result, its reasoning is unpersuasive.  It also does not explain why Wis. Stat. § 146.83(1b) would be necessary to exempt public defenders from the payment of these fees because public defenders, as virtually all others, would need written authorization to obtain the patient's records in the first instance.  The court adopts a more expansive interpretation, but seems to base its interpretation on language

22

that does not have support in common tools of construction.   In my view, little or nothing in the statutory text supports the court's expansive view.

¶76  On balance, I must conclude that the interpretation adopted by the court today is unlikely to be the correct answer. If the statute at issue is really as broad as the court says it is, the challenged fee requirements are rendered largely meaningless.   I cannot accept that a plain meaning here was intended to exempt virtually all who obtain records from payment of the fees set forth.

¶77  The clear purpose of the statute, as "gathered . . . from the text itself," is to charge certain individuals fees.   Scalia & Garner, supra, at 33.   Very simply stated, since nearly anyone who wishes to receive a patient's records needs that patient's authorization and no such authorized person would ever need to pay the applicable fee, virtually no fees would be paid under this statute.   It is not as though an attorney, appropriately authorized, could never fit the definition of "person authorized by the patient."   But every attorney does not fit that definition, and an examination of the text reveals that Moya's attorney does not fit that definition.

¶78  Finally, given the competing interpretative possibilities here, a point about judicial restraint is appropriate.   Even if it intuitively makes sense that personal injury lawyers should not have to pay fees to receive their clients' medical records, if I am incorrect, the legislature could easily amend the statute as it did with Wis. Stat.

23

No.  2014AP2236.akz

§ 146.83(1b) thereby excluding the public defenders. The legislative "fix," if the court is incorrect, requires a virtual rewrite of these fee statutes.

                                    IV

¶79 Interpretation of the statutory text leads me to conclude, like the court of appeals, that Moya's personal injury attorney is not a "person authorized by the patient" under Wis. Stat. § 146.83(3f)(b). Regardless, it would be well worth the legislature's time for it to clarify these statutes so as to provide guidance to the public, to lawyers, and to the courts. In the absence of such guidance, however, I must respectfully dissent.

¶80  For the foregoing reasons, I respectfully dissent.

                                    24

No.   2014AP2236.akz

·1

FILED
02-20-2018
John Barrett
Clerk of Circuit Court
2018CV000607

STATE OF WISCONSN     CIRCUIT COURT     MILWAUKEE COUNTY

TIMOTHY RAVE, individually and on
behalf of a class of others similarly
situated,

        Plaintiff,             Case No. 18-CV-0607

vs.                            Case Code:  30103
                                  Hon. Ellen R. Brostrom
CIOX HEALTH, LLC and
COLUMBIA ST. MARY'S
HOSPITAL MILWAUKEE, INC.,

        Defendants.

## CIOX HEALTH, LLC'S ANSWER & AFFIRMATIVE DEFENSES TO CLASS ACTION COMPLAINT

Defendant Ciox Health, LLC ("Ciox") hereby responds to the Class Action Complaint (the "Complaint") of Plaintiff Timothy Rave, Individually and on behalf of a class of others similarly situated ("Plaintiff") as follows:

### ANSWER

### I.  PARTIES

1.      Ciox lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies them.

2.      Ciox admits that IOD Incorporated ("IOD") was a Wisconsin corporation.  Ciox further admits that IOD fulfilled certain requests for certified medical records received by Columbia St. Mary's Hospital Milwaukee, Inc. ("CSM") on behalf of CSM.  Ciox admits that IOD charged certain amounts in connection with fulfilling certain requests for certified medical records received by CSM on its behalf. Ciox denies any further allegations in this paragraph not specifically admitted.

3.      Ciox admits on or about December 31, 2015, IOD merged with HealthPort Technologies, LLC ("HealthPort").  Ciox further admits that HealthPort was the surviving company after the merger with IOD.

4.      Ciox admits that HealthPort was the surviving company after the merger with IOD.  The remaining allegations in this paragraph state legal conclusions and therefore require no response.

