# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

---

**MARY HILLS**

Individually and on behalf of a class of others similarly
situated,

Case No.: 3:19-cv-00907

      Plaintiff,

v.

**ESSENTIA HEALTH**

      Defendant.

---

## PLAINTIFF'S OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS (ECF 22)

---

**TABLE OF CONTENTS**

| DESCRIPTION | PAGE |
|---|---|
| INTRODUCTION | **1** |
| I.     ESSENTA IS A PERSON WHO CAN BE HELD ACCOUNTABLE FOR CHARGING MORE THAN ALLOWED BY WIS. STAT. § 146.83 | **2** |
| II.     PLAINTIFF HAS ADEQUATELY ALLEGED THAT ESSENTIA IS A HEALTHCARE PROVIDER | **6** |
| III.     THE LAW PROHIBITS ESSENTIA'S CHART RETRIEVAL FEE | **9** |
| A.   The 1999 Changes to Wis. Stat. § 146.84 Make It A Strict Liability Law. | **9** |
| B.   The Legislature Charges Wis. Stat. § 146.83 in 2009. | **10** |
| C.   The Court of Appeals Decision Was Non-Final and Non-Binding And Could Not Be Relied Upon By Defendants. | **13** |
| D.   The Moya Court Refused To Sunburst Or Apply Its Decision Prospectively. | **14** |
| IV.     PLAINTIFF'S CLAIMS ARE TIMELY | **16** |
| V.     THE MOYA COURT REJECTED VOLUNTARY PAYMENT AND WAIVER DEFENSES AND COMMON LAW CLAIMS ARE NOT BARRED | **21** |
| VI.     THE STATUTE DOES NOT PREEMPT COMMON LAW CLAIMS | **24** |
| VII.     PLAINTIFF HAS STATED A CLAIM FOR UNJUST ENRICHMENT | **25** |
| VIII.   PLAINTIFF HAS STATED A CLAIM FOR CONVERSION | **27** |
| CONCLUSION | **27** |
| CERTIFICATE OF SERVICE | **28** |

**TABLE OF AUTHORITIES**

| AUTHORITY | PAGE |
|---|---|
| <u>CASELAW</u> | --------- |
| *Erdman v. Jovoco, Inc.,*<br>    181 Wis.2d 736 (Wis.,1994) | 17, 18, 19 |
| *Ex Rel. Kalal v. Circuit Court,*<br>    271 Wis.2d 633 (2004) | 3 |
| *Hannigan v. Sundby Pharmacy, Inc.,*<br>    593 N.W.2d 52 (Wis.App.,1999) | 9, 10 |
| *Heritage Farms, Inc. v. Markel Ins. Co.,*<br>    339 Wis.2d 125 (Wis.,2012) | 14 |
| *In re Commitment of Thiel,*<br>    625 N.W.2d 321 (Wis.App.,2001) | 15 |
| *Jensen v. Miller,*<br>    162 Wis. 546 (Wis.,1916) | 26 |
| *Kimble v. Land Concepts, Inc.,*<br>    353 Wis.2d 377 (Wis.,2014) | 21 |
| *MBS-Certified Public Accountants, LLC v. Wisconsin Bell Inc.,*<br>    346 Wis.2d 173 (Wis.App.,2013) | 24, 26 |
| *Moya v. Aurora Healthcare, Inc.,*<br>    375 Wis.2d 38 (Wis., 2017) | 5, 12, 21, 22 |
| *Open Pantry Food Marts of Southeastern Wisconsin, Inc. v. Falcone,*<br>    92 Wis.2d 807 (Wis. App., 1979) | 20 |
| *Putnam v. Time Warner Cable of Se. Wis., Ltd., P'ship,*<br>    255 Wis.2d 447 (Wis.,2002) | 27 |
| *South Milwaukee Savings Bank v. Barczak,*<br>    229 Wis.2d 521 (Wis.App.,1999) | 19, 20 |
| *State Ex Rel. Kalal v. Circuit Court,*<br>    271 Wis.2d 633 (Wis.,2004) | 3 |

| | |
|---|---|
| *Wisconsin Patients Compensation Fund v. St. Mary's Hosp. of Milwaukee*, 209 Wis.2d 17 (Wis.App.,1997) | 23 |
| STATUTE | -------- |
| Wis. Stat. §50.50 | 7 |
| Wis. Stat. 100.18 | 23, 24, 25 |
| Wis. Stat. §146.81 | 4,6, 7 |
| Wis. Stat.  §146.83 | passim |
| Wis. Stat. §146.84 | passim<br>13-14 |
| Wis. Stat. §809.26 | 14, 17, 22 |
| Wis. Stat. §893.93 | 16, 17 |
| Wis. Stat. §895.043 | 3,5 |
| Wis. Stat. §990.01 | 5 |
| RULES OF CIVIL PROCEDURE | ------- |
| Fed. R. Civ.P  8 | 27 |
| Fed. R. Civ.P  9 | 10, |
| SECONDARY SOURCES | -------- |
| 3 Am. Jur. 2d Agency § 282 | 26 |
| 66 Am. Jur. 2d Restitution and Implied Contracts § 114 | 23 |

## INTRODUCTION

Essentia does not contest that it charged fees that Plaintiff contends are illegal in Wisconsin.  See e.g., Essentia's Notice of Removal (ECF 1)(¶¶ 11, 12, 16). [1] Essentia also concedes at page 5 of its Brief that "Essentia fulfilled the request from Plaintiff's attorneys and invoiced them for $22.08.  (¶¶ 51, 53 & Ex. C.) The $22.08 invoice, which Plaintiff has attached to her Amended Complaint, included a $15.95 "chart retrieval" charge. (*Id*. ¶ 53 & Ex. C.)"  *See* Essentia Brief at p. 5 (ECF 23).  Despite these basic facts, Essentia claims it cannot be held responsible for the overcharges.

