## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

**MARY HILLS**
Individually and on behalf of a class of others similarly situated,

Case No.: 19-CV-907

     Plaintiff,

v.

JURY TRIAL DEMANDED

**ESSENTIA HEALTH**

     Defendant/Third Party Plaintiff,

v.

**Ciox Health LLC.**

     Third Party Defendant.

---

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO CERTIFY CLASSES UNDER RULE 23

Plaintiff, Mary Hills ("Hills") filed this action because the Defendants charged her, and many others, fees that are plainly not allowed by Wisconsin law. The claims made by Plaintiff against the Defendant present a predominant issue that can be resolved in a single action. The Defendant chose to either charge these fees pursuant to its own policies and procedures or by hiring Third Party Defendant Ciox Health LLC. (Ciox) to provide copies and charge their patients. These details are set forth in an affidavit submitted by Essentia in support of its Notice of Removal. (ECF 3 – Affidavit of Jeanne Amato at ¶¶ 5-8).

## Background

In Wisconsin, access to patient health care records is governed by Wis. Stat. §146.83(3f)(a), which mandates that a healthcare provider "***shall*** provide the person making the request copies of the requested records." Because healthcare providers have a monopoly on their patients' healthcare records, the amount that can be charged to a patient is strictly controlled by Wis. Stat. §146.83(3f). Wis. Stat. §§146.83(3f)(b)(1) - (6) ***prohibits*** a medical provider from charging a "patient or a person authorized by the patient" to receive the patients' medical records, a "retrieval fee" or a "certification charge." Wis. Stat. §146.83(3f)(b)(1) - (6). The Wisconsin Supreme Court has interpreted the phrase "person authorized by the patient" to mean "any person authorized in writing by the patient."[1] *Moya*

---

[1] A "person authorized by the patient" is defined in Wis. Stat. § 146.81(5) as"

> the parent, guardian, or legal custodian of a minor patient, as defined in s. 48.02 (8) and (11), the person vested with supervision of the child under s. 938.183 or 938.34 (4d), (4h), (4m), or (4n), the guardian of a patient adjudicated incompetent in this state, the person representative, spouse, or domestic partner under ch. 770 of a deceased patient, ***any person authorized in writing by the patient*** or a health care agent designated by the patient as a principal under ch. 155 if the patient has been found to be incapacitated under s. 155.05 (2), except as limited by the power of attorney for health care instrument. If no spouse or domestic partner survives a deceased patient, "person authorized by the patient" also means an adult member of the deceased patient's immediate family, as defined in s. 632.895 (1)(d). A court may appoint a temporary guardian for a patient believed incompetent to consent to the release of records under this section as the person authorized by the patient to decide upon the release of records, if no guardian has been appointed for the patient.

(Emphasis added).

*v. Aurora Healthcare, Inc.*, 2017 WI 45, ¶ 22, 375 Wis. 2d 38, 894 N.W.2d 405 (2017). This language is unambiguous and clear and would obviously exempt anyone with a HIPAA compliant medical records release from being charged the prohibited "retrieval fee" or "certification charge." Id.

Mrs. Hills filed suit because Essentia wrongfully charged a retrieval fee when her attorney, who had been authorized by her in writing, requested copies of Mrs. Hills's medical records in violation of Wis. Stat. §146.83(3f)(b)(4) - (5). There is no dispute that the retrieval fees were charged by Essentia. *See* ECF 15-3, Exhibit C. Mrs. Hills seeks class certification because the Defendant has directly or indirectly also overcharged thousands of other Wisconsin citizens for copies of their medical records in the same way that Mrs. Hills was overcharged. Ms. Amato says that it includes "[o]ver 3,000 different patients..." (ECF 3 – Affidavit of Jeanne Amato at ¶ 10).

