IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARY HILLS, individually and on
behalf of a class of others similarly
situated,

                              Plaintiff,                    OPINION AND ORDER

     v.

                                                         19-cv-907-wmc

ESSENTIA HEALTH,

                    Defendant/Third-Party Plaintiff,

     v.

CIOX HEALTH, LLC,

                    Third-Party Defendant.

---

Following complaints of price gouging, the Wisconsin Legislature placed caps on certain fees that a health care provider may charge for providing copies of a patient's health care records. At issue in this case in particular, Wisconsin law prohibits a health care provider from charging a "retrieval" or "certification" fee should patients (or persons authorized by a patient) request their medical records, although a provider may still charge for other fees expressly enumerated by the statute, including shipping costs or a copy charge per page. Wis. Stat. § 146.83(3f). Despite this prohibition, plaintiff Mary Hills claims that: (1) she authorized her attorney to request a copy of her medical records from defendant Essentia Health's Spooner, Wisconsin, clinic; and (2) she was unlawfully charged a $15.95 retrieval fee for copies of her records. Hills also seeks to represent a class of similarly situated individuals who were also allegedly charged unlawful fees by Essentia under Wisconsin law. Essentia in turn filed a third-party complaint against Ciox Health,

LLC, on the grounds that Ciox may be responsible for some of the fees allegedly unlawfully charged putative class members.

Pending before the court are Essentia's motion to dismiss plaintiff's complaint for failure to state a claim upon which relief can be given, and Ciox's motion to dismiss the third-party complaint filed against it.  (Dkt. ##22, 47.)  Plaintiff has also moved to certify a Rule 23 class.  (Dkt. #54.)[1]  These motions are addressed in turn below.

## ALLEGATIONS OF FACT[2]

### A. Plaintiff's Operative Complaint

A Minnesota corporation with its principal place of business in Duluth, defendant Essentia is described as "an integrated health system serving patients in Minnesota, Wisconsin, North Dakota, and Idaho."  (Am. Compl. (dkt. #15) ¶ 3.)  Among other facilities, plaintiff alleges that Essentia owns and operates the Essentia Health-Spooner Clinic in Spooner, Wisconsin ("Spooner Clinic"), "an arrangement of facilities, equipment, services and personnel capable of providing or assuring health care services, including appropriate referral, treatment and follow-up services."  (*Id.* ¶ 10.)  Located in a city with

---

[1] Also before the court are motions by plaintiff to supplement the record with recent opinions discussing issues related to the present case.  (Dkt. ##62, 70, 77.)  Defendant has not objected to the court's consideration of these opinions, nor could it, although it does seek permission to join in third-party defendant Ciox's arguments as to the narrowing of the scope of any class claims in light of its settlement in *Moya v. Healthport*. (Dkt. #85.)  Accordingly, plaintiff's motions to supplement will be granted, as will the court's consideration of defendant's and third-party defendant's responses.  (Dkt. ##80, 85.).

[2] In resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true and draws all inferences in plaintiff's favor.  *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009); *Killingsworth v. HSBC Bank Nev.*, 507 F.3d 614, 618 (7th Cir. 2007).

a population of far less than 15,000, plaintiff further alleges the Spooner Clinic is not in an urbanized area, and provides health care services.  (*Id*.)

Domiciled in Wisconsin, plaintiff Hills was injured in an accident and treated at Spooner Clinic.  After her accident and treatment, she retained Herrick & Hart, S.C., to process her personal injury claim, and subsequently authorized in writing the release of medical information to her attorneys.  Pursuant to this authority, Hills' attorneys sought her certified health records in March of 2014.  According to plaintiff, "all requests were addressed to Essentia at its address in Spooner"; "[n]o requests were ever directed to Essentia at any address in Minnesota."  (*Id.* ¶ 48.)

In responding to the request, Essentia charged a $15.95 "chart retrieval fee" (Am. Compl., Ex. C (dkt. #15-3)), which Hills' attorneys paid in order to obtain the records necessary to pursue her legal claim.  Plaintiff alleges that Essentia knew that under Wisconsin Statute § 146.83 it was illegal to charge this retrieval fee, yet still knowingly and willfully charged the fee.  In the alternative, plaintiff alleges that Essentia negligently charged the fee.  Plaintiff originally filed this lawsuit in the Circuit Court for Washburn County, Wisconsin, on September 18, 2019, on behalf of herself and a putative class, alleging that Essentia's charge of the $15.95 chart retrieval fee was unlawful under Wisconsin law.  In addition to bringing a statutory claim for which she seeks actual and exemplary damages up to $25,000 under § 146.83, Hills also asserts two equitable claims for unjust enrichment and conversion.