5.      Ciox admits that HealthPort Technologies, LLC changed its name to CIOX Health, LLC.

6.      Ciox denies that it is a corporation.  Ciox affirmatively alleges that it is a limited liability company that conducts business in Wisconsin.  The remaining allegations in this paragraph state legal conclusions and therefore require no response.  If a response is required, Ciox denies the allegations in this paragraph.  Ciox further denies it is liable in any amount to Plaintiff or the alleged putative class members.

7.      Ciox incorporates its answers to paragraphs 3-5.  Otherwise, the remaining allegations in this paragraph state legal conclusions and therefore require no response.  If a response is required, Ciox denies the allegations in this paragraph.

8.      Ciox lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies them.

## II. BACKGROUND

9.      The allegations in this paragraph contain no factual allegations that require a response.  To the extent a response is required, Ciox lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies them.

10.     The allegations in this paragraph contain no factual allegations that require a response.  To the extent a response is required, Ciox lacks knowledge or

2

information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies them.

11.    The allegations in this paragraph contain no factual allegations that require a response.  To the extent a response is required, Ciox lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies them.  Ciox further denies the allegations in this paragraph to the extent that they are inconsistent with the text of the Wisconsin Statutes or interpreting case law.

12.    The allegations in this paragraph contain no factual allegations that require a response.  To the extent a response is required, Ciox lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies them.  Ciox further denies the allegations in this paragraph to the extent that they are inconsistent with the text of the Wisconsin Statutes or interpreting case law. By way of further response, Ciox states that Plaintiff's comparison of the release of information services ("ROI Services") Ciox provides in response to requests for certain protected health information ("PHI") to a simple copying service provided by third parties like Staples is a gross oversimplification of the ROI Services and the procedures and safeguards put in place to ensure that Ciox produces the PHI in accordance with the request and patient authorization.

13.    The allegations in this paragraph state legal conclusions and therefore require no response.  If a response is required, Ciox denies the allegations in this paragraph to the extent that they are inconsistent with the text of the Wisconsin Statutes or interpreting case law.

14.    The allegations in this paragraph state legal conclusions and therefore require no response.  If a response is required, Ciox denies the allegations in this

3

paragraph to the extent that they are inconsistent with the text of the Wisconsin Statutes or interpreting case law.

15.     The allegations in this paragraph state legal conclusions and therefore require no response.  If a response is required, Ciox denies the allegations in this paragraph to the extent that they are inconsistent with the text of the Wisconsin Statutes or interpreting case law.

16.     The allegations in this paragraph state legal conclusions and therefore require no response.  If a response is required, Ciox denies the allegations in this paragraph to the extent that they are inconsistent with the text of the Wisconsin Statutes or interpreting case law.

17.     The allegations in this paragraph state legal conclusions and therefore require no response.  If a response is required, Ciox denies the allegations in this paragraph to the extent that they are inconsistent with the text of the Wisconsin Statutes or interpreting case law.

18.     The allegations in this paragraph contain no factual allegations that require a response.

19.     Ciox denies that it charged Plaintiff any fees in connection with the requests for records Welcenbach Law Offices ("Welcenbach") submitted to CSM that are the subject of this lawsuit.

20.     The allegations in this paragraph require no response.  To the extent a response is required, Ciox denies the allegations in this paragraph.

21.     The allegations in this paragraph require no response.  To the extent a response is required, Ciox denies the allegations in this paragraph.

22.     The allegations in this paragraph require no response.  To the extent a response is required, Ciox denies the allegations in this paragraph.

23.     The allegations in this paragraph require no response.  To the extent a response is required, Ciox denies the allegations in this paragraph.

4

### III.  JURISDICTION & VENUE

24.    Ciox admits it conducts business in Milwaukee County and is registered to do business in Wisconsin.    CIOX denies that this Court has subject matter jurisdiction over this action.  Ciox further denies the allegations in this paragraph not specifically admitted.

25.    Ciox admits it conducts business in Milwaukee County.  CIOX denies that venue is appropriate in this County.  Ciox further denies the allegations in this paragraph not specifically admitted.

### IV.  FACTS

26.    Ciox lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies them.

27.    Ciox lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies them.

28.    Ciox admits that Plaintiff authorized Welcenbach to obtain his medical information.

29.    Ciox admits that Welcenbach requested certain of Plaintiff's certified medical records and billings from CSM.

### A.  Certified Medical Bill Request - CSM

30.    Ciox admits that Welcenbach requested Plaintiff's certified medical bills from CSM.  Ciox further admits that Mr. Rave authorized Welcenbach to obtain the requested records.