Essentia begins its arguments with corporate gymnastics asserting that it cannot be held liable because it claims it does not own or operate the "Essentia Health - Spooner Clinic." Essentia says:

> Plaintiff's allegations that Essentia "owns and operates" Essentia Health-Spooner Clinic also is falsified by public records. Essentia Health-Spooner Clinic is a tradename that, at the time of the 2014 records request from Plaintiff's attorneys, belonged to a non-party, The Duluth Clinic, Ltd.

Essentia Brief at p. 11.

Essentia's effort to distance itself is contradicted by its Notice of Removal that stated "Essentia's Wisconsin facilities have remained relatively constant and Essentia has not substantially increased access to patients from 2013 to the present." ECF 1  at ¶ 19.  And, public records show that Essentia described the Duluth Clinic Ltd. as a related entity. Essentia's 2017 Form 990 lists Duluth Clinic LTD. on "Schedule R, Part II   - Identification of Related Tax-Exempt Organizations" *See* Exhibit

---

[1] This action was filed in state court and removed to this Court under the Class Action Fairness Act ("CAFA").

1

A, Essentia's Federal Form 990 at Page 81 of 85. The form also states Duluth Clinic's

address is 502 E. 2nd St., Duluth MN 55805, the same address listed for Essentia. *See*

Exhibit A, Page 1 of Form 990.

There is no question that Essentia has created a myriad of organizations that

Essentia operates through, but, at bottom, all roads lead back to Essentia. *Id*.

Notwithstanding Defendant's effort to distract by engaging in these corporate

gymnastics, it does not change that Essentia's specific role in this action is undisputed -

it is the party who sent the invoice and collected the fees that included the illegal charges

prohibited by Wis. Stat. §146.83. *See* Exhibit C to Amended Complaint. Essentia is a

"person" who can be held liable for violating §146.83 under Wis. Stat. §146.84.

## I.    ESSENTIA IS A PERSON WHO CAN BE HELD ACCOUNTABLE FOR CHARGING MORE THAN ALLOWED BY WIS. STAT. §146.83.

Wis. Stat. §146.84 provides for relief against "any person" who violates §146.83. If

Essentia charged more than allowed by Wis. Stat.  §146.83, then it can be held liable.

There are two provisions of §146.84 that provide for relief to be obtained

against **any person** who violates §146.83:

> (b) **Any person**, including the state or any political subdivision of the state, who violates s. 146.82 or 146.83 in a manner that is knowing and willful shall be liable to any person injured as a result of the violation for actual damages to that person, exemplary damages of not more than $25,000 and costs and reasonable actual attorney fees.

> (bm) **Any person**, including the state or any political subdivision of the state, who negligently violates s. 146.82 or 146.83 shall be liable to any person injured as a result of the violation for actual damages to that person, exemplary damages of not more than $1,000 and costs and reasonable actual attorney fees.

(emphasis added).

2

The above provisions do not include any mention of "healthcare provider" nor does it limit "any person" to healthcare providers.  If the meaning of a statute is plain, a Court will ordinarily stop the inquiry. *State Ex Rel. Kalal v. Circuit Court*, 271 Wis.2d 633, 662-3, 2004 WI 58, ¶ 44-45 (2004) ("Judicial deference to the policy choices enacted into law by the legislature requires that statutory interpretation focus primarily on the language of the statute. We assume that the legislature's intent is expressed in the statutory language.") There is no serious dispute when the legislature uses the phrase "any person" it extends the statutory provision to everyone, including all entities of any type. *See* Wis. Stat. §990.01(26). It is not a limitation but the broadest category available to the legislature.

There is no basis to substitute the term "healthcare provider" for the legislature's use of the term "any person" in §146.84. Indeed, the title to §146.84 is "Violations Related to Patient Healthcare Records". It is not labeled "Violations by Healthcare Providers Related to Patient Healthcare Records".

No doubt, the legislature understood that third parties may perform a healthcare provider's duties to provide healthcare records under the law.  An interpretation that third parties' actions are not subject to the limits would lead to absurd results.  Under that approach if the healthcare provider provides records directly to a patient, the fees it may charge are limited by §146.83. However, if that same healthcare provider unilaterally delegates the delivery of the same identical healthcare records through a third party, then the patient may be

3

charged for copies of the healthcare records beyond the limits imposed by §146.83.

Essentia's argument that it is not a "healthcare provider" ignores that under Wis. Stat. §146.84 it is a person who can held liable for responding to records request on behalf of healthcare providers. And the absurd result that arises from Essentia's view of the Wisconsin laws would allow any person hired by a healthcare provider to provide their patients copies of their healthcare records to charge a patient whatever it wants to charge.

But at this motion to dismiss stage, Essentia's insistence that it is not a healthcare provider presents factual issues that cannot be resolved. Plaintiff has alleged that the clinics operated by Essentia meet the definition of healthcare providers as an inpatient healthcare facility under Wis. Stat. §146.81(1)(m) or rural medical centers under Wis. Stat. §146.81(1)(p). [2] Essentia does not mention the allegations that it is an inpatient healthcare facility nor does it dispute that these clinics are rural medical centers but claims that it nevertheless is not healthcare provider.

And even if Essentia itself is not a healthcare provider, it certainly acted as the agent of one. The records requested arose from Plaintiffs treatment by physicians, physician assistants, nurses and other healthcare providers as defined

---

[2] Amended Complaint at ¶¶ 8-9.  (ECF 15)

under Wis. Stat. 146.81(1).[3]  Certainly, these records are subject to Wis. Stat. 146.81 – 146.84.  The fact that they were provided by another entity (Essentia) does not change that they are healthcare records of a physician, physician's assistant, nurse or other provider under Wis. Stat. 146.81.