This case is uniquely suited for class treatment because it raises claims that have been addressed by the Wisconsin courts. See *Moya v. Aurora Healthcare, Inc.*, 2017 WI 45, ¶ 22, 375 Wis. 2d 38, 894 N.W.2d 405 (2017) and *Cruz v. All Saints Healthcare System Inc.*, 242 Wis. 2d 432 (2001). And, every state court that has ruled on a motion to certify a class on these same claims have granted class certification. See *Harwood v. Wheaton Franciscan Services, Inc.*, 933 N.W.2d 654, 656, 388 Wis.2d 546, 550, 2019 WI App 53, ¶ 1 (Wis. App., 2019) [2] The

---

[2] Every Wisconsin County Circuit Court that has considered a class certification motion for the same claims have all certified classes. See ***Moya v. Aurora***, Case No. 13CV2642, Circuit Court Milwaukee County; ***Rave v. SVA Healthcare, LLC.***, Case

Wisconsin courts have certified the actions under Wisconsin's revised Class Action statute, Wis. Stat. §803.08, that sets forth the same requirements as Federal Rule 23.

Mrs. Hills's proposed class meets the pre-requisites set forth by Rule 23(a): numerosity, commonality, typicality and adequacy of representation and the requirements of Rule 23(b)(3): predominance and superiority. Questions of law or fact common to the members of the proposed class predominate over any questions affecting only individual members, and a class action is clearly superior to other available methods for the fair and efficient adjudication of the controversy. Damages are uniform and are easily determined since under *Moya*, any basic, retrieval or certification fee is illegal and must be disgorged by the defendants. Similarly, the statutory exemplary damages are dependent on a review of the Defendants' actions and can be assessed within the ranges allowed by the Wisconsin law.

As a matter of economic reality, in the absence of a class, the Wisconsin citizens overcharged by the Defendant may never recover the money they were overcharged if this case is not certified as a class action.

---

No. 2018CV000609, Circuit Court Milwaukee County; ***Shannon v. Mayo Clinic,*** Case No. 2019CV000204, Dunn County Circuit Court, ***Harwood v. Bell Ambulance***, Case No. 2018CV009161, Circuit Court Milwaukee County; ***Smith v. Paratech***, Case No. 2018CV009940, Circuit Court Milwaukee County; ***Futosky v. Ebix Inc***., Case No. 2018CV001829, Circuit Court Waukesha County. ***Bell, Paratech*** and ***Ebix*** were settlement classes but the court was still required to determine whether the proposed settlement class met the requirements of Wis. Stat. §803.08.

## I. Wisconsin Law

In Wisconsin, a patient's access to copies of their own medical records is governed by Wis. Stat. §146.83. Wis. Stat. §146.83(3f) provides in pertinent part:

> Except as provided in sub. (1f) or s. 51.30 or 146.82 (2), if a person requests copies of a patient's health care records, provides informed consent, and pays the applicable fees under par. (b), the health care provider **shall** provide the person making the request copies of the requested records.

Wis. Stat. §146.83(3f)(a) (Emphasis added.)

Wis. Stat. §§146.83(3f)(b)(1) - (6) set out the maximum charges that may be charged and collected for medical records and provides:

> Except as provided in sub. (1f), a health care provider may charge no more than the total of all of the following that apply for providing the copies requested under par. (a):
> 1.       For paper copies: $1 per page for the first 25 pages; 75 cents per page for pages 26 to 50; 50 cents per page for pages 51 to 100; and 30 cents per page for pages 101 and above.
> 2.       For microfiche or microfilm copies, $1.50 per page.
> 3.       For a print of an X–ray, $10 per image.
> 4.       ***If the requester is not the patient or a person authorized by the patient***, for certification of copies, a single $8 charge.
> 5.       ***If the requester is not the patient or a person authorized by the patient***, a single retrieval fee of $20 for all copies requested.
> 6.       Actual shipping costs and any applicable taxes.

Wis. Stat. §146.83(3f)(b)(1) - (6) (emphasis added.)

The phrase "person authorized by the patient" is defined in Wis. Stat. § 146.81(5) to mean "any person authorized in writing by the patient." [3] This language is unambiguous and clear and would obviously exempt anyone with a HIPAA or other written authorization signed by the patient. And, Essentia would not be able to release a patient's healthcare records to a third party without an authorization from the patient. Patient health care records may be released only to the persons designated in this section or to other persons with the informed consent of the patient or of a person authorized by the patient. Wis. Stat. §146.81(1)("Patient health care records may be released only to … a person authorized by the patient.)