Plaintiff's proposed class is defined in relevant part as:

> All persons in Wisconsin:

> (i) who were a patient of any ESSENTIA healthcare provider in Wisconsin and requested their own health care records or authorized another person in writing to obtain the patient's health care records from ESSENTIA; and
> (ii) were charged a request, basic, retrieval, certification or other fee by ESSENTIA, directly or indirectly, in violation of Wis. Stat. § 146.83(3f)(b)(4) - (5);
> (iii) during the 6 year period preceding the commencement of this action through the date of trial.

(*Id.* ¶ 43.)  Subsequently, plaintiff agreed that this class would have to exclude "anyone who has recovered the fee at issue as a member of any class in *Moya v. Healthport.*"  (Dkt. #55 at p.8 (vi).)[3]

On November 11, 2019, Essentia removed this lawsuit to federal court under 28 U.S.C. §§ 1332 and 1441 as a putative class action with (a) proposed class members numbering at least 100, (b) a member of the class being a citizen of a different state than the defendant, and (c) the total amount in controversy of the aggregated class members' claims exceeding $5 million dollars, exclusive of interests and costs.  (Not. of Removal (dkt. #1) ¶¶ 5-10.)

## B. Third-Party Complaint

Defendant Essentia's subsequent, third-party complaint names Ciox as a third-party defendant.  (Dkt. #34.)  Essentia alleges that it contracted with Ciox to process many of the health care records requests at issue in this case.  Defendant further alleges that: (1) Essentia gave Ciox the right to retain any fees billed to requesters; and (2) Ciox agreed to bill requesters in compliance with state and federal law.  (*Id.*)  Based on these allegations,

---

[3] Plaintiff also offers four other expressly excluded groups, which may or may not be necessary or appropriate and are addressed in the opinion below.  (Dkt. #55, p.8 (i) – (iv).)

to the extent that Essentia may be held liable for any unlawful fees charged by Ciox, it asserts claims for breach of contract, implied indemnity, equitable indemnity, and contribution against Ciox.  Even so, the specific $15.95 charge at issue in Hills' original, individual claim and apparently some other putative class members were not charged by Ciox or any of its predecessors in interest.

OPINION

## I.  Motion to Dismiss Plaintiff's Complaint

A motion to dismiss for failure to state a claim upon which relief can be given is designed to test the complaint's legal sufficiency.  *See* Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a plaintiff must allege sufficient facts to state a plausible claim for relief.  *Spierer v. Rossman*, 798 F.3d 502, 510 (7th Cir. 2015) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As previously explained, plaintiff's claim is premised on Wisconsin Statute § 146.83(3f), which specifies the types of fees that a health care provider can charge when a person requests copies of their medical records.  In full, the statute states that:

> (a) Except as provided in sub. (1f) or s. 51.30 or 146.82 (2), if a person requests copies of a patient's health care records, provides informed consent, and pays the applicable fees under par. (b), the health care provider shall provide the person making the request copies of the requested records.
> (b) Except as provided in sub. (1f), a health care provider may charge no more than the total of all of the following that apply for providing the copies requested under par. (a):
> 1. For paper copies: $1 per page for the first 25 pages; 75 cents per page for pages 26 to 50; 50 cents per page for pages 51 to 100; and 30 cents per page for pages 101 and above.
> 2. For microfiche or microfilm copies, $1.50 per page.

3. For a print of an X-ray, $10 per image.
4. If the requester is not the patient or a person authorized by the patient, for certification of copies, a single $8 charge.
5. If the requester is not the patient or a person authorized by the patient, a single retrieval fee of $20 for all copies requested.
6. Actual shipping costs and any applicable taxes.

Wis. Stat. § 146.83(3f).  In 2017, the Wisconsin Supreme Court held that "an attorney authorized by his or her client in writing via a HIPAA release form to obtain the client's health care records is a 'person authorized by the patient' under Wis. Stat. § 146.83(3f)(b)4, 5 and is therefore exempt from certification charges and retrieval fees under these subdivisions." *Moya v. Aurora Healthcare, Inc.*, 2017 WI 45, ¶ 2, 375 Wis. 2d 38, 894 N.W.2d 405.