31.    Ciox admits that IOD fulfilled the request for Plaintiff's certified medical bills for CSM, and that IOD charged $35.84 for the fulfillment of the request as reflected in Invoice No. 26252002.

32.    Ciox admits that Welcenbach paid the $35.84 reflected in Invoice No. 26252002 to IOD.  Ciox lacks knowledge or information sufficient to form a belief

5

as to the truth of the allegation that Welcenbach paid the $35.84 on behalf of Mr. Rave, and on that basis, denies it.

33.      Ciox denies that IOD charged Plaintiff any fees for the fulfillment of the request made by Welcenbach to obtain Plaintiff's certified medical bills.   The allegation that IOD charged fees contrary to Wis. Stat. § 146.83 states a legal conclusion to which no response is required, and therefore denies the allegations in this paragraph.

34.      Ciox denies that IOD charged the fees referenced in the Complaint in a manner that was negligent or knowing and willful.

**B. Certified Medical Records Request – CSM**

35.      Ciox admits that Welcenbach requested certain of Plaintiff's certified medical records from CSM.  Ciox further admits that Plaintiff authorized Welcenbach to obtain the requested records.

36.      Ciox admits that IOD fulfilled the request for Plaintiff's certified medical records for CSM, and that IOD charged $75.28 for the fulfillment of the request as reflected in Invoice No. 26247649.

37.      Ciox admits that Welcenbach paid the $75.28 reflected in Invoice No. 26247649 to IOD.  Ciox denies any allegation in this paragraph not specifically admitted.

38.      Ciox denies that IOD charged Plaintiff any fees for the fulfillment of the request made by Welcenbach to obtain Plaintiff's certified medical records.   The allegation that IOD charged fees contrary to Wis. Stat. § 146.83 states a legal conclusion to which no response is required, and therefore denies the allegations in this paragraph.

39.      The allegations in this paragraph state legal conclusions and therefore require no response.  If a response is required, Ciox denies the allegations in this

6

paragraph to the extent that they are inconsistent with the text of the Wisconsin Statutes or interpreting case law.

## VIOLATION OF WIS. STAT. § 146.83
## ON BEHALF OF PLAINTIFF AND CLASS MEMBERS

40.   Ciox incorporates its responses to paragraphs 1-39 as if fully set forth herein.

41.   Ciox lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies them.

42.   Ciox denies the allegations in this paragraph.

43.   The allegations in this paragraph require no response.

44.   The allegations in this paragraph require no response.

45.   The allegations in this paragraph state legal conclusions and therefore require no response.  If a response is required, Ciox denies the allegations in this paragraph to the extent that they are inconsistent with the text of the Wisconsin Statutes or interpreting case law.

46.   The allegations in this paragraph state legal conclusions and therefore require no response.  If a response is required, Ciox denies the allegations in this paragraph to the extent that they are inconsistent with the text of the Wisconsin Statutes or interpreting case law.  Ciox further denies that IOD charged Plaintiff any fees reflected in Invoice Nos. 26252002 and 26247649.

47.   Ciox denies that IOD charged Plaintiff any fees reflected in Invoice No. 26247649.

48.   Ciox denies that IOD charged Plaintiff any fees reflected in Invoice No. 26252002.

49.   Ciox admits that IOD issued Invoice Nos. 26252002 and 26247649 to Welcenbach, but denies that IOD issued Invoice Nos. 26252002 and 26247649 to Plaintiff.   Ciox admits that Welcenbach paid the fees reflected on Invoice

7

Nos. 26252002 and 26247649.  Ciox further denies any allegation in this paragraph not specifically admitted.

50.    The allegations in this paragraph state legal conclusions and therefore require no response.  If a response is required, Ciox denies the allegations in this paragraph to the extent that they are inconsistent with the text of the Wisconsin Statutes or interpreting case law.