Essentia is bound to provide the records on behalf of the healthcare provider at the mandated rate.  An agent has no greater rights than its principal. A principal cannot bestow rights upon an agent that the legislature has denied the principal. Clearly, the legislature prohibited healthcare providers from charging additional fees to patients. Wis. Stat. §146.83; ***Moya v. Aurora Healthcare, Inc.***, 2017 WI 45.

The legislature has specifically directed that when construing statutes that require action, the acts of an agent are the acts of a principal.  Specifically, Wis. Stat. §990.001(9) states:

> In construing Wisconsin laws the following rules shall be observed unless construction in accordance with a rule would produce a result inconsistent with the manifest intent of the legislature:
>    …
>
> (9) Acts by agents. If a statute requires an act to be done which may legally be done by an agent, such requirement includes all such acts when done by an authorized agent.

(emphasis added).

---

[3] The records request was for medical billing which show treatment by "Physician/APC."  *See* Ex. B and see *also* Exhibit C to Amended Complaint. (ECF 15-3)

5

The acts of an agent are governed by the same limitations as the acts of the principal under the statute.  This law prevents the result sought by Essentia that would allow it as an agent to do what its principal may not do.

## II.    PLAINTIFF HAS ADEQUATELY ALLEGED THAT ESSENTIA IS A HEALTHCARE PROVIDER.

As stated above, Essentia's liability under Wis. Stat.  §146.84 is not dependent on it being a healthcare provider but only that it is a "person" who violated Wis. Stat. §146.83.   There is no dispute that Essentia's retrieval fees violate Wis. Stat. §146.83.

Plaintiff's Amended Complaint alleges sufficient facts upon which Essentia itself falls within the definition of a healthcare provider.  The Amended Complaint at ¶ 8 alleges one of two bases for the finding that Essentia is a healthcare provider:

> ESSENTIA has acted as and acts as a "health care provider" as that term is contemplated by Wis. Stat. §146.81(1) et seq., notably (but not exclusively) under subsection (m) and (p) – by operating either "an inpatient health care facility" and/or a "rural medical center(s)".

Essentia's motion to dismiss does not contest that it is a healthcare provider under Wis. Stat. §146.81 (1)(m). Essentia only argues that it does not operate "rural medical centers". The Amended Complaint includes the following allegations to support the claim that Essentia meets the definition of a "rural medical center" under Wis. Stat. §146.81 (1)(p).

> 4. ESSENTIA is a network of health provider clinics and hospitals serving numerous locations throughout Wisconsin.

6

5. "[ESSENTIA] combines the strengths and talents of 14,500 employees, including more than 2,100 physicians and advanced practitioners, who serve our patients and communities through the mission of being called to make a healthy difference in people's lives". Id.

6. "[ESSENTIA] lives out its mission by having a patient-centered focus at 15 hospitals, 77 clinics, six long-term care facilities, three assisted living facilities, three independent living facilities, five ambulance services and one research institute". Id.

9.      That both the Essentia Health Spooner Clinic and Essentia Health Hayward Clinic are "rural medical centers" as defined in Wis. Stat. §146.81(p).

10.     Each of the clinics operated by ESSENTIA in Wisconsin are an arrangement of facilities, equipment, services and personnel capable of providing or assuring health care services, including appropriate referral, treatment and follow-up services.

11.     Each clinic is at a location in a county, city, town or village that has a population of less than 15,000 and that is in an area that is not an urbanized area, as defined by the federal bureau of the census.

12. The populations of Ashland, Hayward and Spooner are each less than 15,000 persons.

The definition of a "rural medical center" references Wis. Stat. 50.50(11) that provides a rural medical center is:

(a) Organized under a single governing and corporate structure.
(b) Capable of providing or assuring health care services, including appropriate referral, treatment and follow-up services, at one or more locations in a county, city, town or village that has a population of less than 15,000 and that is in an area that is not an urbanized area, as defined by the federal bureau of the census.
(c) A provider of at least 2 health care services under the arrangement or through a related corporate entity.

Essentia argues that Plaintiff has not addressed the first and third of these elements. *See* Defendant's Brief at p. 14.

Respectfully, the Defendant ignores the facts alleged in the Complaint address both of these elements. The first element requires a single governing

structure. The Plaintiff has alleged that Essentia is the single entity that operates all of the various clinics, hospitals and other healthcare facilities. ¶¶ 4-6.  And Essentia's description of itself on its website and its Form 990 filing confirms this role of Essentia.

The third element requires that the entity be a provider of at least 2 health care services under the arrangement or *through a related entity*. Plaintiff has alleged that Essentia operates two clinics as rural medical centers in Wisconsin. ¶ 9.  And, that each provides healthcare services. ¶ 10.  Essentia's describes itself as providing these services through its network.  Essentia's Form 990 identifies Duluth Clinic LTD as a related entity. All of the elements necessary to show that Essentia meets the definition of a rural medical center are present.  The same form also shows that in addition to the above clinics, Essentia's related entity, St. Mary's Medical Center operates as a hospital in Wisconsin. See Exhibit A, P. 80, last entry.

If the Court believes more detailed evidence must be pled, Plaintiff asks for leave to incorporate the Defendant's Form 990 into the complaint.[4] However,

---

[4]

    Essentia also states on p. 15 of its brief: If Essentia Health-Spooner Clinic held such a license, it would be a matter of public record.  There is a public record of a license for Essentia Health-Spooner Clinic as a rural health center. *See* Exhibit C available at
https://www.forwardhealth.wi.gov/WIPortal/Subsystem/Public/DQAProviderDetails.aspx?key=7035425&keyb=-1
    The license shows the owner as St. Mary's Hospital of Superior, which is listed by Essentia as a related entity that it shares costs with on its Form 990. See Exhibit A, Schedule R, Part V at p. 85.

given Essentia has knowledge of its own operations, statements and government filings, Plaintiff submits the Amended Complaint provides Essentia the notice required of pleadings under Rule 8.