## II.  Facts Leading To Mrs. Hills's Class Action Lawsuit.

---

3 A "person authorized by the patient" is defined in Wis. Stat. § 146.81(5) as"

> the parent, guardian, or legal custodian of a minor patient, as defined in s. 48.02 (8) and (11), the person vested with supervision of the child under s. 938.183 or 938.34 (4d), (4h), (4m), or (4n), the guardian of a patient adjudicated incompetent in this state, the person representative, spouse, or domestic partner under ch. 770 of a deceased patient, ***any person authorized in writing by the patient*** or a health care agent designated by the patient as a principal under ch. 155 if the patient has been found to be incapacitated under s. 155.05 (2), except as limited by the power of attorney for health care instrument. If no spouse or domestic partner survives a deceased patient, "person authorized by the patient" also means an adult member of the deceased patient's immediate family, as defined in s. 632.895 (1)(d). A court may appoint a temporary guardian for a patient believed incompetent to consent to the release of records under this section as the person authorized by the patient to decide upon the release of records, if no guardian has been appointed for the patient.

(Emphasis added).

This class action arose from Mrs. Hills's personal injury claim for which she hired Herrick & Hart, S.C. to represent her. Amended Complaint, ECF 15, ¶ 45. Mrs. Hills authorized her attorneys to obtain her health care records by signing HIPAA release forms giving her attorneys authorization to receive her health records. Id. at ¶ 46. Her attorneys subsequently submitted requests for Mrs. Hills's health care records and Defendant when fulfilling the requests, imposed retrieval fees contrary to what is allowed by Wis. Stat. § 146.83(3f)(b)4.-5. ECF 15, Amended Complaint, ¶¶ 52-53; ECF 15-3, Exhibit C. Mrs. Hills's attorney paid the retrieval fees. ECF 15, Amended Complaint, ¶ 54.

## IV. Mrs. Hills Seeks Class Certification Against Each Defendant

The Plaintiff moves this Court to certify the following classes against the Defendants:

**Essentia Class**:

> All persons in Wisconsin:
>
> (i)   who were a patient of any Essentia healthcare provider in Wisconsin and requested their own health care records or authorized another person in writing to obtain the patient's medical records from Essentia; and
>
> (ii)   were charged a basic, retrieval, certification or other fee by Essentia, directly or indirectly, in violation of Wis. Stat. §146.83(3f)(b)(4) - (5)
>
> (iii)   during the six year period preceding the commencement of this action through the date of trial.

The Class specifically exclude the following persons or entities: (i) Defendants, any predecessor, subsidiary, sister and/or merged companies, and all of the present or past directors, officers, employees, principals, shareholders and/or agents of the Defendants; (ii) any and all Federal, State, County and/or Local Governments, including, but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, councils and/or any other subdivision, and any claim that such governmental entities may have, directly or indirectly; (iii) any currently-sitting Wisconsin state court Judge or Justice, or any federal court Judge currently or previously sitting in Wisconsin, and the current spouse and all other persons within the third degree of consanguinity to such judge/justice or (iv) any law firm of record in these proceedings, including any attorney of record in these proceedings; (v) any person who would otherwise belong to the class but who Defendants can identify as being charged a fee, either directly or indirectly through a person authorized in writing, but said fee was not collected or paid to Defendant by anyone and (vi) anyone who has recovered the fee at issue as a member of any class in *Moya v. Healthport Technologies, LLC.* 13CV2642 (Milwaukee Co. Cir. Ct) (the "Moya Action") or *Rave V. Ciox Health LLC.*, 2:18-cv-00305-LA (ED WI.).

## IV.  Legal Standards For Class Certification

Class actions serve an important purpose. As the Seventh Circuit explained

in *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)

The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.  True, the FDCPA allows for

individual recoveries of up to $1000. But this assumes that the plaintiff will be aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case. These are considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate for pursuing the FDCPA's objectives.

This action is under a Wisconsin law designed to protect consumers and the *Mace* rationale applies equally here.