Wisconsin Chapter 146 assists in defining the term "health care provider" by enumerating a long list of individuals or entities who meet the statutory definition, including in relevant part "[a]n inpatient health care facility" and "[a] rural medical center."  Wis. Stat. § 146.81(1)(m), (p).[4]  The term "inpatient health care facility" is also defined as "any hospital, nursing home, county home, county mental hospital or other place licensed or approved by the [Wisconsin Department of Health Services] under [various statutes], but does not include community-based residential facilities."  Wis. Stat. § 50.135(1).  Further, the term "rural medical center" is defined as:

an arrangement of facilities, equipment, services and personnel that is all of the following:

---

[4] The list also includes a "corporation or limited liability company of any providers specified under pars. (a) to (hp) that provides health care services."  Wis. Stat. § 146.84(1)(j).  While plaintiff initially argued that Essentia qualified as a health care provider under this section (*see* Compl. (dkt. #1) ¶ 2), in her amended complaint she abandoned this argument (*see generally* Am. Compl. (dkt. #15)).  In its brief, defendant Essentia persuasively explains why it does not fall under subsection j and why plaintiff was prudent to abandon this argument.  (*See* Def.'s Br. (dkt. #23) 17.)

> (a) Organized under a single governing and corporate structure.
> (b) Capable of providing or assuring health care services, including appropriate referral, treatment and follow-up services, at one or more locations in a county, city, town or village that has a population of less than 15,000 and that is in an area that is not an urbanized area, as defined by the federal bureau of the census.
> (c) A provider of at least 2 health care services under the arrangement or through a related corporate entity.

Wis. Stat. § 50.50(11).

Finally, the scope of liability for violations of Wis. Stat. § 146.83(3f) is defined in

§ 146.84(1) as follows:

> (b) Any person, including the state or any political subdivision of the state, who violates s. 146.82 or 146.83 in a manner that is knowing and willful shall be liable to any person injured as a result of the violation for actual damages to that person, exemplary damages of not more than $25,000 and costs and reasonable actual attorney fees.
> (bm) Any person, including the state or any political subdivision of the state, who negligently violates s. 146.82 or 146.83 shall be liable to any person injured as a result of the violation for actual damages to that person, exemplary damages of not more than $1,000 and costs and reasonable actual attorney fees.
> (c) An individual may bring an action to enjoin any violation of s. 146.82 or 146.83 or to compel compliance with s. 146.82 or 146.83 and may, in the same action, seek damages as provided in this subsection.

Wis. Stat. § 146.84(1).

With this statutory structure in mind, defendant primarily argues that because

Essentia is a Minnesota non-profit corporation, it is not subject to Wisconsin's health

records law in responding to plaintiff's request for documents. More specifically, defendant

argues that neither it nor the Spooner Clinic qualify as a "health care provider" under

Wisconsin law, meaning they, by definition, fall outside any fee limitations imposed by § 146.83(3f).  In response, plaintiff argues that she need only *allege* that Essentia is an "inpatient health care facility" or a "rural medical center" to meet the definition of a health care provider under Wisconsin law, at least for pleading purposes.  Alternatively, she argues that even if Essentia is not itself a health care provider, the Spooner Clinic is certainly a "rural medical center" subject to the fee limitation statute, and Essentia may be held liable by acting as its agent in responding to Hills' medical records request.

Beginning first with defendant's status, the court agrees the complaint has not adequately alleged that Essentia itself is a "health care provider" within the meaning of Wisconsin Statute § 146.81(1).  First, plaintiff claims that Essentia is an "inpatient health care facility," which is defined as "any hospital, nursing home, county home, county mental hospital or other place licensed or approved by the department under [various Wisconsin statutes], but does not include community-based residential facilities."  Wis. Stat. § 50.135(1).  Here, plaintiff alleges only that Essentia is a Minnesota non-profit corporation comprised of a "network" of clinics and hospitals.  Thus, she fails to allege that *Essentia* is a hospital or other covered entity, much less that it has been licensed or approved by the Wisconsin Department of Health Services to operate as such under Wisconsin law.  Second, plaintiff claims that Essentia is a "rural medical center," but to meet this definition, it must be "[c]apable of providing or assuring health care services."  Wis. Stat. § 50.50(11).  Wisconsin law further states that "no person may conduct, maintain, operate or permit to be conducted, maintained or operated health care services as a rural medical center unless the rural medical center is licensed by the department."  Wis. Stat. § 50.52(1).  Again,

plaintiff neither alleges that *Essentia* is licensed by the Wisconsin Department of Health Services, nor does she allege that it is capable of providing or assuring health care services.