51.    The allegations in this paragraph state legal conclusions and therefore require no response.  If a response is required, Ciox denies the allegations in this paragraph to the extent that they are inconsistent with the text of the Wisconsin Statutes or interpreting case law.  Ciox further denies that IOD charged Plaintiff any fees reflected in Invoice Nos. 26252002 and 26247649.

52.    The allegations in this paragraph state legal conclusions and therefore require no response.  If a response is required, Ciox denies the allegations in this paragraph to the extent that they are inconsistent with the text of the Wisconsin Statutes or interpreting case law.  By way of further response, Ciox states that at the time IOD charged the certification and retrieval fees reflected in Invoice Nos. 26252002 and 26247649, IOD interpreted the applicable law, in good faith, to permit such fees due to the fact that Welcenbach made the request for Plaintiff's PHI (as opposed to Plaintiff directly requesting his PHI).

53.    The allegations in this paragraph state legal conclusions and therefore require no response.  If a response is required, Ciox denies the allegations in this paragraph to the extent that they are inconsistent with the text of the Wisconsin Statutes or interpreting case law.  By way of further response, Ciox states that at the time IOD charged the certification and retrieval fees reflected in Invoice Nos. 26252002 and 26247649, IOD interpreted the applicable law, in good faith, to permit such fees due to the fact that Welcenbach made the request for Plaintiff's PHI (as opposed to Plaintiff directly requesting his PHI).

8

54.     The allegations in this paragraph state legal conclusions and therefore require no response.  If a response is required, Ciox denies the allegations in this paragraph to the extent that they are inconsistent with the text of the Wisconsin Statutes or interpreting case law.  Ciox further denies that IOD charged Plaintiff any fees reflected in Invoice Nos. 26252002 and 26247649.

55.     Ciox denies the allegations in this paragraph.

56.     The allegations in this paragraph state legal conclusions and therefore require no response.  If a response is required, Ciox denies the allegations in this paragraph to the extent that they are inconsistent with the text of the Wisconsin Statutes or interpreting case law.

57.     The allegations in this paragraph state legal conclusions and therefore require no response.  If a response is required, Ciox denies the allegations in this paragraph to the extent that they are inconsistent with the text of the Wisconsin Statutes or interpreting case law.

58.     The allegations in this paragraph state legal conclusions and therefore require no response.  If a response is required, Ciox denies the allegations in this paragraph.

59.     Ciox denies the allegations in this paragraph.

60.     The allegations in this paragraph state legal conclusions and therefore require no response.  If a response is required, Ciox denies the allegations in this paragraph to the extent that they are inconsistent with the text of the Wisconsin Statutes or interpreting case law.

61.     Ciox denies the allegations in this paragraph.  Ciox further denies that IOD charged Plaintiff any fees reflected in Invoice Nos. 26252002 and 26247649.

62.     The allegations in this paragraph state legal conclusions and therefore require no response.  If a response is required, Ciox denies the allegations in this paragraph to the extent that they are inconsistent with the text of the Wisconsin

9

Statutes or interpreting case law.  Ciox further denies that IOD charged Plaintiff any fees reflected in Invoice Nos. 26252002 and 26247649.

## UNJUST ENRICHMENT - DISGORGEMENT

63.     Ciox incorporates its responses to paragraphs 1 – 62 as if fully set forth herein.

64.     Ciox denies the allegations in this paragraph.

65.     Ciox denies the allegations in this paragraph and specifically denies that it received any benefit from Plaintiff.

66.     Ciox denies the allegations in this paragraph.

## DEFENSES AND AFFIRMATIVE DEFENSES

1.     Plaintiff's Complaint fails to state a claim upon which relief can be granted.

2.     Plaintiff's claims are barred, in whole or in part, under the doctrine of intervening and superseding cause.

3.     Plaintiff's claims are barred, in whole or in part, due to contributory/comparative negligence.

4.     Plaintiff's claims are barred, in whole or in part, due to the intervening or superseding actions of his attorneys in passing on to his the allegedly improper fees without disclosure of the same to them.

5.     Plaintiff's claims are barred in whole or in part by the voluntary payment doctrine and the doctrine of accord and satisfaction.

6.     Plaintiff's claims are barred in whole or in part because neither IOD nor Ciox charged Plaintiff any fees in connection with the requests for records Welcenbach submitted to CSM that are the subject of this lawsuit.