## III.   THE LAW PROHIBITS ESSENTIA'S CHART RETRIEVAL FEE

### A. The 1999 Changes to Wis. Stat. §146.84 Make It A Strict Liability Law.

In *Hannigan v. Sundby Pharmacy, Inc.*, 593 N.W.2d 52, 61, 224 Wis.2d 910, 931 (Wis.App.,1999), the Court addressed an alleged violation of §146.83, the statute that provides the rules that apply here. The *Hannigan* court held "that "ignorance of the law" is not a defense to an action for damages under § 146.84(1)(b), stats." 593 N.W.2d at 53, 224 Wis.2d at 913.  (Ct. App. 1999). But the *Hannigan* Court found that Sundby may not be liable if it could show that its violation of the law was done by accident.

Defendant contends that the decision in *Hannigan v. Sundby Pharmacy, Inc.*, 593 N.W.2d 52, 61, 224 Wis.2d 910, 931 (Wis.App.,1999) does not apply to it because this is not an ignorance of the law case. Defendant's Brief at p. 19. Essentia claims that it applied Minnesota law instead of Wisconsin law. Essentia cites no cases or law to support that it had any right to apply Minnesota law to a request from Wisconsin for records from a Wisconsin patient treated at a Wisconsin healthcare facility by Wisconsin healthcare providers. Essentia chose

9

to respond to requests for copies of Wisconsin healthcare records, Wisconsin law applied to the transaction.

The Legislature amended the statute after *Hannigan* to provide relief for even an accidental violation. When *Hannigan* was decided, Wis. Stat. §146.84 did not provide liability for negligent violations of the law. It only addressed knowing and willful violations. The statutory penalties under Wis. Stat. §146.84 at that time included up to $1,000 in exemplary damages if the violation was knowing and willful.

After *Hannigan*, the legislature amended §146.84 to expand it and added liability for negligent violations. Negligent violations now warranted actual damages plus up to $1,000 in exemplary damages. The amended statute retained liability for knowing and willful violations but raised exemplary damages up to $25,000. The legislative changes to §146.84 make it impossible for anyone to avoid liability for actual or exemplary damages because such damages are now applied even if the unlawful conduct is only done negligently.

Under Rule 9(b) "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Plaintiff has alleged that Essentia acted negligently or intentionally. Plaintiff's allegations are sufficient under the federal Rules.  If the Court believes otherwise, Plaintiff requests leave to amend.

### B. The Legislature Changes Wis. Stat. § 146.83 in 2009.

The history of the changes and the industry's knowledge of the effect of the changes from its inception refute claims by Essentia and others that the law was

10

somehow unclear or misunderstood by the industry.  In 2009, when Wis.  Stats.

§146.83 was being amended, the healthcare industry was fully aware of the effect

that the changes would have on what fees they could charge. (*See* Ex. D-G.)  The

health care industry immediately sounded the alarm through its members'

lobbyists and various related industry groups, including the Wisconsin Hospital

Association (WHA) and the Wisconsin Health Information Management

Association (WHIMA).

WHA alerted their members and told them of the repercussions of this

change in the law:

> The definition of "patient representative" will be expanded to
> include attorneys, insurance companies, or anyone
> authorized by the patient to access their medical records,
> thus entitling the requester to receive copies at an even lower
> fee.

(Amended Complaint Ex. A)

Another email for instance, advised that if the law passed, no certification

or retrieval fees could be charged to attorneys – *they would get the records for*

*the same fees as the patient themselves*.  (Complaint Ex. A; Ex. D)

From: Borgerding, Eric
Sent: Thursday, June 25, 2009 6:13 AM
To: Borgerding, Eric; Roller, Rachel; Maroney, Lisa; 'Aschenhurst Karla'; McNally, Maureen; Swiderski, Julie; Heifetz,
Michael; Curran, Joan; 'Selberg'; Tyre, Scott; Westrick, Paul; Mettner, Michelle; Huggins, Melissa; Staff - Public Policy;
Boudreau, Jenny; Childress, Jason; Walby, Katie; Elias, Nate; Schooff, Susie; Nemoir, Brian
Subject: RE: Budget Update

We received word late yesterday that the conference committee is likely NOT to accept the changes to the copy fees
provision that were adopted in the Senate and instead go with the Assembly's version.   Assuming this is accurate, here's
what it would mean..

- Copy fees will be set into statute and there will be no indexing to inflation (the Senate included indexing)

- The definition of "patient representative" will be expanded to include attorneys, insurance companies, or anyone
authorized by the patient to access their medical records, thus entitling the requester to receive copies at an even lower
fee. (This provision was eliminated in Senate)

*Id.*

A June 8, 2009 memo from the Wisconsin Hospital Association indicated that if Motion 671 passed then no certification or retrieval fees could be charged to persons authorized in writing, only the patient rate.  (Ex. E)

A memo was also issued from Wisconsin Health Management Association (WHIMA) which was unequivocal.  It stated in no uncertain terms the effect of Motion 671:

> --*it removes right to charge for processing a request* for medical record copies by changing the language from "copies requested by the patient or the patient's personal representative", to "copies requested by the patient or person authorized by the patient".....'with an informed consent".
>
> --in the language of the motion, anyone getting copies will be authorized by the patient because they are ALL required to have an informed consent, *so no processing fee could ever be charged.*
>
> --*certified copy fees are deleted by the same language*.