The proposed class mirror classes certified by Wisconsin Courts under these same laws. [4] After the Supreme Court remanded the case in *Moya v. Aurora Healthcare, Inc.,* 2017 WI 45, ¶ 22, 375 Wis. 2d 38, 894 N.W.2d 405, Judge Murray certified classes against the Defendants in that case consistent with the decision in *Cruz v. All Saints Healthcare System Inc.*, 242 Wis. 2d 432 (2001).

In *Cruz* the trial court certified a class on the same claims based on the same law that are before this court; i.e., overcharges for health records under Wis. Stat. § 146.83 et seq. (as that statute existed in 2001). On appeal, the record provider in *Cruz* contended that the trial court erred in certifying a class. The Wisconsin Court of Appeals affirmed the class certification.

## A. The Classes Meet The Requirements Of Fed.R.Civ.Pro. 23(a)

Mrs. Hills's proposed class meets the four prerequisites under Rule 23(a): numerosity, commonality, typicality and adequacy.

---

4 FN 1, infra.

**1. Numerosity** ("The class is so numerous that joinder is impractical."): The number of persons affected by the Defendant's illegal charges makes it impractical to join all the parties in this action. Defendant removed this matter to Federal Court and alleged that removal was proper under the Class Action Fairness Act, 28 U.S.C.A. §1332(d) ("CAFA"). CAFA requires a minimum of 100 class members. Defendant in its Notice of Removal admits that "the proposed class members number at least 100." (ECF 1, ¶21)

Essentia further submitted an affidavit (ECF 3) in support of its Notice of Removal. The affidavit states there are over 3,000 patients who have requested copies of their records. ECF 3 – Affidavit of Jeanne Amato at ¶ 10. This well exceeds the minimum set by the Seventh Circuit. *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n. 9 (7th Cir.1969)(Classes as small as forty may satisfy the numerosity requirement.)

**2. Commonality** ("[T]here are questions of law or fact common to the class."): In the present action, there is "[a] common nucleus of operative fact [sufficient] to satisfy the commonality requirement of Rule 23(a)(2)." (citations omitted) *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). For many years the Defendant has been charging Wisconsin citizens or persons authorized in writing by Wisconsin citizens illegal retrieval or other fees for copies of their medical records. This common nucleus of fact gives rise to a common legal question: Were the Defendant's charges for retrieval or other fees illegal when a patient requested copies of his or her medical records directly or through a person the patient

authorized in writing to make the request? See Wis. Stat. §146.83(3f)(b)(4) - (5) "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question" *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014).

While it is true that the Wisconsin Supreme Court has provided the answer to this common legal question in *Moya, supra*, that answer does not detract from the fact that this common element of the Class claims against the Defendant is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Walmart v. Dukes,* 131 S. Ct. 2541, 2551 (2011).

The other common issues that can be decided for the class are:

1.  The amounts that Defendant charged for retrieval or other fees to patients or persons authorized in writing by the patient?

2.  Whether the actions of the Defendant were negligent or intentional?

3.  Amount of exemplary damages, if any.

The answers to these common issues are based on the Defendant's knowledge and actions that added a retrieval fee charge and thereby overcharging all class members and will not require the testimony of a single class member to prove. The answers are unaffected by the actions or inactions of the Plaintiff or the class members. These common issues will decide the validity of the claims asserted on behalf of the class.

**3.  Typicality** ("[T]he claims or defenses of the representative parties are typical of the claims or defenses of the class."):  Mrs. Hills's claims are typical of the claims being asserted on behalf of the members of the classes. Defendant has charged fees that are prohibited by Wisconsin law.

**4.  Adequacy** ("the representative parties will fairly and adequately protect the interests of the class."):  In *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (C.A.7 (Ill.),1993) addressed the adequacy requirement:

> We have stated that adequacy of representation is composed of two parts: "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest" of the class members. (citation omitted) Therefore, "[a] class is not fairly and adequately represented if class members have antagonistic or conflicting claims."

The Plaintiff must not have any conflict with the class. The Plaintiff here does not have any conflict. She seeks the same relief on the same claims individually as he seeks for the class. See Exhibit 1, Declaration of Mary Hills.