As for plaintiff's alternative argument that Essentia's ownership of Wisconsin health care providers -- including the Spooner Clinic and any other Wisconsin licensed health care facility -- makes it a health care provider under Wis. Stat. § 146.81(1), nothing in the statute or Wisconsin law suggests that an owner of a health care provider is itself a health care provider.  To the contrary, the legal distinction between two corporations "is not one to be lightly disregarded . . . in Wisconsin as well as in most other jurisdictions." *Consumer's Co-op. of Walworth v. Olson*, 142 Wis. 2d 465, 474 (1988).  In general, "the liabilities of each corporation will be confined to those arising in its separate business."  Cox & Hazen, 1 Treatise on the Law of Corporations § 7:16 (3d ed. 2019).  Thus, Essentia is not a "health care provider" under Wisconsin law simply because it allegedly owns an entity that falls under that definition.

Additionally, plaintiff argues that even if Essentia *itself* is not a health care provider, because it acted as a provider's agent in producing health records, liability may properly be imposed on it.  This argument is supported in part by recent case law.  In *Townsend v. ChartSwap, LLC*, 2020 WI App 79, 395 Wis. 2d 229, 952 N.W.2d 831, *petition granted* (Feb. 24, 2021), a plaintiff filed a class action complaint against defendant ChartSwap, which had been contracted by Milwaukee Radiologists -- a health care provider -- to fulfill patient record requests, claiming that the fees it charged for medical records also exceeded Wisconsin's statutory limits.  *Id.* ¶ 2.  As here, defendant ChartSwap moved to dismiss, arguing that it was not a health care provider within the meaning of the statute

9

and therefore could not be held liable. *Id.* ¶ 4.  However, the Wisconsin Court of Appeals rejected that argument, reasoning that the underlying purpose of Wisconsin Statute § 146.83(3f)(b) is to "protect patients from being charged excessive fees for access to information in the custody and control of health care providers" and that "[t]o allow a third-party to circumvent the statutory limitation on health care providers simply because it does not provide actual health care services would defeat the purpose" of the statute. *Id.* ¶¶ 13-14.  Thus, the court of appeals held "agents of health care providers have no greater power to charge fees in excess of those permitted by § 146.83(3f)(b) than the providers themselves" and may likewise be held liable for violations of the statute. *Id.* ¶ 13.

The United States Court of Appeals for the Seventh Circuit had occasion to consider a similar claim in *Smith v. RecordQuest, LLC*, 989 F.3d 513 (7th Cir. 2021), *reh'g denied* (Mar. 17, 2021).  In *Smith*, the plaintiff requested medical records from a Wisconsin health care provider, after which a health care records company, RecordQuest, responded on the provider's behalf and charged fees greater than those set forth in. § 146.83(3f)(b). *Id.* at 516.  The plaintiff then brought a class action against RecordQuest directly, which RecordQuest moved to dismiss. *Id.*  The District Court for the Eastern District of Wisconsin initially granted that motion, but the Seventh Circuit reversed, relying primarily on the Wisconsin Court of Appeals decision in *ChartSwap*. *Id.* at 516-20.  In doing so, the Seventh Circuit flagged a number of issues unanswered by the court of appeals' decision, but ultimately concluded that it was obligated to follow the state court's ruling under principles of federalism. *See id.* at 519 ("We may disagree with *ChartSwap*, but we cannot convincingly say that the Wisconsin Supreme Court would do the same.").

Here, plaintiff Hills' claim flags yet another issue presented by the Wisconsin Court of Appeals' decision in *ChartSwap*. The enumerated list of health care providers in the statute are all individuals or entities licensed, certified, or regulated by the State of Wisconsin. Wis. Stat. § 146.81(1); *see also Hart v. Bennet*, 2003 WI App 231, ¶ 18, 267 Wis. 2d 919, 672 N.W.2d 306 (observing that "every . . . category listed in Wis. Stat. § 146.81(1)" is "licens[ed], certify[ed], or regulat[ed] by the state"). Under the reasoning in *ChartSwap*, however, non-Wisconsin entities may now be subject to Wisconsin's health record fee limitations, as well as any relevant laws imposed by their home state, heightening the chance for a conflict of laws. However, defendant does not argue that application of Wisconsin law would be inappropriate under choice-of-law principles, and courts have been able to resolve such conflicts in other settings without running afoul of the Commerce Clause. *See Morley-Murphy Co. v. Zenith Electronics Corp.*, 142 F.3d 373, 380-81 (7the Cir. 1998) (construing Wisconsin dealer law not to reach activities outside the state to avoid Commerce Clause questions). Accordingly, the court will not now consider whether the complaint should be dismissed on this ground.