7.     Plaintiff's claims are barred, in whole or in part, because they are duplicative of claims asserted on behalf of the purported putative class in

*Dilger et al. v. IOD Incorporated et al.*, United States District Court of the Eastern District of Wisconsin, Case No. 2:17-cv-01753.

8.      Plaintiff's claims are barred, in whole or in part, because they fail the statutory prerequisite(s) for recovery.

9.      Plaintiff's claims are barred, in whole or in part, due to the failure of conditions precedent to recovery.

10.     Plaintiff's claims are barred, in whole or in part, because Ciox acted in good faith.

11.     Plaintiff's claims are barred, in whole or in part, because Ciox is not a "health care provider" as defined in Wis. Stat. § 146.81(1).

12.     Plaintiff's claims are barred, in whole or in part, because Ciox and IOD satisfied the industry standard of care at all times relevant to this action.

13.     Plaintiff's claims are barred, in whole or in part, because they violate the Constitution of the United States and/or the Constitution of the State of Wisconsin.

14.     Plaintiff's claims are barred, in whole or in part, due to the running of applicable statutes of limitations.

15.     Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

16.     Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

17.     Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

18.     Plaintiff's claims are barred, in whole or in part, because Plaintiff lacks standing.

19.     Plaintiff's claims are barred, in whole or in part, by the doctrine of mutual mistake.

20.     Plaintiff's claims are barred, in whole or in part, because he failed to mitigate his damages.

21.     Many of Plaintiff's claims for members of the putative class are barred because the putative class members incurred no damages.

22.     Ciox reserves the right to assert any additional defenses or affirmative defenses as its this case proceeds through discovery and new information becomes available.

**WHEREFORE**, Ciox Health, LLC demands judgment providing the following relief:

A.  Dismissing Plaintiff's Complaint with prejudice;

B.  Awarding Ciox its costs and attorney fees, to the extent permitted by law; and

C.  Awarding such other relief as justice so requires.

Dated:  February 20, 2018.

> GASS WEBER MULLINS LLC
> Attorneys for Defendant
> Ciox Health, LLC
>
> *Electronically Signed by John Franke*
> John Franke, SBN 1017283
> franke@gwmlaw.com
> Daniel A. Manna, SBN 1071827
> manna@gwmlaw.com
> 241 North Broadway, Suite 300
> Milwaukee, Wisconsin 53202
> (414) 223-3300 – phone
> (414) 224-6116 – fax

FILED
02-20-2018
John Barrett
Clerk of Circuit Court
2018CV000607

STATE OF WISCONSN    CIRCUIT COURT    MILWAUKEE COUNTY

---

TIMOTHY RAVE, individually and on
behalf of a class of others similarly
situated,

          Plaintiff,               Case No. 18-CV-0607

vs.                          Case Code:  30103
                               Hon. Ellen R. Brostrom
CIOX HEALTH, LLC and
COLUMBIA ST. MARY'S
HOSPITAL MILWAUKEE, INC.,

          Defendants.

---

## NOTICE OF APPEARANCE

---

     PLEASE TAKE NOTICE that John Franke and Daniel A. Manna of Gass Weber Mullins LLC appear for Defendant Ciox Health, LLC in this action.  A copy of all papers in this action should be served upon the undersigned at the address stated below.

     Dated this 20th day of February, 2018.

                       GASS WEBER MULLINS LLC
                       Attorneys for Defendant
                       Ciox Health, LLC

                       *Electronically Signed by Daniel A. Manna*
                       John Franke, SBN 1017283
                       franke@gwmlaw.com
                       Daniel A. Manna, SBN 1071827
                       manna@gwmlaw.com
                       241 N. Broadway, Suite 300
                       Milwaukee, Wisconsin 53202
                       (414) 223-3300 – phone
                       (414) 224-6116 – fax

FILED
02-20-2018
John Barrett
Clerk of Circuit Court
2018CV000607

STATE OF WISCONSN    CIRCUIT COURT    MILWAUKEE COUNTY

---

TIMOTHY RAVE, individually and on
behalf of a class of others similarly
situated,

                Plaintiff,                  Case No. 18-CV-0607

vs.                                    Case Code:  30103
                                    Hon. Ellen R. Brostrom

CIOX HEALTH, LLC and
COLUMBIA ST. MARY'S
HOSPITAL MILWAUKEE, INC.,

                Defendants.