(*Id*. Ex. F)

Last, if there were any doubt as to whether the statute now provides strict liability for overcharging, the legislature's decision to add a good faith defense to release of medical records in §146.83(a)(1) but not the provisions of §146.83(b) and (bm), which apply to overcharges, ends the issue. The Wisconsin Courts regularly apply "the doctrine of *expressio unius est exclusio alterius*, 'the express mention of one matter excludes other similar matters [that are] not mentioned.' *Moya v. Aurora Healthcare, Inc.*, 375 Wis.2d 38, 73, 2017 WI 45, ¶ 63 (Wis.,

2017).  The legislature chose to permit a good faith defense for wrongful release of records but not to any other violations of §146.83.

Defendant knew there was a non-final and non-binding decision from the Court of Appeals that was pending review in the Supreme Court.  Their decision to impose the charges in the face of this, was knowing.  At a minimum, they were negligent and assumed the risk by assessing these charges.

### C.  The Court of Appeals Decision Was Non-Final and Non-Binding And Could Not Be Relied Upon By Defendant.

Defendant suggests that their illegal charges were permissible because of the Court of Appeal's decision in *Moya*. However, they produce no evidence that they were actually aware of the decision or that they relied on it.  More importantly, the 2015 Court of Appeal's opinion could not have guided Essentia's acts since the decision was rendered after Essentia overcharged Plaintiff in 2014.  This argument is without merit.

Regardless, that decision was never binding (even on the *Moya* Circuit Court) since the Court of Appeals never transmitted the decision to the Circuit Court because a Petition for Review was filed. *See* Wis. Stat. §809.26 ("If a petition for review is filed pursuant to s. 809.26, the transmittal is stayed until the supreme court rules on the petition.")  Defendant also chose to ignore the fact that three circuit court judges found the opposite – that the plain language was clear that these fees were illegal.

The Supreme Court granted the petition to review *Moya* and vacated the Court of Appeal's opinion. The Supreme Court had the option to remit the case pursuant to §809.26 pending review and did not do so. The courts did not treat the decision by the Court of Appeals as final. The Court of Appeals noted that a petition for review was pending in its decision. No one could reasonably rely on it since it was subject to further review and was not precedent.  No attorney would ever advise a client to act on a decision that was stayed because a petition for review had been granted.

Defendant's motion should be denied.  There is nothing to support the claim they relied on the Court of Appeals decision nor could it since it came after the illegal charges. And as to charges made to class members after the decision, Essentia offers nothing to show they even knew about the decision or that it had any effect on its decision to overcharge their patients.  Additionally, if they did not believe they were bound by Wisconsin law as they claim, why would they even be monitoring the decision or relying on it?

### D. The Moya Court Refused To Sunburst Or Apply Its Decision Prospectively

In ***Moya v. Aurora Healthcare, Inc***., 2017 WI 45, the Wisconsin Supreme Court found Wis. Stat. §146.83 was plain and unambiguous. Under Wisconsin common law, when a court interprets a statute it is not making new law. But even if it was new law, it would be applied retroactively under the Blackstonian Rule. *Heritage Farms, Inc. v. Markel Ins. Co*., 339 Wis.2d 125, 152, 2012 WI 26, ¶ 44 (Wis.,2012)(This court, like all courts, generally adheres to the

doctrine that a new rule of law applies retroactively); *In re Commitment of Thiel*, 625 N.W.2d 321, 326, 241 Wis.2d 439, 449, 2001 WI App 52, ¶ 7 (Wis.App.,2001)("Wisconsin generally adheres to the "Blackstonian Doctrine," which provides that a decision that clarifies, overrules, creates or changes a rule of law is to be applied retroactively."). The Courts may deviate from the Blackstonian Rule "an appellate court may employ the technique of prospective application—"sunbursting"—to mitigate hardships that may arise with the retroactive application of a new rule of law." *Id*.

If there were any doubt whether its ruling was prospective only, as Essentia suggests, that is not an open issue. The defendants in *Moya* asked the Supreme Court to sunburst their decision. The *Moya* Defendants argued in their motion seeking sunbursting:

> ...while at the same time litigating at least two class action lawsuits seeking to compel a refund of those fees. **These economic burdens need not include repayment of certification and retrieval fees charged between the court of appeals' opinion and this Court's Opinion, however. <u>The Court can and should mitigate the effect of its Opinion with a simple order applying sunbursting for that inter-opinion period.</u>** (Emphasis added)
> ...
> **It would be inequitable and poor policy to require health care providers and agents like HealthPort to refund fees collected in reliance on the court of appeals' opinion**. It would also be poor policy to permit class action plaintiffs to recover statutory exemplary damages or punitive damages premised on the collection of certification and retrieval fees that was perfectly legal under then-existing law.
> . . .

15

> [Therefore] [n]either health care providers nor their agents
> should be required to pay refunds, statutory penalties, and
> attorneys' fees for following the law.

(Ex. H). The Supreme Court denied the motion to sunburst the decision. (Ex. I).

## IV.   PLAINTIFF'S CLAIMS ARE TIMELY

The Plaintiff was overcharged for fees in March 2014. The statute of limitations that was in effect at the time of her transaction was 6 years under Wis. Stat. §893.93 (1)(a).[5] The later change to the statute from 6 years to 3 years makes no difference.  Wis. Stat. §893.93 that was in effect in 2016 states as follows:

> **893.93   Miscellaneous actions. (1)** The following actions shall be commenced within 6 years after the cause of action accrues or be barred:
>
>     (a) An action upon a liability created by statute when a different limitation is not prescribed by law.
>
>     (b) An action for relief on the ground of fraud.  The cause of action in such case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud.
>
>     (c) An action upon a claim, whether arising on contract or otherwise, against a decedent or against a decedent's estate, unless probate of the estate in this state is commenced within 6 years after the decedent's death.
>
>     (d) An action under s. 968.31.
>
>     (e) An action under s. 895.444.
>
>     **(2)** The following actions shall be commenced within 2 years after the cause of action accrues or be barred:
>
>     (a) An action by a private party upon a statute penalty, or forfeiture when the action is given to the party prosecuting therefor and the state, except when the statute imposing it provides a different limitation.
>
>     (b) An action to recover a forfeiture or penalty imposed by any bylaw, ordinance or regulation of any town, county, city or village or of any corporation or limited liability company organized under the laws of this state, when no other limitation is prescribed by law.