Appointment of class counsel is also governed by Rule 23(g). Plaintiff has retained counsel who are well versed in the subject matter of this litigation. Plaintiff's counsel successfully represented Ms. Moya in the *Moya* decision. Their collective experience includes being approved as class counsel on the same claims at issue here.  See Declaration of Robert J. Welcenbach, Exhibit 2, Scott C. Borison, Exhibit 3, J. Craig Jones, Exhibit 4 and Jay Heit, Exhibit 5. Plaintiff's counsel meet

the qualifications to be class counsel based on their knowledge and experience in both class actions and the Wisconsin law at issue.

### B. The Rule 23(b)(3) requirements are met.

The requirements of (b)(3) of Rule 23 are commonly referred to as predominance and superiority. Rule 23(b)(3) provides:

> The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

In analyzing (b)(3) "[t]he Court must first ask whether the plaintiff's "damages are susceptible of measurement across the entire class." *Suchanek v. Sturm Foods, Inc.,* 311 F.R.D. 239, 257 (S.D.Ill., 2015). The damages are easily determined since under *Moya*, any retrieval fee is illegal and must be disgorged by the defendant. Similarly, the statutory exemplary damages are dependent on a review of the Defendant's actions and can be assessed within the ranges allowed by the Wisconsin law.

In many consumer cases involving consumer protection laws, there is often an element of reliance at issue. And, notwithstanding that there are issues of

reliance, the Courts have routinely certified class actions under Rule23(b)(3). This case is simpler because there is a bright line established by Wisconsin law as what is legal and what is not legal. There is no reliance element but only a statutory prohibition imposed on the fees that Defendant may charge. Plaintiff nor the class has to show reliance. The *Moya* court made that clear when it refused to recognize defenses that looked to the plaintiff that interfered with the statutory prohibition against charging fees.

"The importance of the class action device in vindicating the rights of consumers is one reason why the Supreme Court held that "[p]redominance is a test readily met in certain cases alleging consumer … fraud," among others. See Amchem, 521 U.S. at 625, 117 S.Ct. 2231. *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 760 (7th Cir. 2014).

**1. Predominance:** The predominance standard rests on the commonality required by 23(a)(2). The difference is that the common issue necessary to satisfy Rule 23(a)(2) must also be found to be the predominant issue in the case.

In *Edwards v. First American Corp.*, 798 F.3d 1172 (9th Cir. 2015), the plaintiff sought to certify a class to assert claims under the Real Estate Settlement Procedures Act for illegal kickbacks for which they sought statutory damages. The District Court denied the motion to certify a class. The Ninth Circuit reversed. The Ninth Circuit held "[t]he district court erred in concluding that the common issue does not predominate over individual issues for the proposed class members." 798 F.3d at 1182. The Court found that individual issues that may arise in connection

with the claims under RESPA did not overwhelm the common issue of whether there were illegal kickbacks by a title insurer to title insurance producers.

The predominance requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

Here, there is a single and predominant issue before the Court – Did the Defendant illegally charge retrieval fees to patients who requested them directly or to persons they authorized in writing. If so, then the damages can be ascertained from the Defendant's records or the records of the third parties they hired, which include invoices that show the amounts they charged and collected. The exemplary damages can also be uniformly determined for the class.  Any defenses offered by the Defendant would apply equally to all of the class members. The merits of these issues do not have to be decided at this stage. The significance of this motion is it shows the common issues are the predominant issues that will resolve the claims in one stroke.

**2. Superiority:** Superiority is the second prong of Rule 23(b)(3). Each of the factors support certification here.

### (a) The interest of members of the class in individually controlling the prosecution or defense of separate actions.

Whether or not class members want to file their own actions is often marked by a defendant appearing to advocate out of concern for the class members and

preserving their rights to sue the defendant on an individual basis. The Court in *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. 1968) recognized the concern expressed by a defendant may be feigned since what defendant would want a slew of individual cases if the individuals were truly in a position to pursue individual claims:

> The lower court indicated that efficiency could best be served in the instant case by allowing intervention. However, the procedures available for handling proliferated litigation, including intervention, presuppose 'a group of economically powerful parties who are obviously able and willing to take care of their own interests individually * * *.' Frankel, Amended Rule 23 from a Judge's Point of View, 32 Antitrust L.J. 295, 298 (1966). **Yet if the purchasers fit this description, it is to be supposed that the defendants would join in demanding a class action since they could scarcely desire to defend separate actions by each party they have now admittedly injured.**

*Esplin v. Hirschi*, 402 F.2d at 101 (emphasis added).