On the contrary, this potential issue presents no more reason for this court to ignore the Wisconsin Court of Appeals' decision than the Seventh Circuit did in *Smith*. If anything, *Smith* would appear to compel this court to apply the principles expressed in *ChartSwap*. Specifically, plaintiff alleges that Essentia fulfilled Hills' medical records

11

request to the Spooner Clinic.[5]  Under *ChartSwap*, Essentia would appear to be subject to the fee limitations imposed by Wisconsin Statute § 146.83(3f) as Spooner Clinic's agent and liable for actual and exemplary damages under Wisconsin Statute § 146.84(1).  The court also finds that plaintiff has adequately alleged the remaining elements of a claim under § 146.83.  In particular, Hills alleges:  she gave her attorneys written authorization to request her medical records from the Spooner Clinic; on the clinic's behalf, Essentia charged a "retrieval fee" for those records in violation of Wisconsin law; and Essentia did so willfully or, in the alternative, negligently.

Defendant's final argument for dismissing plaintiff's claim on the pleadings under Wisconsin Statute § 146.83 is that Wisconsin's two-year statute of limitations under Wisconsin Statute § 893.93(2)(a) bars her proceeding.  Unfortunately for defendant, this argument has also been foreclosed by the Seventh Circuit's decision in *Smith*.  Specifically, the *Smith* court held that a "§ 146.83(3f)(b) claim is a private action for private relief, so it is timely under § 893.93(1)(a)'s six-year limitations period."  *Id.* at 521.  Here, Hills' claim accrued at the earliest in March of 2014, when Essentia first charged the allegedly unlawful fee, and she brought suit in September of 2019.  Thus, under controlling Seventh Circuit precedent, plaintiff's claim falls well within the applicable six-year statute of limitations.

---

[5] Defendant additionally argues that plaintiff has not adequately alleged that the Spooner Clinic itself is a health care provider within the meaning of Wis. Stat. § 146.81(1).  The court, however, finds that plaintiff has pleaded sufficient facts that, when read in the light most favorable to her, allege that the Spooner Clinic is rural medical center as defined in Wis. Stat. § 146.81(p).  (*See* Am. Compl. (dkt. #15) ¶¶ 9-13.)  Of course, to the extent the evidence does not bear this out, defendant may reassert its argument at summary judgment.

Defendant's arguments against plaintiff's remaining common law, unjust enrichment and conversion claims fare better under *Smith*. Indeed, the Seventh Circuit held that:

> Under § 146.83(3f)(b), Smith has a remedy at law for any "injustice" that allegedly resulted from excessive payments she made to RecordQuest. The equitable remedy that Smith seeks in unjust enrichment is derivative of, and predicated upon, that statutory claim. Put differently, Smith unjustly enriched RecordQuest only if RecordQuest violated § 146.83(3f)(b). Allowing a double recovery for these intertwined claims may itself be inequitable.

*Id.* at 520. Accordingly, that court affirmed the district court's dismissal of plaintiff's unjust enrichment claim. *Id.*

The same holding appears to apply to both of plaintiff's common law claims after *Smith*: the claims are both predicated on plaintiff's statutory claim; and if permitted to proceed, those claims would provide for a double (or in this case, triple) recovery for intertwined claims. Thus, while the court will permit plaintiff to proceed on her statutory claim under Wisconsin Statute § 146.83, her claims for unjust enrichment and conversion must be dismissed.

## II. Rule 23 Motion

The court next turns to plaintiff's motion to certify a class of those similarly situated to assert a claim under § 146.83. While Rule 23 of the Federal Rules of Civil Procedure sets forth the basic procedural requirements for class action lawsuits, the U.S. Supreme Court has emphasized that: "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule --

13

that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original).  For this reason, a trial court must engage in a "rigorous analysis" to ensure that the requisites of the Rule are satisfied.  *Id.*

Here, plaintiff specifically seeks to certify a Rule 23(b)(3) class.  To do so, she must initially meet the four threshold requirements of Rule 23(a) -- numerosity, typicality, commonality, and adequacy of representation -- then the requirements of predominance and superiority under Rule 23(b)(3).  "All of these elements are prerequisites to certification; failure to meet any one of them precludes certification as a class."  *Retired Chicago Police Assoc. v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993) (citing *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993)).