---

## NOTICE OF APPEARANCE

---

        PLEASE TAKE NOTICE that John Franke and Daniel A. Manna of Gass Weber Mullins LLC appear for Defendant Ciox Health, LLC in this action.  A copy of all papers in this action should be served upon the undersigned at the address stated below.

        Dated this 20th day of February, 2018.

                          GASS WEBER MULLINS LLC
                          Attorneys for Defendant
                          Ciox Health, LLC

                          *Electronically Signed by John Franke*
                          John Franke, SBN 1017283
                          franke@gwmlaw.com
                          Daniel A. Manna, SBN 1071827
                          manna@gwmlaw.com
                          241 N. Broadway, Suite 300
                          Milwaukee, Wisconsin 53202
                          (414) 223-3300 – phone
                          (414) 224-6116 – fax

Timothy Rave vs. CIOX Health, LLC et al

Case No.: 2018CV000607

SCOTT C BORISON
5235 WESTVIEW DR.
FREDERICK MD  21703

For 2018CV000607, the electronic notice preference for John Franke, attorney for CIOX Health, LLC, has changed.

John Franke has registered as an electronic notice party and has agreed to file any documents and receive all communications from the court for this case electronically. You will no longer need to provide traditional paper documents to this party. You still need to provide traditional paper documents to the court and any other parties who are not electronically filing.

If you have questions regarding this notice, please contact our office at 414-278-4120.

Electronically signed by John Barrett
Clerk of Circuit Court

February 21, 2018
Date

Timothy Rave vs. CIOX Health, LLC et al

**Electronic Notice
Status Change**

Case No.: 2018CV000607

COLUMBIA ST. MARY'S HOSPITAL MILWAUKEE, INC.
C/O CORPORATION SERVICE CO.
8040 EXCELSIOR DR., STE. 400
MADISON WI  53717

For 2018CV000607, the electronic notice preference for John Franke, attorney for CIOX Health, LLC, has changed.

John Franke has registered as an electronic notice party and has agreed to file any documents and receive all communications from the court for this case electronically. You will no longer need to provide traditional paper documents to this party. You still need to provide traditional paper documents to the court and any other parties who are not electronically filing.

If you have questions regarding this notice, please contact our office at 414-278-4120.

Electronically signed by John Barrett
Clerk of Circuit Court

February 21, 2018
Date

Timothy Rave vs. CIOX Health, LLC et al

**Electronic Notice
Status Change**

Case No.: 2018CV000607

JOHN CRAIG JONES
JONES & HILL, LLC
131 HIGHWAY 165 SOUTH
OAKDALE LA  71463

For 2018CV000607, the electronic notice preference for John Franke, attorney for CIOX Health, LLC, has changed.

John Franke has registered as an electronic notice party and has agreed to file any documents and receive all communications from the court for this case electronically. You will no longer need to provide traditional paper documents to this party. You still need to provide traditional paper documents to the court and any other parties who are not electronically filing.

If you have questions regarding this notice, please contact our office at 414-278-4120.

Electronically signed by John Barrett

Clerk of Circuit Court

February 21, 2018

Date

GF-208(CCAP), 03/2010 Electronic Notice Status Change
Case 2:18-cv-00305-LA   Filed 02/28/18   Page 80 of 86   Document 1-4
This form shall not be modified.  It may be supplemented with additional material.

Timothy Rave vs. CIOX Health, LLC et al

**Electronic Notice
Status Change**

Case No.: 2018CV000607

SCOTT C BORISON
5235 WESTVIEW DR.
FREDERICK MD 21703

For 2018CV000607, the electronic notice preference for Daniel A. Manna, attorney for CIOX Health, LLC, has changed.

Daniel A. Manna has registered as an electronic notice party and has agreed to file any documents and receive all communications from the court for this case electronically. You will no longer need to provide traditional paper documents to this party. You still need to provide traditional paper documents to the court and any other parties who are not electronically filing.

If you have questions regarding this notice, please contact our office at 414-278-4120.