*See* https://docs.legis.wisconsin.gov/2015/statutes/statutes/893/IX/93

---

5

https://docs.legis.wisconsin.gov/2015/statutes/statutes/893/IX/93

Faced with this, the Defendant seeks to convince the court that this action, which seeks individual compensation for the plaintiff and other patients, should be governed by the narrow provisions of Wis. Stat. §893.93(2)(a) which only applies to "actions on a statute penalty". They argue the claims are subject to a two year statute of limitation. But, the two year statute applies only to claims that are brought on a statute penalty for the benefit of the public. That is not the case here.

Defendant's argument is inconsistent with the Supreme Court's decision in *Erdman v. Jovoco, Inc.*, 181 Wis.2d 736, 760–62 (Wis.,1994). In *Erdman* the Wisconsin Supreme Court addressed an argument similar to the one raised by Defendant. Erdman sued his employer relying on Wis. Stat. §103.455 which "provided in part that "no employer shall make any deduction from the wages due or earned by any employee ... for defective or faulty workmanship, lost or stolen property or damage to property, unless the employee authorizes the employer in writing to make such deduction....". Erdman claimed that his employer had deducted amounts from his commissions in violation of this statute. The employer's position was that Erdman's claim was subject to the two-year limit:

> An action by a private party upon a statute penalty, or forfeiture when the action is given to the party prosecuting therefor and the state, except when the statute imposing it provides a different limitation. [6]

_____

[6]  This statutory provision is found at Wis. Stat. §893.93(2)(a).

The employer contended since the statute Erdman relied on imposed a penalty it was covered by the two-year provision. The Wisconsin Supreme Court rejected the employer's analysis and held that what controls is the purpose of the statute. To illustrate the point, the *Erdman* court discussed anti-trust laws, which is the only area of law that the two-year limit had been applied to in the past, and distinguished that type of public benefit law from the individual benefit law Erdman relied on for his claim:

> The defendants attempt to draw a parallel between sec. 103.455 and the state anti-trust law by characterizing sec. 103.455 as both remedial and punitive in nature. They argue that the double recovery provision of sec. 103.455 is punitive and that the section also imposes a statute penalty.
> We are not persuaded by the defendants' analogy between sec. 103.455 and the state anti-trust law, because the defendants do not acknowledge the different purposes of the two statutes. Anti-trust statutes are designed to benefit the public. As the Supreme Court has stated:
>
> > Every violation of the antitrust laws is a blow to the free-enterprise system envisaged by Congress.... This system depends on strong competition for its health and vigor, and strong competition depends, in turn, on compliance with antitrust legislation.
>
> Hawaii v. Standard Oil Co., 405 U.S. 251, 262, 92 S.Ct. 885, 891, 31 L.Ed.2d 184 (1972), quoted in City of Madison, 73 Wis.2d at 373, 243 N.W.2d 422. Anti-trust laws provide for treble damages to encourage private enforcement in an area where government regulation alone would not be adequate. In contrast, sec. 103.455 is designed to benefit individuals. The court of appeals has explained that sec. 103.455 is a remedial statute because it provides a remedy for individual employees, rather than the public. Erdman v. Jovoco, 173 Wis.2d at 281, 496 N.W.2d 183. "It is not uncommon for decisions to state the difference [between penal and remedial statutes] in terms of the nature of the evil sought to be remedied by the legislation, ... it is penal if it undertakes to redress a wrong to the public and remedial if it undertakes to remedy a wrong to the individual." In re: I.V., 109 Wis.2d

18

> 407, 411, 326 N.W.2d 127 (Ct.App.1982), quoting 3 J.
> Sutherland, Statutes and Statutory Construction, sec. 60.02
> (C. Sands 4th ed. 1974). We agree with the court of appeals'
> characterization of sec. 103.455; the double recovery
> provision in the statute does not change its fundamental
> nature. Although the legislature has created an incentive for
> employers to comply with the statute by providing double
> damages, the statute is primarily intended to benefit
> individual employees.

512 N.W.2d 487, 496, 181 Wis.2d 736, 761–62 (Wis.,1994)

The same is true of Wis. Stat. §146.83. Its purpose is remedial not penal. It
is designed to benefit individuals, i.e., patients, and not the public at large like an
anti-trust claim. The exemplary damages allowed under §146.84 is comparable to
the double recovery allowed under §103.455. It does not change the fundamental
nature that it is designed to benefit individuals. Defendant attempts to equate this
law, which addresses how an *individual* may obtain copies of their individual
private health care records, with antitrust laws designed to benefit the public is
unpersuasive. Nor is Defendant's reference to the damages allowed under §146.84
as punitive any different than the argument made by the employer in Erdman –
which the Court found unpersuasive.

The Court of Appeals decision in *South Milwaukee Savings Bank v.
Barczak*, 229 Wis.2d 521, 531 (Wis.App.,1999) supports that the 6 year statute
should be applied here as it was for the claims before that court.  In *South
Milwaukee*, the court followed the *Erdman* decision and determined that the
statute before it was for the benefit of individuals not the public. The costs to be
paid for copies of a patient's own healthcare records does not address anything
beyond the rights of that individual patient.