In *Esplin* the class members were concerned with investments that they had made and the Court posited that the class members would not be in position to pursue individual claims. Here, because the compensatory award is low (approximately $16), the class members are even more unlikely to pursue them. *Carnegie v. Household Intern., Inc.,* 376 F.3d 656, 661 (7th Cir. 2004)("The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.") Therefore, the interest

of members of the class in individually controlling the prosecution or defense of separate actions is minimal and weighs in favor of certifying the classes.

### (b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class.

Plaintiff is not aware of any other case filed against Essentia for these claims. Essentia has not advised plaintiff that there are any other cases.

### (c) The desirability or undesirability of concentrating the litigation of the claims in the particular forum

There does not appear to be any reason why it is undesirable to concentrate the litigation before this Court. The Defendant has chosen this forum by removing the action.

### (d) The difficulties likely to be encountered in the management of a class action.

This case is uniquely suited to be certified as a class action because of the ease of identification of the class members though the Defendant's records and the lack of divergent issues.

The common use of accounting software means the records showing the type of charges and the amounts are electronically stored and easily accessible. The Plaintiff's counsel knows this from their experience in obtaining the records from other medical providers and third parties hired to provide copies. Whether Defendant or any party it hired charged retrieval or other fees in violation of Wis. Stat. §146.83(3f)(b)(4) - (5) can be determined through records maintained by the

Defendant or within their control. There are no individual issues to be resolved here; no "mini-trials" need to be held.

Actual damages are based on the charges made for fees that are prohibited by Wis. Stat. §146.84(1)(b) & (c) which states that "any person" who violates Wis. Stat. §146.83 "shall be liable to any person injured as a result of the violation" for "actual damages to that person." [5] Exemplary damages are also statutory and allowed if the Defendant negligently or willfully overcharged for medical records. *See* Wis. Stat. §146.84(1)(b) & (bm).

---

5 Wis. S. 146.84(1)(b) provides:

> Any person, including the state or any political subdivision of the state, who violates s. 146.82 or 146.83 in a manner that is knowing and willful shall be liable to any person injured as a result of the violation for actual damages to that person, exemplary damages of not more than $25,000 and costs and reasonable actual attorney fees.

Wis. S. 146.84(1)(b)(m) provides:

> Any person, including the state or any political subdivision of the state, who negligently violates s. 146.82 or 146.83 shall be liable to any person injured as a result of the violation for actual damages to that person, exemplary damages of not more than $1,000 and costs and reasonable actual attorney fees.

## II.    CONCLUSION

The proposed class meets all the requirements of Rule 23(a) and (b)(3) to be certified as a class.  The claims for the class are set forth in the Amended Complaint. These claims can and should be decided on a class basis so that the people who have been overcharged can recover their money that they are unlikely to recover without the class and so that they can be granted any additional relief allowed by Wisconsin law. For the above reasons, the proposed class should be certified.

Dated this 7th day of October, 2020.

Respectfully submitted,

/s/ Robert J. Welcenbach
**Robert J. Welcenbach**
Welcenbach Law Offices, S.C.
State Bar No. 1033091
933 North Mayfair Road
Suite 311
Milwaukee, WI  53226
(414) 774-7330 Office
(414) 774-7670 Fax
robert@welcenbachlaw.com

**J. Craig Jones**
**JONES AND HILL, LLC**
131 Highway 165 South
Oakdale, La 71463
(318) 335-1333 - Telephone
(318) 335-1934 - Facsimile
craig@joneshilllaw.com

Scott C. Borison
Borison Firm, LLC
1400 S Charles St.

Baltimore MD 21230
(301) 620-1016
(301) 620-1018 (fax)
scott@borisonfirm.com

Attorneys for the Plaintiff,
Mary Hills

CERTIFICATE OF SERVICE

This document was served on the Defendant's counsel when filed through the Court's CM/ECF system on October 7,  2020.

/s/ Robert J. Welcenbach