## A.  Rule 23(a) Requirements

### 1.  Numerosity

As for the requirement that the proposed "class is so numerous that joinder of all members is impracticable," Fed. R. Civ. P. 23(a)(1), a class's size need not be determined with absolute certainty; rather, the requirement is satisfied "so long as it's reasonable to believe [that the class is] large enough to make joinder impracticable and thus justify a class action suit."  *Chapman v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014) (citing *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677-78 (7th Cir. 2009)).

Here, defendant would appear to have boxed itself in by filing an affidavit in support of removal that represents over 6,674 requests for copies of patient medical records who was "serviced by a Wisconsin-based Essentia facility at least once since January 1, 2014."

14

(Amato Aff. (dkt. #3) ¶ 8.)  Of course, since then, defendant has done much to diminish this number:  (1) claiming that many of these requests may have been directed to a non-Wisconsin clinic or not responded to at all; (2) pointing out that many others were responded to by Ciox, for which Essentia cannot be held liable; and (3) arguing that it cannot even be held liable for overcharges made on behalf of one of its Wisconsin-based providers.  Regardless, defendant does not challenge that the numerosity requirement is satisfied; instead, it focuses on commonality and related requirements.  Whatever the exact numbers at stake, therefore, the court agrees that "joinder of all members [is] impracticable."  Fed. R. Civ. P. 23(a)(1).

### 2.  Commonality

Next, plaintiff must show that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  To establish commonality, plaintiffs "must assert a common injury that is 'capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Lacy*, 897 F.3d 847, 865 (7th Cir. 2018) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  Put another way, "the key to commonality is 'not the raising of common 'questions' . . . but, rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Id.* (quoting *Dukes*, 546 U.S. at 350).

Plaintiff contends that this case presents a number of common questions, beginning with whether or not defendant charged illegal fees when Wisconsin citizens requested copies of their medical records, also including:

- What amounts defendant charged for retrieval or other illegal fees?

- Whether defendant acted negligently or intentionally?

- What amount, if any, would be appropriate for exemplary damages?

(Pls.' Br. (dkt. #55) 10-11.)

In response, defendant contends that there are no common questions except for its "fail safe," self-defining clause purporting to include all persons in Wisconsin who "were charged a request, basic, retrieval, certification or other fee by Essentia directly or indirectly, **in violation of Wis. Stat. § 146.83(3f)(b)(4)-(5)**." (Def.'s Opp'n (dkt. #64) 15 (emphasis in original).)  As the Seventh Circuit explained in, *Messner v. Northshore University HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012), a class that "is defined so that whether a person qualifies as a member depends on whether the person has a valid claim" is fundamentally flawed. *Id.* at 825.  As currently proposed, therefore, the court agrees the class definition is improper.

### 3.  Typicality

Because plaintiff may still be able to propose a class that satisfies the commonality requirement, the court will briefly address the other requirements for certification.  Next, plaintiff must show that her claims "are typical of the claims" of the class.  Fed. R. Civ. P. 23(a)(3).  This ensures that the named plaintiff's claims share "the same essential characteristics as the claims of the class at large."  *Lacy*, 897 F.3d at 866 (quoting *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006)).  In other words, plaintiff's claims must "arise[] from the same event or practice or course of conduct that gives rise to the

16

claims of other class members and [is] based on the same legal theory." *Id.* (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)).

Individually, defendant suggests that plaintiff is not typical because she was charged directly by Essentia rather than a third-party agent like Ciox or its predecessor IOD Incorporated.  (Def.'s Opp'n (dkt. #64) 13-14.)  Assuming plaintiff can address her commonality/preponderance problem, this argument is meritless.  First, as defendant acknowledges, plaintiff's class definition excludes these Essentia patients who were part of past class actions concerning Ciox's overcharges.  Second, if anything, narrowing the class to those meeting Hills' claim parameters would appear to solve both commonality and typicality problems.  Third, as defendant acknowledges, even if Hills' claim were only typical of some members of the class, this might still be addressed by creation of subclasses.[6]

### 4. Adequacy

Finally, plaintiffs must show that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  A class representative is *not* adequate if he is subject to a defense to which other class members are not subject or could not prove the elements of the class claim for reasons particular to him or her.  *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724-25 (7th Cir. 2011).  In addition to the named plaintiff or plaintiffs, courts are also required to determine whether the proposed class

---

[6] The court is obviously not advocating the proposal of such subclasses, since the most straightforward class proposal would appear to be those like Ms. Hills, whose representative requested her medical records from a Wisconsin-based health care provider not only owned by Essentia but allegedly overcharged by Essentia as well.