Electronically signed by John Barrett

Clerk of Circuit Court

February 21, 2018

Date

GF-208(CCAP), 03/2010 Electronic Notice Status Change     Case 2:18-cv-00305-LA   Filed 02/28/18   Page 81 of 86   Document 1-4

This form shall not be modified.  It may be supplemented with additional material.

Timothy Rave vs. CIOX Health, LLC et al

**Electronic Notice
Status Change**

Case No.: 2018CV000607

COLUMBIA ST. MARY'S HOSPITAL MILWAUKEE, INC.
C/O CORPORATION SERVICE CO.
8040 EXCELSIOR DR., STE. 400
MADISON WI  53717

For 2018CV000607, the electronic notice preference for Daniel A. Manna, attorney for
CIOX Health, LLC, has changed.

Daniel A. Manna has registered as an electronic notice party and has agreed to file any
documents and receive all communications from the court for this case electronically.
You will no longer need to provide traditional paper documents to this party. You still
need to provide traditional paper documents to the court and any other parties who are
not electronically filing.

If you have questions regarding this notice, please contact our office at 414-278-4120.

Electronically signed by John Barrett
Clerk of Circuit Court

February 21, 2018
Date

This form shall not be modified.  It may be supplemented with additional material.

Timothy Rave vs. CIOX Health, LLC et al

**Electronic Notice
Status Change**

Case No.: 2018CV000607

JOHN CRAIG JONES
JONES & HILL, LLC
131 HIGHWAY 165 SOUTH
OAKDALE LA  71463

For 2018CV000607, the electronic notice preference for Daniel A. Manna, attorney for CIOX Health, LLC, has changed.

Daniel A. Manna has registered as an electronic notice party and has agreed to file any documents and receive all communications from the court for this case electronically. You will no longer need to provide traditional paper documents to this party. You still need to provide traditional paper documents to the court and any other parties who are not electronically filing.

If you have questions regarding this notice, please contact our office at 414-278-4120.

Electronically signed by John Barrett
Clerk of Circuit Court

February 21, 2018
Date

This form shall not be modified.  It may be supplemented with additional material.

Timothy Rave vs. CIOX Health, LLC et al

**Electronic Notice
Status Change**

Case No.: 2018CV000607

COLUMBIA ST. MARY'S HOSPITAL MILWAUKEE, INC.
C/O CORPORATION SERVICE CO.
8040 EXCELSIOR DR., STE. 400
MADISON WI  53717

For 2018CV000607, the electronic notice preference for Scott C Borison, attorney for Timothy Rave, has changed.

Scott C Borison has registered as an electronic notice party and has agreed to file any documents and receive all communications from the court for this case electronically. You will no longer need to provide traditional paper documents to this party. You still need to provide traditional paper documents to the court and any other parties who are not electronically filing.

If you have questions regarding this notice, please contact our office at 414-278-4120.

Electronically signed by John Barrett
Clerk of Circuit Court

February 21, 2018
Date

This form shall not be modified.  It may be supplemented with additional material.

Timothy Rave vs. CIOX Health, LLC et al

**Electronic Notice
Status Change**

Case No.: 2018CV000607

JOHN CRAIG JONES
JONES & HILL, LLC
131 HIGHWAY 165 SOUTH
OAKDALE LA  71463

For 2018CV000607, the electronic notice preference for Scott C Borison, attorney for Timothy Rave, has changed.

Scott C Borison has registered as an electronic notice party and has agreed to file any documents and receive all communications from the court for this case electronically. You will no longer need to provide traditional paper documents to this party. You still need to provide traditional paper documents to the court and any other parties who are not electronically filing.

If you have questions regarding this notice, please contact our office at 414-278-4120.

Electronically signed by John Barrett

Clerk of Circuit Court

February 21, 2018

Date

This form shall not be modified.  It may be supplemented with additional material.