19

The *South Milwaukee* decision also held that the 6 year limit should be applied unless the legislature clearly required the shorter limit under §893.93(2)(a):

> Moreover, unless the legislature clearly requires the application of a specific statute of limitations, case law requires application of the six-year statute of limitations. Reviewing courts must interpret statutes of limitations so that "no person's cause of action will be barred unless clearly mandated by the legislature." *Saunders v. DEC International, Inc.*, 85 Wis.2d 70, 74, 270 N.W.2d 176, 177 (1978). Absent a clear legislative mandate, case law instructs that the two-year statute of limitations must be narrowly construed in favor of plaintiffs to avoid extinguishing otherwise meritorious claims. *See Lovett v. Mt. Senario College, Inc.*, 154 Wis.2d 831, 836, 454 N.W.2d 356, 358 (Ct.App.1990). Here, the Wisconsin legislature has not clearly mandated the application of either statute of limitations to the facts of cases like the instant one. Noting that the two-year statute of limitations must be narrowly construed, and observing that the application of the two-year statute of limitations would extinguish South Milwaukee's claim, we therefore determine that § 806.10(3), stats., is covered by the six-year statute of limitations.

229 Wis.2d at 535

Defendant's reliance on the Court of Appeals decision, *Open Pantry Food Marts of Southeastern Wisconsin, Inc. v. Falcone*, 92 Wis.2d 807, 811 (Wis. App., 1979) does not change the Supreme Court's analysis in *Erdman* since it was a case dealing with alleged violations of the antitrust statutes. It was the limited type of action that the Supreme Court found was subject to Wis. Stat. §893.93(2)(a). This is not an antitrust case.

Also, the legislature has further recognized the individual nature of the damages allowed under §146.84 are personal to the patients by specifically

excluding it from the operation of Wis. Stat. §895.043 that provides limits on punitive damages. Punitive damages covered by §895.043 are considered to be damages that benefit the public. *Kimble v. Land Concepts, Inc*., 353 Wis.2d 377, 398, 2014 WI 21, ¶ 43 (Wis.,2014) ("Punitive damages are not intended to compensate the plaintiff, but rather are awarded "to punish the wrongdoer, and to deter the wrongdoer and others from similar conduct."). The exclusion of the damages allowed under §146.84 confirms the damages are primarily intended to benefit individuals not the public like the other punitive damages that are covered by §895.043.

Defendant's attempt to convert the private nature of the relief afforded by Wis. Stat. §146.84 into a public benefit fails. The amount of damages does not make it a public statute since the damages are awarded solely to the individual who brings a claim. §146.84(c). And, as noted above, the exemplary allowed under this statute is specifically carved out of any attempt to alter punitive damages. *See* Wis. Stat. §895.043.

## V.    THE MOYA COURT REJECTED VOLUNTARY PAYMENT AND WAIVER DEFENSES AND COMMON LAW CLAIMS ARE NOT BARRED.

Other Defendants who also chose to violate these same laws have also been sued.  In *Moya v. Aurora Healthcare, Inc.*, 2017 WI 45, 375 Wis. 2d 38, 894 N.W.2d 405, 414 the Defendants were sued because they overcharged thousands of Wisconsin Citizens for copies of their own healthcare records.  When sued for

the return of the illegal fees, Healthport "argue[d] that the doctrine of voluntary payment bars Moya's class action lawsuit and thereby entitles Healthport to summary judgment." *Id.* ¶32.  The ***Moya*** Court rejected Healthport's attempt to use the "voluntary payment" doctrine to circumvent the clear intent of Wis. Stat. § 146.83(3f) and held:

> Here, we determined that the legislature's expressed intent that a person with a written authorization from a patient does not have to pay the certification charge or retrieval fee for obtaining health care records. Thus, "[a]pplication of the common law voluntary payment doctrine would undermine the manifest purposes of [Wis. Stat. § 146.83(3f)]." MBS-Certified Pub. Accountants, LLC v. Wis. Bell, Inc., 2012 WI 15, ¶4, 338 Wis. 2d 647, 809 N.W.2d 857. Consequently, we cannot apply it in this case to bar Moya's claim.

***Moya v. Aurora Healthcare, Inc***., 2017 WI 45, ¶34, 375 Wis. 2d 38, 894 N.W.2d 405.

As in *Moya*, voluntary payment does not allow this Defendant to keep the fees they illegally charged Wisconsin Citizens, as to do so would undermine the Legislature purpose for passing Wis. Stat. § 146.83(3f).

The ***Moya*** Court also rejected a waiver defense. The rejection of the waiver defense was not limited to any finding that the facts before it did not show a waiver. Instead, the court addressed the efficacy of *any* waiver defense, which presupposes that there are facts that would establish a waiver defense. The Court

said the application of waiver had to be rejected because it would also undermine the statutory limits placed on such fees. [7]

Defendant acknowledges *Moya's* rejection of the voluntary payment doctrine, yet still argue the doctrine should bar Plaintiff's common law claims of unjust enrichment and conversion notwithstanding it is alleged to have willfully violated the statute. Respectfully, when a party knows it is violating a law it cannot defeat common law claims against it by claiming voluntary payment.

Any claim of voluntary payment must be free of fraud, duress, or extortion in some form. See. 66 Am. Jur. 2d Restitution and Implied Contracts § 114. There is no reward for those that choose to knowingly violate laws.  As an equitable defense, voluntary payment cannot be raised by defendants that come before the Court with unclean hands. *Wisconsin Patients Compensation Fund v. St. Mary's Hosp. of Milwaukee,* 209 Wis.2d 17, 36 (Wis.App.,1997)(" The others [defenses] all are based on equitable principles—principles properly invoked, however, only by parties with "clean hands.")