17

counsel is adequate.  *See Gen. Tele. Co. of S.W. v. Falcon*, 457 U.S. 147, 157-58 n.13 (1982) (adequacy "raises concerns about the competency of class counsel and conflicts of interest").

In its opposition brief, defendant does not even purport to challenge the adequacy of Hills as a proposed class representative, except to the extent it argues she is not typical of the currently proposed class.  Further, defendant offers *no* challenge to plaintiffs' evidence of the adequacy of their proposed class counsel, and the court finds no basis to question class counsel's ability to manage a class action of this kind.

### B.  Rule 23(b) Requirements

While the court will postpone any discussion of the superiority of a class action pending plaintiff's proposal of a new class definition, if any, additional comments as to the predominance question are warranted since this was the focus of defendant's objection to class certification and plaintiff's failure to meet it is an even more glaring deficiency in plaintiff's current proposed class then the requirement of commonality.

The "predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (citing 7A Wright, Miller, & Kane, Fed. Prac. & Pro. § 1777 (2d ed. 1986)).  Predominance is not satisfied if "individual questions . . . overwhelm questions common to the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013).  "While similar to Rule 23(a)'s requirements for typicality and commonality, 'the predominance criterion is far more demanding.'" *Messner*, 669 F.3d at 814 (7th Cir. 2012) (quoting *Amchem Prods., Inc.*, 521 U.S. at 623-24).

Here, plaintiff's proposed class purports to include all persons in Wisconsin "who were a patient of any ESSENTIA healthcare provider in Wisconsin and requested their own health care records or authorized another person in writing to obtain the patient's health care records from ESSENTIA."  (Am. Compl. (dkt. #13) ¶ 43.)  To begin, as defendant points out, this proposed class includes individuals whose records requests were likely governed by Minnesota law, not Wisconsin law.  Although Essentia is affiliated with several facilities in Wisconsin, most of its facilities are in Minnesota, including several near or at the Wisconsin border, such as Essentia's flagship hospital, St. Mary's Medical Center and Level I Trauma Center in Duluth, Minnesota.  Like Wisconsin, Minnesota has passed a law governing the fees that "providers" -- defined as various health care providers regulated or licensed under Minnesota law -- may charge patients who request copies of their health records.  Minn. Stat. §§ 144.291, 144.292.  Unlike Wisconsin, however, Minnesota allows providers to charge a "retrieval" fee for these health records requests.  Minn. Stat. § 144.292.[7]

When two or more state's laws may govern a given issue, a federal court must apply the choice-of-law rules of its forum state to determine which law controls.  *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009).  The Wisconsin Supreme Court has acknowledged that the state's choice-of-law jurisprudence "had something of a checkered past."  *Drinkwater v. Am. Family Mut. Ins. Co.*, 2006 WI 56, ¶ 32, 290 Wis. 2d

---

[7] Like Wisconsin, Minnesota's Department of Health adjusts the authorized amounts annually for inflation.  *Compare* Wis. Stat. § 146.83(3f)(c) *with* Minn. Stat. § 144.292, subd. 6(c).  As of 2014, when Hills requested the copies of her records, the Minnesota Department of Health allowed providers to charge up to $1.32 per page for copies and up to $17.54 for a retrieval fee.  Minn. Dep. Health, Maximum Charges for Patient Records (Feb. 2014).

642, 714 N.W.2d 568.   This history aside, recent cases generally apply two tests to determine which completing states' law applies.  *Id.* ¶¶ 34, 43.  The first test asks "whether the contacts of one state to the facts of the case are so obviously limited and minimal that application of that state's law constitutes officious intermeddling."  *Id.* ¶ 41 (quoting *Beloit Liquidating Tr. v. Grade*, 2004 WI 39, ¶ 24, 270 Wis. 2d 356, 677 N.W.2d 298).  Under the second test, "the law of the forum should presumptively apply unless it becomes clear that nonforum contacts are of the greater significance."  *Id.* ¶ 40 (quoting *State Farm Mut. Auto. Ins. Co. v. Gillette*, 2002 WI 31, ¶ 51, 251 Wis. 2d 561, 641 N.W.2d 662).  If "it is not clear that the nonforum contacts are of greater significance," then five factors are considered: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law.  *Id.*