Timothy Rave vs. CIOX Health, LLC et al

**Notice of Hearing**

Case No: 2018CV000607

FILED
02-21-2018
John Barrett
Clerk of Circuit Court

COURT ORIGINAL

This case is scheduled for: **Scheduling conference**

| Date<br>03-14-2018 | Time<br>09:30 am | Location<br>Milwaukee County Courthouse, RM 413 |
|---|---|---|
| Court Official<br>Ellen R Brostrom-06 | | 901 N. Ninth Street<br>Milwaukee WI 53233 |
| Re<br>Money Judgment | | |

This matter will not be adjourned by the court except upon formal motion for good cause or with the specific approval of the court upon stipulation by all parties.

PLEASE FILE A SCHEDULING DATA SHEET DIRECTLY WITH THE COURT ONE WEEK PRIOR TO SCHEDULING CONFERENCE.

PLEASE NOTE: THIS DATE IS SET BY THE COURT.  Should any party be unable to appear on the above date, they shall arrange a conference call with the other party and the court to set a mutually agreeable date.  Questions 414-278-4498.

**If you require reasonable accommodations due to a disability in order to participate in the court process, please call 414-985-5757 at least 10 working days prior to the scheduled court date. Please note that the court does not provide transportation.**

Milwaukee County Circuit Court
Date: February 21, 2018

| Distribution | Address | Service Type |
|---|---|---|
| Court Original | | |
| Scott C Borison | 5235 Westview Dr., Frederick, MD 21703 | Mail Notice |
| John Craig Jones | 131 Highway 165 South, Oakdale, LA 71463 | Mail Notice |
| Robert J Welcenbach | robert@welcenbachlaw.com | Electronic Notice |
| John Franke | franke@gwmlaw.com | Electronic Notice |
| Daniel A. Manna | manna@gwmlaw.com | Electronic Notice |
| Columbia St. Mary's Hospital Milwaukee, Inc. | 8040 Excelsior Dr., Ste. 400, c/o Corporation Service Co., Madison, WI 53717 | Mail Notice |

GF-101(CCAP), 10/2009 Notice of Hearing

This form shall not be modified. It may be supplemented with additional material.

JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

Place an "X" in the appropriate box (required):   ☐ Green Bay Division   ☒ Milwaukee Division

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| TIMOTHY RAVE | CIOX HEALTH, LLC and COLUMBIA ST. MARY'S HOSPITAL MILWAUKEE, INC. |

| **(b)**  County of Residence of First Listed Plaintiff   Milwaukee Co., WI | County of Residence of First Listed Defendant   Fulton Co., GA |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| **(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*<br>Robert J. Welcenbach, Welcenbach Law Offices, S.C., 933 N Mayfair Rd, Suite 311, Milwaukee, WI 53226 | Attorneys *(If Known)*<br>(For Ciox Health, LLC) John Franke and Daniel A. Manna, Gass Weber Mullins LLC, 241 N Broadway, Suite 300, Milwaukee, WI 53202 |
|---|---|

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
   Plaintiff

☐ 2  U.S. Government
   Defendant

☐ 3  Federal Question
   *(U.S. Government Not a Party)*

☒ 4  Diversity
   *(Indicate Citizenship of Parties in Item III)*

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                      *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☒ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other<br><br>**LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **IMMIGRATION** | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | ☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | ☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |

## V.  ORIGIN *(Place an "X" in One Box Only)*

☐ 1  Original Proceeding

☒ 2  Removed from State Court

☐ 3  Remanded from Appellate Court

☐ 4  Reinstated or Reopened

☐ 5  Transferred from Another District *(specify)*

☐ 6  Multidistrict Litigation - Transfer

☐ 8  Multidistrict Litigation - Direct File

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332

Brief description of cause:
Plaintiff alleges that the defendants improperly charged statutory fees for provision of health care records

| VII.  REQUESTED IN COMPLAINT: | ☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. | DEMAND $<br>**No explicit demand** | CHECK YES only if demanded in complaint:<br>JURY DEMAND:   ☒ Yes   ☐ No |
|---|---|---|---|

| VIII.  RELATED CASE(S) IF ANY | *(See instructions):* | JUDGE | DOCKET NUMBER |
|---|---|---|---|

| DATE   **February 28, 2018** | SIGNATURE OF ATTORNEY OF RECORD<br>s/Daniel A. Manna |
|---|---|

**FOR OFFICE USE ONLY**

RECEIPT #              AMOUNT              APPLYING IFP              JUDGE              MAG. JUDGE