 Also, the Defendant cannot escape that their false representations, that the Plaintiff and others owed amounts in excess of the per page fee allowed under Wisconsin law, violate Wis. Stat. 100.18. Defendant may not make false or

---

[7]
        The Court of Appeals and Supreme Court in *Moya* were kept in the dark that the Defendants in *Moya* and other healthcare providers had actual knowledge that they could no longer charge certification and retrieval fees as reflected in the records of their joint lobbying efforts because the evidence was not disclosed by those defendants until well after the Supreme Court decided that case. (*See* Ex. J, at p. 10.)

deceptive statements under Wis. Stat. §100.18. This includes statements made to their patients through bills or letters to induce their patients to enter into any obligation. This law prohibits any person from making false statements. The Defendant's invoice claiming it was owed a retrieval fee was false. Therefore, Defendant's effort to distinguish the common law claims from the statutory claims addressed in *Moya* fails because their acts are illegal under Wis. Stat. §100.18. Allowing the defense here would undermine Wis. Stat. §100.18.

Wisconsin Courts have previously held that permitting a defendant to rely on their own false representations cannot be defeated by a claim of voluntary payment since it would undermine Wis. Stat. §100.18. *MBS-Certified Public Accountants, LLC v. Wisconsin Bell Inc.*, 346 Wis.2d 173, 190, 2013 WI App 14, ¶ 20 (Wis.App.,2013)("If a party violating § 100.18 can defend its actions using the voluntary payment rule, then the broad, remedial purpose of § 100.18 would be undermined. (citation omitted). Consequently, we conclude that the voluntary payment doctrine does not apply to claims under § 100.18, and consequently does not bar MBS's § 100.18 claim against defendants.")

None of the cases raised by the Defendant addressed or considered that the false and deceptive statements which induced payments for more than what was lawfully allowed were prohibited by a Wisconsin statute. Defendant fails to explain why their false representations are distinguishable and therefore should be protected.

## VI.   THE STATUTE DOES NOT PREEMPT COMMON LAW CLAIMS

Here, Wis. Stat. §146.83 and Wis. Stat. §148.84 do not preempt the common law.  There is nothing in either statute that indicates common law claims are abolished by its adoption. Even if Defendant can escape liability under these provisions due to its ignorance, the fees retained by Defendant remain the result of fraud and misrepresentation and could not legally be assessed. It would be inequitable for Defendant to retain these fees, and Plaintiff would be left without a remedy under the statute. These common law claims are meant to address this precise circumstance.

At this stage of the proceeding, Plaintiff is allowed to assert alternative claims upon which relief may be granted. *See* Rule 8(d)(2) which permits alternative claims.

### VII.   PLAINTIFF HAS STATED A CLAIM FOR UNJUST ENRICHMENT.

If Defendant collected fees by making false representations, it would be inequitable for it to retain those fees.  Defendant argues the voluntary payment doctrine. Defendant wants the court to resolve factual issues relating to whether it has any right to assert equitable defenses at all. However, Defendant lacks clean hands to raise equitable defenses because it intentionally violated Wisconsin law. Nor can Defendant gain a benefit or advantage by the use of false or misleading statements since it would undermine the prohibitions under Wis. Stat. §100.18. Defendant therefore cannot rely on their false and misleading statements to claim

25

Plaintiff's payment was voluntary. *MBS-Certified Public Accountants, LLC v.*

*Wisconsin Bell Inc.*, supra.

Additionally, an agent who comes into money rightfully must return it if the

principal is not entitled to it.  In 1916, the Wisconsin Supreme Court in *Jensen v.*

*Miller* stated:

> Thus while he came rightfully in possession of it, he
> wrongfully withholds it from plaintiff as found by the
> trial court, because upon the facts admitted by him he
> should have paid the money to plaintiff when he
> demanded it. The case is within the principle announced
> in Blizzard v. Brown, 152 Wis. 160, 139 N. W. 737, to the
> effect that an agent who has money to which his
> principal has no right is personally liable to the party
> from whom it is wrongfully withheld.

*Jensen v. Miller*, 162 Wis. 546, 156 N.W. 1010, 1011 (1916)

This is consistent with 3 Am. Jur. 2d Agency § 282 which states that "if the

agent knows that the principal is not entitled to funds received for the principal

from a third person, the agent is under a duty to return them to the one rightfully

entitled thereto; if the agent turns over such funds to the principal with

knowledge that the latter is not entitled thereto, the agent becomes personally

liable therefor."

The section contrasts that principle with cases that hold that an agent who

even mistakenly induces another to pay a fee must return it.  It states that "a

known agent who, by fraud, mistake, or wrongful act, induces an innocent person

to pay over money to him or her for the principal is liable for money so paid even

if the agent pays the money to the principal."  Id.

26

Thus, even if Essentia induced a payment by mistake, they must return the money.

### VIII.  PLAINTIFF HAS STATED A CLAIM FOR CONVERSION

Money obtained based on false representations is not consensual and is conversion. See e.g., *Putnam v. Time Warner Cable of Se. Wis., Ltd., P'ship,* 2002 WI 108, ¶ 13, 255 Wis.2d 447 (a finding of voluntary payment must be free from fraud).

At a minimum, there are factual issues if the payments were free of fraud which preclude dismissal of the claims. The Plaintiff has alleged the Defendant knowingly sent an invoice that included an illegal charge.  *See e.g.,* Amended Complaint, ¶ 57-59. Her allegations cannot be ignored on a motion to dismiss.

### CONCLUSION

For the above reasons, the Defendant's motion to dismiss should be denied.

FOR PLAINTIFF, Mary Hills

/s/ Robert J. Welcenbach
Robert J. Welcenbach (SBN 1033091)
Welcenbach Law Offices
933 North Mayfair Road, Suite 311
Milwaukee, WI 53226

Scott C. Borison
Borison Firm, LLC.
1400 S. Charles St.
Baltimore, MD 21230

CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this document was served on the Defendant's counsel when filed through the Court's CM/ECF system on March 16, 2020.

/s/ Robert J. Welcenbach