Under either of these tests, the named plaintiff Hills' individual claim is likely governed by Wisconsin law for reasons previously discussed:  she is a resident of Wisconsin; she received care only at the Spooner Clinic in Wisconsin; *and* her Wisconsin-based attorneys delivered their records request to that location.  However, as defendant points out, plaintiff's proposed class could well include individuals whose claims would be governed by Minnesota law, except for the class definition that currently defines a member as "either win[ning] or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment."  (Def.'s Opp'n (dkt. #64) 14 (quoting *Messner*, 669 f.3d at 825.) For example, the class could include an individual who previously resided in Minnesota, received care at an Essentia facility in Minnesota, and was charged a retrieval fee for records

20

while still in Minnesota, but then moved to Wisconsin and received care at an Essentia facility in Wisconsin.  The proposed class also could include individuals for whom the choice-of-law analysis would be an even closer question.  For example, an individual could have received care at Essentia providers in both Minnesota and Wisconsin and requested records relating to their care in both states.  In each case, at least as the class is currently defined, only a resolution of these individual, choice-of-law issues would determine not just whether a member may prevail, but whether a person is even a *member* of the class at all.

Predominance is only satisfied "when 'common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication.'" *Messner*, 669 F.3d at 815 (quoting 7AA Wright & Miller, Fed. Prac. & Pro. § 1778 (3d ed. 2011)) (alterations in original).  Moreover, "[n]o class action is proper unless all litigants are governed by the same legal rules." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002); *see also Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 677 (7th Cir. 2001) (vacating district court's class certification where choice-of-law issues, as well as issues of commonality and manageability, beset the case).  Here, some of proposed class members' claims may be governed by Minnesota law, while others may be governed by Wisconsin law, and ascertaining which law applies will necessitate individualized inquiries.  Accordingly, just as with commonality, the predominance prong

has not been met, and the court must deny certification of plaintiff's currently proposed class.[8]

## III.  Motion to Dismiss Third-Party Complaint

Finally, the court must briefly address third-party defendant Ciox's motion to dismiss the complaint against it.  There is no dispute that the charge at issue in Hills' individual claim was *not* charged by Ciox or its predecessors in interest.  Plus, as the court understands it, plaintiff appears to concede exclusion of any overcharges of Ciox or IOD on Essentia's behalf.  Thus, unless plaintiff promptly proposes a revised class definition not fraught with the same commonality and predominance issues identified above *and* somehow retaining at least some claim against Essentia for Ciox's alleged overcharges on its behalf, there would appear no plausible third-party claim against Ciox in this case.

ORDER

IT IS ORDERED that:

---

[8] The court is mindful that other courts have certified Rule 23 classes in similar cases involving alleged overpayment of medical records.  However, *all* of the defendants in *all* of those cases had Wisconsin addresses.  *See Moya v. Aurora*, Case No. 13CV2642, Circuit Court Milwaukee County; *Rave v. SVA Healthcare, LLC*, Case No. 2018CV000609, Circuit Court Milwaukee County; *Shannon v. Mayo Clinic*, Case No. 2019CV000204, Dunn County Circuit Court; *Harwood v. Bell Ambulance*, Case No. 2018CV009161, Circuit Court Milwaukee County; *Smith v. Paratech*, Case No. 2018CV009940, Circuit Court Milwaukee County; *Futosky v. Ebix Inc.*, Case No. 2018CV001829, Circuit Court Waukesha County.  Thus, the choice-of-law issues that beset adjudication of the proposed class in this case do not appear to have been present in these other cases.  Still, as set forth below, the court will allow plaintiff to amend her motion for class certification if she can articulate a narrower class of claimants not fraught with such glaring choice-of-law issues.

1) Plaintiff Mary Hill's motions to supplement (dkt. ##62, 70, 80) are GRANTED.

2) Defendant Essential Health's motion to dismiss (dkt. #22) is DENIED IN PART and GRANTED IN PART.  Plaintiff will be permitted to proceed on her Wis. Stat. § 146.83 claim, but her unjust enrichment and conversion claims are dismissed.

3) Plaintiff's motion to certify a class under Federal Rule of Civil Procedure 23 (dkt. #54) is DENIED, although plaintiff may have until January 31, 2022, to amend its motion for class certification consistent with this opinion and defendants may have until February 22, 2022, to respond.

4) Unless plaintiff timely moves to amend her class definition consistent with this opinion, third-party defendant's motion to dismiss the third-party complaint (dkt. #47) will be GRANTED.  Otherwise, the court will deny that motion without prejudice to renewal.

Entered this 23rd day of December, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

23